UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ALLA MEDVEDEVA, Individually and on
Behalf of All Others Similarly Situated,        Case No. 17-CV-5739(WFK)(LB)

                  Plaintiff,

    -against-

ASSISTCARE HOME HEALTH SERVICES
LLC (d/b/a Preferred Home Care of New York
and Preferred Home Care of New York LLC),

                  Defendant.
-------------------------------------------------------------X


**AFFIDAVIT OF AVRAHAM SHAYA MANNE IN SUPPORT OF MOTION**

**AVRAHAM SHAYA MANNE,** being duly sworn, deposes and says:

1.      I am the Finance Director of Defendant Assistcare Home Health Services LLC d/b/a Preferred Home Care of New York (hereinafter referred to as "Preferred"). I am making this Affidavit in support of Preferred's motion to dismiss Plaintiff's Complaint to provide background information, identify and provide documents referred to or incorporated by reference in the Complaint, and provide information to assist the Court with a review of those documents.

2.      Preferred takes its obligation to comply with all labor and employment laws, including wage and hour laws, very seriously. To that end, the Preferred has implemented significant procedures to ensure that its home health aides (hereinafter "aides") are correctly paid for all hours worked, which procedures are conveyed at orientation, through staffing coordinators, and in written materials. In a further effort to ensure compliance with all wage and hour laws, Preferred has notified aides that it has set up a dedicated

1

extension for aides to call if they have pay issues, extension 326. In addition, Preferred has assigned a number of payroll department employees, as many as six (6) full-time workers at this time, to the sole function of answering calls from aides and assisting walk-ins with any pay-related issues. Further, anyone who calls can be assisted by any payroll coordinator. As you can see, Preferred has gone to great lengths to ensure that aides are properly compensated.

3.　　Preferred is also a member of the Home Care Association of New York State ("HCA-NYS"), and its administration regularly receives emails and bulletins from associations of home care agencies, law firms, and payroll services, and it confers with its own legal counsel, to ensure compliance with wage and hour law. With regards to the claim that Plaintiff and other aides were not paid the proper overtime rate for the period January 1, 2015 through October 13, 2015 (Count I in the Complaint), Preferred was prepared to pay aides overtime at the rate of one and one-half their regular rate starting on January 1, 2015. However, associations of home care agencies, law firms, and payroll services advised home care agencies that the third-party employer exemption that had been scheduled to become effective January 1, 2015 had been vacated and, thus, there was no requirement to pay the increased rate. Accompanying this Affidavit as Exhibit "A" is a sample of notices Preferred's administration received in connection with the effective date of the third-party employer exemption. Accordingly, it is respectfully submitted that home care agencies, including Preferred, acted in good faith regarding the effective date of the increase in the overtime rate.

4.　　Preferred started out as a small home care agency in 2010 and has grown over time. The pay week is Saturday through Friday and pay day is the following Friday.

Preferred uses software called HHAeXchange, which is a web-based platform designed specifically for home care agencies, to, among other things, record time worked by aides. Time worked is then exported to a payroll application, called Millenium, reviewed for accuracy, and exported to Preferred's payroll service, Advanced Data Source ("ADS"). ADS then processes the pay checks and pay stubs, and provides copies of same to Preferred along with payroll registers.

5. Accompanying this Affidavit as Exhibits "B-1" to "B-5" are the wage statements, a/k/a pay stubs, for Plaintiff's entire period of employ, April 13, 2012 through November 14, 2016. For ease of reference, the pay stubs are broken down by year. Exhibit B-1 is 2012, Exhibit B-2 is 2013, Exhibit B-3 is 2014, Exhibit B-4 is 2015, and Exhibit B-5 is 2016.

6. Accompanying this Affidavit as Exhibit "C" is the payroll register for Plaintiff's entire period of employ. Please note that the pages are numbered on the top right corner of each page and page 60 is a cumulative totals page.

