```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK

------------------------------X Docket#
ALLA MEDVEDEVA,               : 17-cv-05739-WFK-LB
                              :
              Plaintiff,      :
                              :
     - versus -              : U.S. Courthouse
                              : Brooklyn, New York
                              :
ASSISTCARE HOME HEALTH        :
SERVICES, LLC,                :
                              : May 23, 2019
              Defendant.     : 10:09 a.m./12:45 p.m.
------------------------------X
```

              TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
                BEFORE THE HONORABLE LOIS BLOOM
                UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Plaintiff**:          Law offices of
                                Steven L. Wittels
                                18 Half Mile Road
                                Armonk, NY 10504
                        BY:     **Steven L. Wittels, Esq.**
                                **J. Burkett, McInturff, Esq.**
                                **Andrey Belenky, Esq.**
                                **Tiasha Palikovic, Esq.**

**For the Defendant**:          Naness, Chaiet & Naness, LLC
                                375 North Broadway, Ste. 202
                                Jericho, NY 11753
                        BY:     **William Matthew Groh, Esq.**

**At Request of Court**:        Hodgson Russ, LLP
                                140 Pearl Street
                                Buffalo, NY 14202
                        BY:     **Peter Godfrey, Esq.**


**Transcription Service**:      **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                laferrara44@gmail.com


**Transcribed By**:             **Jeanine Martelle**


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Civil cause for a status

2    conference, Docket Number 17-cv-5739, Medvedeva v.

3    Assistcare Home Health Services, LLC.

4          Will the parties please state your name for the

5    record.

6          MR. WITTELS:  Steven Wittels, for plaintiffs in

7    the proposed class.

8          Good morning, your Honor.

9          MR. McINTURFF:  Burkett McInturff, for

10   plaintiffs in the proposed class, from Wittels Law.

11         MR. BELENKY:  Andrey Belenky, for plaintiff in

12   a proposed class.

13         MS. PALIKOVIC:  Tiasha Palikovic, for plaintiff

14   in the proposed class, also with Wittels Law.

15         MR. GROH:  Good morning, your Honor.

16         Matthew Groh, Naness, Chaiet & Naness, attorney

17   for Assistcare d/b/a Preferred Home Care of New York.

18         MR. GODFREY:  Peter Godfrey at Hodgson Russ,

19   not counsel of record here, but appearing at the request

20   of the court for the documentary.

21         THE CLERK:  The Honorable Lois Bloom presiding.

22         THE COURT:  Good morning, Mr. Wittels,

23   Mr. McInturff, Mr. Belenky, Ms. Palikovic, Mr. Groh, and

24   thank you, Mr. Godfrey for attending today at my request.

25         This is a conference in plaintiffs' action

Transcriptions Plus II, Inc.

3

Proceedings

1   under FLSA and New York Law.

2           At the March 14 conference in this case, which

3   I've been holding fairly regular conferences by telephone

4   in the case, I reserved decision on plaintiffs' motion to

5   appoint interim class counsel.  The parties agreed to

6   stipulate conditional cert of a FLSA collective action

7   and the Court will, if necessary, facilitate the notice

8   within the perimeters that will bet set.

9           The parties were last before me for a telephone

10  conference on April 11, at which time I scheduled a

11  settlement conference for today and I urged the parties

12  to double their efforts to resolve the case.  And I

13  directed the parties to file by May 16, either *ex parte*

14  settlement statements or a proposed collective action

15  notice, if the parties determined that a settlement

16  conference would be futile.  I received a series of

17  letters over the past few days, and each party has their

18  own distinct narrative about the time line, the status,

19  and how the settlement discussions are going.

20          On May 16 plaintiffs' counsel filed a letter

21  informing the Court that the parties' settlement

22  discussions had broken down and proposed various times

23  for holding a conference down the road.  I then issued an

24  order stating that the Court would hold the conference as

25  scheduled, and the parties should appear today.