7. Plaintiff claims that she is entitled to spread of hours pay pursuant to a New York State regulation (Count V in the Complaint). As per the Summary of Wage Order Rates and Credits for Miscellaneous Industries attached to Affirmation of W. Matthew Groh (hereinafter Groh Aff.") as Exhibit "D" (hereinafter "minimum wage table"), the minimum wage rates during the period of Plaintiff's employ are as follows:

| | |
|---|---|
| April 13, 2012 through December 30, 2013 | $7.25 per hour |
| December 31, 2013 through December 30, 2014 | $8.00 per hour |
| December 31, 2014 through December 30, 2015 | $8.75 per hour |
| December 31, 2015 through November 10, 2016 | $9.00 per hour |

8.     A simple comparison between the applicable minimum wage rates and the rates actually paid to the Plaintiff shows that, at all times, Plaintiff was paid in excess of the then current minimum wage rate:

| Period | Minimum Wage | Amount Paid[1] |
| --- | --- | --- |
| April 13, 2012 to Dec. 30, 2013 | $7.25 | $9.00/ $9.25/ $9.50 |
| December 31, 2013 to Dec. 30, 2014 | $8.00 per hour | $9.50/ $10.00 |
| December 31, 2014 to Dec. 30, 2015 | $8.75 per hour | $10.00/ $12.00 |

9.     Plaintiff claims that Preferred did not provide the Plaintiff with compliant wage notices, as required by the New York Labor Law (Count VII in the Complaint).

10.     Plaintiff was provided with a wage notice at the time of her hire. A copy of the wage notice signed by Plaintiff at time of hire on April 12, 2012 is Exhibit "D" to this Affidavit.

11.     While it is true that the plaintiff's April 27, 2012 pay stub indicated an hourly rate of $9.00 per hour for thirty-six hours, the pay stub on May 4, 2012 indicates an hourly rate of $9.25 per hour, which rate remained in effect until Preferred increased Plaintiff's hourly rate to $9.50 per hour on the March 15, 2013 pay stub. Please see Exhibits "B-1" and "B-2" hereto.

12.     While it is also true that the time-of-hire wage notice listed the overtime rate as $13.87 per hour, which is one and one-half times $9.25 per hour, there was no way of knowing at the time of hire whether the Plaintiff would be doing work covered by the companionship exemption. Eight months later, when Plaintiff first worked overtime, she was paid an overtime rate of $10.88 per hour because that work was covered by the

---

[1] Please see Plaintiff's pay stubs, Exhibits "B-1 to B-5" hereto.

companionship exemption. Under the companionship exemption, the proper overtime rate was one and one-half times the then current minimum wage rate, $7.25 per hour, which is $10.88 per hour.

13.     In addition, it is my understanding that it is not necessary to issue a new wage notice each time a wage rate changes if the change in wage rate is indicated on the pay stub, which was done in this case. Please see the pay stubs for the check dates April 27, 2012, May 4, 2012, and December 21, 2012 in Exhibit "B-1" hereto.

14.     Plaintiff claims that Preferred did not provide the Plaintiff with wages required by the Wage Parity Act (Count IX) and that Preferred was unjustly enriched by the alleged failure to do so. At all times, Preferred has complied with the Wage Parity Act (hereinafter "WPA").

15.     Prior to the March 1, 2012 effective date of the WPA, Preferred considered whether to pay aides separate pay scales depending upon whether they were working under contracts covered by the WPA or not. However, keeping track of same was deemed not feasible, so Preferred made a decision to provide WPA compensation to all home health aides. Thus, regardless of whether an aide worked under WPA contracts or not, Plaintiff and all other home health aides were afforded WPA wages and benefits effective March 1, 2012..

16.     In the case of the Plaintiff, the first contract under which Ms. Medvedeva performed work was a contract between Preferred and Personal Touch Home Aides of NY. Since Medicare was the source of the payments for that care, that work was not covered by the WPA. Thus, by paying WPA wages and benefits, Preferred actually exceeded its obligation under the WPA. The other contracts under which Ms. Medvedeva worked were

with Managed Care Organizations (MCOs) and funded by Medicaid, so that work was covered by the Wage Parity Law.