4

Proceedings

1          Defendant's counsel then filed a letter to
2    correct the record relating to the May 16 letter.
3          Then on May 20 Ms. Blackstone, who is counsel
4    for plaintiffs in the Gonzalez action, which is pending
5    before Judge Donnelly, filed a letter asking to present
6    certain concerns today, and I note that in the courtroom
7    is an open courtroom.  Ms. Blackstone and somebody by the
8    name of Brian Barber have signed on the status conference
9    appearance sheet, but I do want to say there has been no
10   motion under Rule 24 to intervene, and I do not find that
11   lawyers can just file papers in other people's cases
12   without making a motion.  So I'm not going to have
13   counsel come and participate in today's conference;
14   although, it is an open courtroom.
15         Okay.  With that being said, I have looked over
16   where we are.  And the reason why I wanted you to be
17   here, Mr. Godfrey, is Mr. Groh has said at a number of
18   points that the defendants are interested in settling the
19   case, and he's been carrying this case, which in my mind
20   -- and I've looked at both the Gonzalez and the Medvedeva
21   case, and even though there are some overlaps, there
22   aren't great amounts of overlaps.  I do understand the
23   jockeying that's going on.  I do understand that there is
24   a motion request to Judge Donnelly, which is still
25   pending, I believe.  You have until May 28 in the

5

Proceedings

1   Gonzalez case to oppose it, so right around the corner.

2   And that pre-motion conference request is raising a

3   number of grounds, including lack of standing of certain

4   plaintiffs.

5           But particularly raised, the first filed rule

6   to try to get the case here, which is not the proper way

7   to get cases reassigned, people.  If you believe that

8   there is a related case within the district, there is a

9   procedure under the local rules for the division of

10  business amongst judges, and you raise it to the judges

11  in the cases that you believe are related, and then you

12  ask for those judges to look them over and make a

13  decision about whether they will be deemed related.

14          So I don't get a motion for intervention from a

15  very good firm, Levy Ratner; I get mixed messages by

16  looking at the pre-motion conference request pending

17  before Judge Donnelly.  I don't know what counsel is up

18  to here, but I could say if you think these cases are

19  related and should be heard together, there is a rule for

20  that.  That being said, I'm leaving that completely

21  aside.

22          In my mind I don't want to be the "tail wagging

23  the dog."  This is a FLSA case.  The other case is an

24  ERISA case.  They both have wage parity claims that are

25  state law claims.  The FLSA case is my object in this

6

Proceedings

1   case.  I understand as a client your client has to deal

2   with all claims, but in my mind, and I'm putting this on

3   the record, the Gonzalez case is an ERISA case.

4            I understand there's a big claim under the wage

5   parity law, but if the ERISA claim doesn't stick, then

6   this Court is not going to hear the wage parity claim.

7   Likewise, here, we have a FLSA claim; that's what we're

8   dealing with.  And so this jockeying on both defendant

9   and plaintiff side, I don't know what to tell you about

10  it.  I could tell you that's not what I'm here to deal

11  with.

12           And I do understand, Mr. Wittels, that that's

13  why there is some urgency to your being appointed interim

14  class counsel, but I'm not up to that because you have

15  one plaintiff, one, and I have no idea if she's going to

16  meet all the criteria.  I'm not ruling you out.  You were

17  first filed; you have the claim here.  I don't know who

18  the other people at the table want to introduce

19  themselves as working for Wittels Law, but I don't know.

20  Mr. Belenky might be one of the other initial sign ons of

21  plaintiff's counsel in this case.

22           MR. WITTELS:  He's co-counsel, your Honor.

23           THE COURT:  All right.  So look, I thought that

24  you were going to go back to Mr. Schienman (ph) -- isn't

25  that the guy's name who everybody thinks is so great?

7

Proceedings

1          MR. WITTELS:  Yes, your Honor.

2          THE COURT:  Why can't this go back to

3    Schienman?

4          MR. WITTELS:  Your Honor, just a preliminary

5    matter.  If we're going to talk about settlement, I do

6    oppose the Levy Ratner firm being here.

7          THE COURT:  It's a public courtroom.

8          MR. WITTELS:  I understand, but --

9          THE COURT:  And you didn't want a settlement

10   conference.  You were the one that told me you didn't

11   want a settlement conference.  If it was a settlement

12   conference, we would conduct some business in the

13   courtroom, and then we would have gone back to the robing

14   room and the jury room, but you didn't want a settlement

15   conference.