Contracts Under Which Medvedeva Worked

| Admission ID | Date From | Date To | Contract | Wage Parity |
|---|---|---|---|---|
| PHN-903814 | 4/13/2012 | 11/30/2012 | Personal Touch Home Aides of NY | No |
| PHN-903814 | 12/1/2012 | 12/2/2013 | Independent Care Systems (MCO) | Yes |
| PHN-908215 | 1/7/2014 | 3/25/2016 | Homefirst/Elderplan (MCO) | Yes |
| PHN-908965 | 2/25/2014 | 11/10/2016 | Fidelis Care New York (MCO) | Yes |
| PHN-903765 | 5/19/2014 | 2/15/2015 | Elderserve Health Inc. (MCO) | Yes |

17.     At relevant times, the New York State Department of Health (hereinafter "DOH") issued Official Notices of Home Care Worker Wage Parity Minimum Rate of Total Compensation to provide guidance regarding compliance with the WPA, sample copies of which are attached hereto as Exhibit "E."

18.     In 2012, the obligation was to pay $9.00 per hour plus what was referred to at that time as a "supplemental benefit rate" of $1.35. However, an employer was not required to pay the supplemental benefit rate if it chose to provide health benefits even if it did not allow individual employees to decline such benefits.

19.     Based on the Wage Parity Statute, Public Health Law 3614-c and Official Notices, the WPA requirements were as follows:

*March 1, 2012 through February 28, 2013:*

$9.00 per hour plus $1.35 per hour if medical benefits are not provided by employer.

As shown on the payroll register, Preferred provided health benefits during this period (designated "SR Suppl Accrual") and paid $9.00, $9.25, and $9.50 throughout this period of employment.

*March 1, 2013 through February 28, 2014:*

95% of the "total compensation" mandated by NYC's living wage law: $9.50 per hour if health benefits are provided or $10.93 without health benefits.

As shown on the payroll register, Preferred provided health benefits during this period (designated "SR Suppl Accrual") and paid $9.50 per hour throughout this period of employment.

*March 1, 2014 through the end of Plaintiff's employment on November 14, 2016:*

For the period March 1, 2014 through November 14, 2016, the minimum rate home care aide total compensation was $14.09, consisting of a base wage of at least $10.00 per hour, Additional Wages of up to $1.69 per hour, and Supplemental (benefit) Wages of up to $2.40 per hour.

At the option of the employer, it could designate the entire Additional and Supplemental Wages as health insurance, or it could designate Additional Wages to sick and vacation benefits and Supplemental Wages to health benefits, or any other number of combinations. See October 31, 2013 Official Notice of Home Care Worker Wage Parity Minimum Rate of Total Compensation (Exhibit "F" hereto).

From March 1, 2014 through August 22, 2014, Preferred treated the entire $4.09 as health benefits, which is designated by "SR Suppl Accrual" and "Additional Wage" on the payroll register. See payroll register for check dates March 14, 2014 through August 29, 2014.

Starting on August 23, 2014 and through the remainder of Plaintiff's employ, Preferred designated $2.40 per hour toward health benefits, which is designated by "Wage Parity" on the payroll register, and $1.69 toward sick and vacation benefits, which is designated "Vac Pay-WP" and "Sick Pay-WP" on the payroll register. Please see payroll register for check date September 5, 2014 and thereafter.

20.     As you can see, Preferred at all times fully complied with its obligations to provide WPA wages and benefits.

21.     To further assist the Court with a review of the WPA requirements and the fulfillment of those requirements, I have prepared a "WPA compliance spreadsheet," a copy of which is attached hereto as Exhibit "F." Exhibit "F" shows that, during the relevant time periods, the cash rate paid met or exceeded the cash rate required by the WPA. Please see columns C and D. Exhibit "F" also shows the number of regular hours worked (column B with the value of the health insurance costs and vacation and sick benefits accrued on behalf of the Plaintiff (columns F through K). Those figures reconcile with the totals on page 60 of the payroll register (Exhibit "C" hereto).

22.    Based on this additional analysis, Preferred at all times fully complied with its obligations to provide WPA wages and benefits.

23.    This affidavit is based upon my personal knowledge and/or upon my review of the Complaint in this action, documents created and/or kept in the normal course of business by Preferred, and documents attached as exhibits to the accompanying Affirmation of W. Matthew Groh.

Dated: Brooklyn, New York
       June 1, 2018

_____
AVRAHAM SHAYA MANNE

Sworn to and subscribed before me
This 1st day of June, 2018

_____
Notary Public

ANNA SHARTS
Notary Public - State of New York
NO. 01SH6334850
Qualified in Kings County
My Commission Expires Dec 21, 2019

8