16         MR. WITTELS:  Well --

17         THE COURT:  That's what you told me in your

18   letter.

19         MR. WITTELS:  Yes, yes.

20         THE COURT:  It's broken down, no settlement

21   conference.  That means we're in the courtroom.

22         MR. WITTELS:  Right, but your Honor asked me a

23   question about settlement, so -- but --

24         THE COURT:  No.  I asked you about going back

25   to the mediator.

8

Proceedings

1           MR. WITTELS:  We expressed that in our papers.
2      We said to the defendants and your Honor.  We discussed
3      the fact that, while our settlement talks had broken
4      down, doesn't mean that settlement can't proceed while
5      we're litigating this case, which is what we --
6           THE COURT:  Well, they don't want to do both.
7           MR. WITTELS:  Well, I didn't hear --
8           THE COURT:  And there's still a motion pending
9      before Judge Kuntz.  So, you know, look I'm trying to go
10     on all cylinders here.
11          MR. WITTELS:  Right.
12          THE COURT:  I am.  I have given this a lot of
13     thought and a lot of attention.
14          MR. WITTELS:  Yes.
15          THE COURT:  And, in fact, in just writing my
16     notes down, just so you hear this, gentlemen, this case
17     is a very important case.  It's about work that's
18     invisible.
19          There have been labor laws passed in eight
20     states to protect domestic workers.  We are talking about
21     work that is culturally devalued and generally these
22     people have to live on poverty wages.  I'm not telling
23     you anything you don't know.  I'm telling you why this
24     case is important and why I'm giving them more attention,
25     even though we're a wash in FLSA cases.

Proceedings

1    MR. GROH:  Right.  Your Honor, we believe we

2 are acting in the best interest of the class as well by

3 trying to continue settlement discussions.  And when

4 Mr. Wittels is done, I would like to give a history of

5 where we've gone from the last conference to this

6 conference.

7    THE COURT:  Well, again, I don't want to do

8 anything that Mr. Wittels will think is taking the air

9 out of the push toward settlement.  I made you come here

10 today because I think I've made it too easy for you to

11 just coast.  And then I get these letters that are saying

12 they're not doing what they're supposed to be doing.  And

13 quite frankly, there's a motion to dismiss pending.

14 They've turned over a lot of information, at least

15 according to my minute notes.  I don't know why you

16 called off settlement conference today.  I don't know why

17 you did.

18    MR. WITTELS:  Judge, we feel that this case has

19 been languishing in the sense that, while your Honor has

20 taken a strong command of pushing us in that regard, this

21 is a case where we are not far apart.  So if we open the

22 door to them to go back to Scheinman -- we've spoken to

23 him.

24    THE COURT:  So do you have a date?

25    MR. WITTELS:  Well, there's no date.  He said

10

Proceedings

1    he was going to reach out to the defendants, but that

2    should not stop us from pursuing this because once --

3                THE COURT:   This is the problem.   You gave me

4    a notice, which I have completely marked up.   Okay.

5                MR. WITTELS:  Right.

6                THE COURT:  I do not agree with the notice that

7    you gave me.  They then give me a notice.  They've told

8    me if this goes that route, they're not going to be

9    participating the way that they have been voluntarily by

10   turning over information; albeit, not all the information

11   that you want; albeit, they haven't given you the

12   calculations that you asked for, but they have given you

13   a lot of information considering there's a motion to

14   dismiss pending.

15               I know Judge Kuntz always says that doesn't

16   stay discovery.  I understand; I work in this courthouse.

17   I am doing my best to push you towards getting some

18   resolution of the case without it being a litigated

19   matter.

20               MR. WITTELS:  Judge, we appreciate that.  But

21   when the parties are far apart, you can't settle a case.

22   We want to give the class fair relief.  What has been on

23   the table is not fair relief, so that's why we are here

24   pushing.  We have very viable claims; we want to amend

25   our complaint; and we want notice out to the class.

Transcriptions Plus II, Inc.

11

Proceedings

1    THE COURT:  Well, the amend the complaint goes

2   first.  If there's a motion to dismiss pending and you

3   need to amend your complaint, they have moved to dismiss,

4   you better be submitting your motion to amend with the

5   attached proposed amended complaint like this (snapping

6   fingers).  Because what if the motion to dismiss was

7   being worked on by the Judge, don't you think that would

8   be a little bit of a waste of his resources to decide a

9   motion on a complaint that you want a chance to amend.

10    MR. WITTELS:  Well, what we're adding will not

11   affect his -- as we discussed it -- what's already on the

12   table.  We're adding certain claims that we know about

13   and that are very --

14    THE COURT:  You're not going to tell me that

15   you're adding ERISA and wage parity claims because you

16   already have wage parity, right?

17    MR. WITTELS:  Right, it's not an -- well -- no,

18   your Honor.

19     As we discussed in prior conferences, we're

20   proposing to add claims that are based on the payroll

21   records of the defendants that are produced, not ERISA.

22    THE COURT:   That they are falsifying records

23   to Medicare or something of that nature.

24    MR. WITTELS:  Among other things.

25     So, your Honor, we're very respectful that the

12

Proceedings

1   Court is doing all it can to push the parties toward

2   settlement.  Sometimes --

3           THE COURT:  No.  I'm not doing all I can

4   because I didn't get you to a settlement conference

5   today.  That was what was supposed to happen today, and

6   then we would have gone off the record and talked

7   numbers. And we would have talked about how we can

8   eliminate that gap and you wanted me to get Mr. Godfrey

9   here.  Here's here.

10          MR. WITTELS:  Well, the reason is, your Honor,

11  you have to get to a certain point before it makes sense.

12          THE COURT:  That's your philosophy of

13  settlement; that's my philosophy.  I set this aside.  I

14  prepared.  I would have been prepared.

15          Again, my philosophy is you come to the table

16  and you get something done.  Even if it doesn't settle,

17  you come to the table; you get something done.  So you

18  shot yourself in the foot a bit, Mr. Wittels, because you

19  want me to go off the record and find out where we really

20  are and push, and, yet, you told me you didn't want a

21  settlement conference.

22          MR. WITTELS:  Well, we felt, your Honor, no

23  disrespect to the Court on that, but the case has been

24  sitting.  We need to get -- we need to get public

25  discovery, which we're entitled to.

Proceedings

1    THE COURT:  Again, sir, you're either going to
2    litigate or you're going to try to get the case resolved.
3    If they're spending the money to respond to all of the
4    requests that you're going to make, which I understand
5    you are ready to go, but you also told me you need to
6    amend your complaint.  So you can't -- you can't be
7    speaking out of both sides of your mouth.  It's not the
8    Curt that's holding you up here.
9    I understand they haven't come to the table
10   with a number that you think is within the realm of where
11   you want it to be.  Do you know how many settlement
12   conferences I have every week where people don't think
13   that the numbers are where they should be?
14   MR. WITTELS:  I'm sure.
15   THE COURT:  Okay.  So, look, one of my problems
16   -- Mr. Wittels, please be seated -- is Mr. Groh made it
17   clear to me that if we're going ahead on the collective
18   action, and we're going to get all the names, and we're
19   going to get all the addresses, and we're going to send
20   out a notice, that that's not going to make his client
21   want to still go forward on the path to voluntarily try
22   to get the case resolved, and I can understand that
23   position.  If you're going to pay to collect all the
24   information and send notices to everybody who worked --
25   and I have a problem, because I've told you this since

14

Proceedings

1   the beginning, that they say there are really different

2   apples and oranges here because there are the people who

3   were employed who were friends and family, the CPAP -- am

4   I saying them right?

5          MR. GROH:  CDPAP.

6          THE COURT:  There are the 24-hour live-in

7   people.  That's not your client either.

8          So I have a problem on the collective notice,

9   even though it's a lower bar, and that's not even part of

10  what I was marking up on the notice you gave me.

11         I also want to know what the -- and I may be

12  saying it incorrectly, but the decision by the court of

13  appeals, the <u>Andryeyeva v New York Healthcare</u> decision

14  does in this context.

15         So I would really like it if, either we're

16  going to talk numbers, we can still break into separate

17  sessions, even though Mr. Wittels told me this shouldn't

18  be a settlement conference.  I can give some time today,

19  not as much as I though I would because you called this

20  off.  I would like even more so for you to get a date

21  while we're here to go back to Scheinman, because he's

22  the one that made substantial progress in the first

23  instance.

24         What's the problem, Mr. McInturff?

25         MR. McINTURFF:  Well, what you're -- yeah, I

15

Proceedings

1  think -- we didn't leave the first mediation, I mean,

2  with probably viewing it with the term "substantial

3  progress."  I mean, there was a long day, but

4  Mr. Scheinman was sort of distracted with other things

5  happening.  It's not -- in our judgment, while he's an

6  excellent mediator, there was some distraction issues,

7  and we left, after spending a good part of the day trying

8  to get certain documents that we could evaluate that

9  probably we would have liked to have seen before the

10  mediation, so there was --

11          THE COURT:  But now you have those documents?

12          MR. McINTURFF:  No, your Honor, we don't have

13  them, but there were -- I don't want to get into the

14  nitty-gritty.

15          Suffice it to say that when we left, we did not

16  have really any sort of parameters for where we were on

17  settlement.  It took us the next six months here, January

18  to June, or five months, to try to get --

19          THE COURT:  Don't rush us.  We're not in June

20  yet.  I got many for fish to fry before June.

21          MR. McINTURFF:  Sorry, you're right.  You're

22  right.

23          So we didn't get to the point we're at where we

24  have a number demand, they have an offer, you know for

25  many months.  The reason we called off settlement, again,

16

                    Proceedings

1   is we felt that there was too big a gap.

2          If I can confer with our team -- I know your

3   Honor what you're suggesting.  Can you us two minutes

4   here to confer?

5          THE COURT:  Absolutely.

6   (Plaintiff's counsel confer.)

7          THE COURT:  Yes.  So what do you want to tell

8   me?

9          MR. WITTELS:  Judge, if your Honor deem it

10  appropriate, we would be willing to discuss with you at

11  sidebar or chambers, wherever you hold it.

12         THE COURT:  Neither.  We have rooms, jury and

13  robing room behind the courtroom.

14         Yes, go ahead.

15         MR. WITTELS:  We would be willing to proceed to

16  discuss where we're at and why we came to this point, you

17  know, off the record.

18         THE COURT:  Well, I don't go off the record

19  unless both sides consent to go off the record.  And I

20  don't generally hold settlement conferences without the

21  client here, and that was something I made clear, and I

22  would have liked to see Ms. Medvedeva because that's

23  important to me.

24         MR. WITTELS:  Right.

25         THE COURT:  It's important to me that the

17

Proceedings

1   client is in the process.

2           MR. WITTELS: Right.

3           THE COURT:  You're saying that --

4           MR. WITTELS:  No, I understand.  She works

5   and --

6           THE COURT:  Yes.  And every other plaintiff

7   that I have involved in these types of cases works,

8   Mr. Wittels.

9           MR. WITTELS:  I understand, okay.

10          MR. GROH:  Your Honor, we agree that it would

11  be very helpful to have a candid discussion about the

12  trajectory of this case going forward, and we came

13  prepared to have those discussions, and we would like to

14  go forward with those discussions.

15          THE COURT:  So let me just ask on the record,

16  on behalf of your client, Mr. Wittels, are you consenting

17  to go off the record to speak about settlement today?

18          MR. WITTELS:  Yes, your Honor.

19          THE COURT:  And on behalf of your client,

20  Mr. Groh, are you consenting to go off the record to

21  speak about settlement today?

22          MR. GROH:  Absolutely, your Honor.

23          THE COURT:  Then I'm going to ask my law clerk

24  to go off the record.  I am going to open the jury room

25  and the robing room, and I'll put two of you in there,

18

Proceedings

1  and the other four in the other, and we'll go back and

2  forth.

3         I have to tell you two things before we go off

4  the record:

5         One, when I was trained to do this, which was

6  by Jeremy Fogel, who was a district judge in San

7  Francisco who then went on to lead the Federal Judicial

8  Center -- really bright guy -- you always have to tell

9  people how much time you have.  So I have to be out of

10 here by 12:30.  It's now 10:30, okay.  That's more time

11 than I would ordinarily give you on the fly, but

12 something cancelled afterwards;

13        two, I am not prepared the way I would have

14 been, had you given me the settlement statements that my

15 order reflected needed to be filed.  Then I would have

16 had time in the comfort of my own chambers to review the

17 materials.  I reviewed a lot of things before coming

18 today, but I don't have the benefit of either of your

19 settlement statements.

20        Mr. Wittels, it was a mistake.  Don't

21 substitute your own judgment.  Sometimes I have an

22 instinct about things.  And if you came and it was a

23 bust, so be it.  You would have fulfilled what I had set

24 forward in motion, and it wouldn't have been on you.

25 Today my lack of preparation is on you.

19

Proceedings

1           MR. WITTELS:  I understand,  your Honor.

2           THE COURT:  Is there anything else that needs

3   to be said on the record before we go off the record?

4           MR. GROH:  Your Honor, we're glad to proceed as

5   discussed.  We're also glad to schedule a conference

6   within a week, bring our clients and submit our

7   statements.

8           THE COURT:  No.  I'm sorry to say -- I don't

9   know if you heard this, but we had two active judges in

10  Central Islip, and one of them, Joe Bianco, who is a

11  fantastic man, was elevated to the second circuit.  As a

12  result, there is only one active judge in Central Islip.

13  Because of that, five hundred cases from Islip were then

14  transferred to Brooklyn.  I now have six hundred cases

15  assigned to me for all pretrial purposes.

16          So I don't have that sort of availability with

17  several hours of time.  We also have criminal dockets.

18  So I'm glad to speak to you today.  I'm hopeful that I

19  will advance one foot from where we are.  You know, each

20  time that we have these conferences, I'll put it on the

21  record, I feel a bit frustrated because I know that

22  there's something really big here that should be

23  resolved.  It may not just be in this case; it may be a

24  combination settlement.  I have no idea.  But litigating

25  the case, I know for sure, is going to take years of time

Proceedings

1  and lots of money.

2            And so their meter only goes one direction; you

3  know this.  They've proved one violation; they get their

4  application for fees.  So your clients, who I imagine are

5  taking this seriously but are on multiple fronts, I

6  really don't know why it's beneficial to litigate.  I

7  just don't.

8            On their side I understand why it may be

9  beneficial, and I've been trying to hold them off in

10  litigating the case.

11            MR. GROH:  We agree, your Honor.

12            THE COURT:  Okay.  Let's go off the record and

13  let's break.  Please bring all of your things.  We'll

14  meet at this door and we'll go behind.

15  (Off the record.)

16  (On the record.)

17            THE COURT:  We are not in June yet, but it is

18  fast approaching, and I want to put this on for a phone

19  conference.  And at the phone conference, what I'm really

20  interested in finding out is:  Have you reached a

21  mediator and do you have a date?

22            And I know that you said it's hard and you both

23  agreed that it's hard, and I think we had some productive

24  conversations here today.

25            How would June 10 or June 14 work for either of

21

Proceedings

1   you?  It could be in the afternoons?

2           Tenth sound good to both sides?  You said 14th

3   you're in court, but I can do it in the morning on the

4   14th.  It would have to be the afternoon on the 10th or

5   the morning on the 14th.

6           MR. WITTELS:  Plaintiffs are available on the

7   14th in the morning and the 10th in the afternoon.

8           THE COURT:  And how does that work for you,

9   Mr. Groh?

10          And am I able to impose on your time again?

11          MR. GODFREY:  I can't make that 10th, but I can

12   do the 14th.  But I haven't appeared in this case and

13   don't have the authorization to do it from my client.  So

14   if there's a settlement discussion, I will definitely

15   attend that for sure.

16          THE COURT:  Well, again, this is up to you.  I

17   had directed you to appear today, and I appreciate that

18   you did.  I don't need you to file a notice of

19   appearance.  If you want to be on the line, I don't think

20   there would be any opposition.  What we're going to be

21   talking about at the next conference is whether or not

22   you've been able to get a mediator to agree to see you,

23   and I'm giving you until the end of August because that's

24   what plaintiffs have asked for.  I think it should be

25   entirely doable, and I'm interested in knowing what that

22

Proceedings

1   date is.

2           I'm also going to tell you, we discussed notice

3   in both our sessions.  I told them that you want the

4   "sword of Damocles" hanging over their head and you want

5   the notice ready to go if the mediation fails.

6           They, of course, have disagreements about what

7   the notice should be.  We've just started talking about

8   it.  We're not going to talk about that at the conference

9   on the 14th, but I've directed them to raise to you the

10  issues that they raised to me, so that you could both

11  argue and distill it to what I need to decide.

12          I've already told you that I had some issues.

13  They have an issue, for instance, that it shouldn't be a

14  six-year notice; I agree with that.  This is a FLSA

15  collective action notice; it is not a New York Labor Law

16  notice.

17          So I believe that it should be -- they're

18  trying to argue it should be two years.  I'm of the mind

19  that it should be three, but that's because that's the

20  most that you could get under FLSA.  They have an

21  argument on that.

22          They also argue who it should go to, et cetera.

23  I'm not going to have those arguments in the first

24  instance with both sides.  I'm going to ask you to

25  distill it down to what can be agreed to.

23

Proceedings

1          They did agree that once we get past the

2   mediation, I can have everybody ready to go on a notice,

3   but nothing is going to be sent out before that period of

4   time.  And so I can get them to be battle ready, should

5   the case not resolve, with having lists of names, and

6   then you could be battle ready to have administrator or

7   whatever else you need lined up.

8          Fourteenth, what time, 10 o'clock?

9          MR. WITTELS:  Works for plaintiffs.

10         MR. GROH:  Yes, your Honor.

11         THE COURT:  Ten o'clock on the 14th it is,

12  okay.

13         And you were too polite, Mr. McInturff, to say

14  that I've been mispronouncing your client's name all day.

15  I'm sorry and I'll try to do better the next time.

16  Medvedeva, and it was Mr. Godfrey that made it clear that

17  he was saying it right and I was saying it wrong.  He did

18  it in a very nice way.

19         Okay, so you're going to try --

20         MR. WITTELS:  Respectfully, your Honor, it's

21  Medvedeva.  Ms. --

22         THE COURT:  Say it again.

23         MR. WITTELS:  -- Medvedeva.

24         THE COURT:  Medvedeva, okay, good.

25         MR. GODFREY:  We're all saying it wrong.

24

Proceedings

1          THE COURT:  Medvedeva, I'll probably get it for

2    five minutes and you'll have to remind me the next time.

3          So phone status, if you could take the laboring

4    or Mr. Wittels and Mr. McInturff, to get everybody on the

5    line, and I'll be ready for you at 10 o'clock.

6          I would Like a letter by the 12th telling me

7    whether or not you've gotten a date.  I'd like a check-in

8    whether or not you've gotten a date.  I can't imagine

9    that you can't get a mediator lined up by the end of

10   August.  That just sounds unreasonable to me.  They're

11   all in business to make money.

12         Okay.  Anything else on behalf of plaintiff

13   today, Medvedeva?

14         MR. WITTELS:  No, your Honor.

15         THE COURT:  Anything further on behalf of

16   defendants today?

17         MR. GROH:  No, your Honor.

18         THE COURT:  Happy Memorial Day, everybody.  See

19   you.  Have a good one.

20         MR. WITTELS:  Thank you, Judge.

21         MR. GROH:  Thank you, Judge.

22         MR. GODFREY:  Thank you, your Honor.

23         (Matter concluded as of this date.)

24                        -o0o-

25

25

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this 5th day of July, 2019.


Rosalie Lombardi
Transcription Plus II