**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ALLA MEDVEDEVA,
Individually and on Behalf of All Others
Similarly Situated,

Plaintiff,

v.

ASSISTCARE HOME HEALTH SERVICES
LLC (d/b/a PREFERRED HOME CARE OF
NEW YORK and PREFERRED HOME
CARE OF NEW YORK LLC),

Defendant.

Case No. 17 CV 5739-LB

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF THE CLASS AND COLLECTIVE**
**ACTION SETTLEMENT AND RELATED RELIEF**

**WITTELS MCINTURFF PALIKOVIC**
Steven L. Wittels
J. Burkett McInturff
Tiasha Palikovic
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com

*Lead Counsel for Plaintiff and the Class*

Dated:  June 26, 2020

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

I. FACTUAL AND PROCEDURAL BACKGROUND ...................................................2

    A.    Factual Allegations and Plaintiff's Investigation............................................ 2

    B.    Litigation and Settlement Negotiations ........................................................ 3

II. SUMMARY OF THE SETTLEMENT TERMS .......................................................7

    A.    The Settlement Amount ................................................................................ 7

    B.    Eligible Class Members ................................................................................ 8

    C.    Distribution of the Settlement Fund .............................................................. 8

    D.    Releases...................................................................................................... 10

    E.    Named Plaintiff Service Award .................................................................... 11

    F.    Attorneys' Fees and Litigation Costs............................................................ 12

    G.    The Settlement Administrator ...................................................................... 15

III. RULE 23 CLASS ACTION SETTLEMENT PROCEDURE .............................................15

IV. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED.....................17

    A.    The Settlement Is Fair, Reasonable, and Adequate .................................... 20

        1.    Litigation Through Trial Would Be Complex, Costly, and Long
            (<u>Grinnell</u> Factor 1)............................................................................ 21

        2.    The Reaction of the Class (<u>Grinnell</u> Factor 2) .................................... 22

        3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve
            the Case Responsibly (<u>Grinnell</u> Factor 3)........................................... 22

        4.    Plaintiff Faces Real Risks if the Case Proceeds (<u>Grinnell</u> Factors 4 and 5).... 24

        5.    Maintaining the Class Through Trial Would Not Be Simple
            (<u>Grinnell</u> Factor 6) ............................................................................ 26

        6.    Defendant Likely Could Not Withstand a Greater Judgment
            (<u>Grinnell</u> Factor 7) ............................................................................ 27

        7.    The Settlement Amount Is Substantial, Even in Light of the Best Possible
            Recovery and the Attendant Risks of Litigation (<u>Grinnell</u> Factors 8 and 9) ........ 28

V.   THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED............................31

    A.   Numerosity.................................................................................................... 32

    B.   Commonality ................................................................................................ 33

    C.   Typicality ...................................................................................................... 34

    D.   Adequacy of the Named Plaintiff................................................................ 35

    E.   Certification is Proper Under Rule 23(b)..................................................... 37

        1.   Common Questions Predominate ........................................................ 39

        2.   A Class Action Is a Superior Mechanism for Adjudicating Claims .............. 41

VI.  THE FLSA COLLECTIVE REQUESTED BY PLAINTIFF SHOULD BE
     CONDITIONALLY CERTIFIED.............................................................................44

VII. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ..............47

VIII. THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND
     SHOULD BE APPROVED.....................................................................................48

CONCLUSION.............................................................................................................. 50

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Aboud v. Charles Schwab & Co.</u>,
   2014 WL 5794655 (S.D.N.Y. Nov. 4, 2014)..................................................................23

<u>Amchem Prods., Inc. v. Windsor</u>,
   521 U.S. 591 (1997)...........................................................................................39, 41

<u>Azogue v. 16 for 8 Hospitality LLC</u>,
   2016 WL 4411422 (S.D.N.Y. Aug. 19, 2016).........................................................18

<u>Berkson v. Gogo LLC</u>,
   147 F. Supp. 3d 123 (E.D.N.Y. 2015) ...................................................................20

<u>Berni v. Barilla G. e R. Fratelli, S.p.A.</u>,
   2019 WL 2341991 (E.D.N.Y. June 3, 2019) .........................................................13

<u>Bodon v. Domino's Pizza, LLC</u>,
   2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) ..........................................................28

<u>Bourlas v. Davis Law Assocs.</u>,
   237 F.R.D. 345 (E.D.N.Y. 2006) ..........................................................................36

<u>Cazares v. AVA Restaurant Corp.</u>,
   2017 WL 1229727 (E.D.N.Y. Mar. 31, 2017)...........................................33, 35, 43

<u>Chambery v. Tuxedo Junction Inc.</u>,
   2014 WL 3725157 (W.D.N.Y. July 25, 2014).......................................................27

<u>Cheeks v. Freeport Pancake House, Inc.</u>,
   796 F.3d 199 (2d Cir. 2015)..................................................................................44

<u>City of Detroit v. Grinnell Corp.</u>,
   495 F.2d 448 (2d Cir. 1974)................................................................20, 21, 28, 46

<u>Clem v. KeyBank, N.A.</u>,
   2014 WL 2895918 (S.D.N.Y. June 20, 2014) ......................................................18

<u>Consol. Rail Corp. v. Town of Hyde Park</u>,
   47 F.3d 473 (2d Cir. 1995) ...................................................................................32

<u>Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.</u>,
   502 F.3d 91 (2d Cir. 2007); ..................................................................................39

<u>D'Amato v. Deutsche Bank</u>,
   236 F.3d 78 (2d Cir. 2001)....................................................................................21

<u>Damassia v. Duane Reade, Inc.</u>,
   250 F.R.D. 152 (S.D.N.Y. 2008) ..........................................................................43

Denney v. Deutsche Bank AG,
443 F.3d 253 (2d Cir. 2006) ..................................................................................35

Doe #1 by Parent #1 v. New York City Dep't of Educ.,
2018 WL 3637962 (E.D.N.Y. July 31, 2018) ........................................................21

Dornberger v. Metropolitan Life Ins. Co.,
203 F.R.D. 118 (S.D.N.Y. 2001) ...........................................................................12

Douglas v. Allied Universal Sec. Servs.,
371 F. Supp. 3d 78 (E.D.N.Y. 2019) .....................................................................46

Elkind v. Revlon Consumer Prod. Corp.,
2017 WL 9480894 (E.D.N.Y. Mar. 9, 2017) ................................................. passim

Fermin v. Las Delicias Peruanas Rest., Inc.,
93 F. Supp. 3d 19 (E.D.N.Y. 2015) .........................................................................6

Fleisher v. Phoenix Life Ins. Co.,
2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ...................................................8, 13

Frank v. Eastman Kodak Co.,
228 F.R.D. 174 (W.D.N.Y. 2005) .........................................................23, 30, 34, 42

Goldberger v. Integrated Res., Inc.,
209 F.3d 43 (2d Cir. 2000) .....................................................................................20

Green v. Wolf Corp.,
406 F.2d 291 (2d Cir. 1968) ...................................................................................41

Hall v. ProSource Technologies, LLC,
2016 WL 1555128 (E.D.N.Y. April 11, 2016) ............................................... passim

Hernandez v. Immortal Rise, Inc.,
306 F.R.D. 91 (E.D.N.Y. 2015) ................................................................... passim

Hernandez v. Merrill Lynch & Co., Inc.,
2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) .......................................................12

Hoffman-La Roche Inc. v. Sperling,
493 U.S. 165 (1989) ................................................................................................48

Iglesias-Mendoza v. La Belle Farm, Inc.,
239 F.R.D. 363 (S.D.N.Y. 2007) ...........................................................................42

In re Austrian & German Bank Holocaust Litig.,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................. passim

In re ConAgra Foods, Inc.,
90 F. Supp. 3d 919 (C.D.Cal. 2015) ......................................................................38

In re EVCI Career Colls. Holding Corp. Sec. Litig.,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................18

In re Painewebber Ltd. P'ships Litig.,
    171 F.R.D. 104 (S.D.N.Y 1997) ..........................................................................24

In re Penthouse Executive Club Comp. Litig.,
    2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013) .....................................................24

In re Traffic Exec. Ass'n,
    627 F.2d 631 (2d Cir. 1980) ................................................................................19

In re Visa Check/Master Money Antitrust Litig,
    280 F.3d 124 (2d Cir. 2001) .........................................................................39, 42

In re Warfarin Sodium Antitrust Litig.,
    391 F.3d 516 (3d Cir. 2004) ...............................................................................23

In re Zyprexa Prod. Liab. Litig.,
    253 F.R.D. 69 (E.D.N.Y. 2008) .........................................................................42

Jackson v. Bloomberg, L.P.,
    298 F.R.D. 152 (S.D.N.Y. 2014) .......................................................................36

Jermyn v. Best Buy Stores, L.P.,
    276 F.R.D. 167 (S.D.N.Y. 2011) .......................................................................38

Joel A. v. Giuliani,
    218 F.3d 132 (2d Cir. 2000) ...............................................................................30

Johnson v. Brennan,
    2011 WL 4357376 (S.D.N.Y. Sep. 16, 2011) ....................................................28

Karic v. Major Automotive Companies, Inc.,
    2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) ....................................................11

Kartman v. State Farm Mut. Auto. Ins. Co.,
    634 F.3d 883 (7th Cir. 2011) ..............................................................................38

Kochilas v. Nat. Merchant Servs., Inc.,
    2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015) ......................................................45

Lliguichuzhca v. Cinema 60, LLC,
    948 F. Supp. 2d 362 (S.D.N.Y. 2013) ................................................................45

Lopez v. Setauket Car Wash & Detail Ctr.,
    314 F.R.D. 26 (E.D.N.Y. 2016) .............................................................34, 35, 40

Marisol A. v. Giuliani,
    126 F.3d 372 (2d Cir. 1997) ..........................................................................32, 37

McCoy v. Health Net, Inc.,
    569 F. Supp. 2d 448 (D.N.J. 2008) ...................................................................13

McGreevy v. Life Alert Emergency Response, Inc.,
    258 F. Supp. 3d 380 (S.D.N.Y. 2017).................................................................9

Mendez v. MCSS Rest. Corp.,
    2019 WL 2504613 (E.D.N.Y. June 17, 2019) .........................................36

Moreira v. Sherwood Landscaping Inc.,
    2015 WL 1527731 (E.D.N.Y. Mar. 31, 2015)...............................................33, 42

Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.,
    2019 WL 5204809 (E.D.N.Y. Oct. 15, 2019)............................................... passim

Murphy v. LaJaunie,
    2015 WL 4528140 (S.D.N.Y. July 24, 2015) .........................................40

Oladipo v. Cargo Airport Servs. USA, LLC,
    2019 WL 2775785 (E.D.N.Y. July 2, 2019) .........................................19

Omar v. 1 Front St. Grimaldi, Inc.,
    2019 WL 1322614 (E.D.N.Y. Jan. 8, 2019) ..........................................33, 35, 40

Ortega v. Uber Techs. Inc.,
    2018 WL 4190799 (E.D.N.Y. May 4, 2018) .........................................19

Ramos v. Nikodemo Operating Corp.,
    2017 WL 11508016 (E.D.N.Y. Aug. 7, 2017).......................................46

Rasulev v. Good Care Agency, Inc.,
    2017 WL 11507653 (E.D.N.Y. Apr. 19, 2017) .....................................45

Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,
    237 F.R.D. 26 (E.D.N.Y. 2006) ............................................................32

Reid v. SuperShuttle Intern., Inc.,
    2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012)................................22, 26

Robidoux v. Celani,
    987 F.2d 931 (2d Cir. 1993)..................................................................35

Rosario v. Valentine Ave. Disc. Store, Co.,
    2013 WL 2395288 (E.D.N.Y. May 31, 2013) ......................................41

Rossini v. Ogilvy & Mather, Inc.,
    798 F.2d 590 (2d Cir. 1986)..................................................................39

Santiago v. Church Ave. Express Inc.,
    2020 WL 597320 (E.D.N.Y. Feb. 7, 2020)..........................................45

Seekamp v. It's Huge, Inc.,
    2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ..........................................................38

Sheppard v. Consol. Edison Co. v. N.Y., Inc.,
    2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002)..........................................................13

Sierra v. Spring Scaffolding LLC,
    2015 WL 10912856 (E.D.N.Y. Sep. 30, 2015)...........................................12, 25, 46

Siler v. Landry's Seafood House–North Carolina, Inc.,
    2014 WL 2945796 (S.D.N.Y. June 30, 2014) ........................................................24

Spagnuoli v. Louie's Seafood Rest., LLC,
    2018 WL 7413304 (E.D.N.Y. Sep. 27, 2018)............................................18, 23, 46

Spencer v. No Parking Today, Inc.,
    2013 WL 1040052 (S.D.N.Y. Mar. 15, 2013) ........................................................32

Stinson v. City of New York,
    282 F.R.D. 360 (S.D.N.Y. 2012) ...........................................................................38

Sukhnandan v. Royal Health Care of Long Island LLC,
    2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013)..........................................................19

Sullivan v. DB Invs., Inc.,
    667 F.3d 273 (3d Cir. 2011)......................................................................................9

Surdu v. Madison Glob., LLC,
    2018 WL 147379 (S.D.N.Y. Mar. 23, 2018) .........................................................45

Sykes v. Harris,
    2016 WL 3030156 (S.D.N.Y. May 24, 2016) .......................................................14

Tennille v. W. Union Co.,
    2013 WL 6920449 (D. Colo. Dec. 31, 2013)..........................................................13

Torres v. Gristede's Operating Corp.,
    2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ..................................................26, 27

Torres v. Gristede's Operating Corp.,
    519 F. App'x 1 (2d Cir. 2013) ...............................................................................26

Toure v. Amerigroup Corp.,
    2012 WL 1432302 (E.D.N.Y. April 20, 2012).....................................19, 20, 24, 49

Toure v. Cent. Parking Sys.,
    2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).......................................................35

Vargas v. Howard,
    324 F.R.D. 319 (S.D.N.Y. 2018) ...........................................................................35

Velez v. Novartis Pharm. Corp.,
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ........................................................8

Victoria Perez v. Allstate Ins. Co.,
    2019 WL 1568398 (E.D.N.Y. Mar. 29, 2019) ...........................................18, 19, 20

Wagner v. NutraSweet Co.,
    95 F.3d 527 (7th Cir. 1996) ...............................................................................35

Wal-Mart Stores, Inc. v. Dukes,
    131 S.Ct. 2541 (2011) .........................................................................................33

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,
    396 F.3d 96 (2d Cir. 2005) ..................................................................................17

Willix v. Healthfirst, Inc.,
    2009 WL 6490087 (E.D.N.Y. Dec. 3, 2009) ......................................................34

Willix v. Healthfirst, Inc.,
    2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .......................................................27

Wolinsky v. Scholastic Inc.,
    900 F. Supp. 2d 332 (S.D.N.Y. 2012)) ...............................................................45

Yim v. Carey Limousine NY, Inc.,
    2016 WL 1389598 (E.D.N.Y. 2016) ...................................................................20

Zeller v. PDC Corporation,
    2016 WL 748894 (E.D.N.Y. Jan. 28, 2016) .......................................................26


**Statutes**

29 U.S.C. § 216(b) ........................................................................................................44

New York Labor Law, Article 19 ...................................................................................2

New York Wage Parity Law ...........................................................................................2


**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................31, 39

Fed. R. Civ. P. 23(b) ....................................................................................................31

Fed. R. Civ. P. 23(c) ..............................................................................................48, 50

Fed. R. Civ. P. 23(e) ....................................................................................................15

Fed. R. Civ. P. 23(g) ....................................................................................................47

**Other Authorities**

Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, 3d. Ed.,
    35 (2010) ................................................................................................................. 14

 Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist............. 9, 49

Federal Judicial Center, Manual for Complex Litigation (3d ed.)............................................ 19

**Treatises**

Herbert B. Newberg & Alba Conte, Newberg on Class Actions (4th ed. 2002) ........ 15, 19, 20, 31

Principles of the Law of Aggregate Litigation, The Am. Law Institute, Mar 1, 2010, § 3.13 ..... 14

Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.) ..................................................... 36

## INTRODUCTION

Plaintiff Alla Medvedeva ("Plaintiff") brought this wage and hour class and collective action against Defendant Assistcare Home Health Services LLC, d/b/a Preferred Home Care of New York and Preferred Home Care of New York LLC ("Defendant" or "Preferred") to recover unpaid wages and to reform Defendant's allegedly unlawful pay practices.  Following more than three years of extensive investigation and litigation, the parties have agreed to a settlement that reaches a substantial portion of this lawsuit's goal.  Specifically, the settlement provides for a large settlement fund of $6,500,000 to be distributed directly to Class Members without the need to submit any proofs of claim.  As a result of this litigation Defendant also reformed the pay practices challenged in this lawsuit, which injunctive relief will benefit current and future employees for years to come.  In consultation with defense counsel Plaintiff has reasonably valued this ongoing injunctive relief at $6,000,000, thus yielding a class and collective action settlement valued at $12,500,000.

As the Court is well aware, this settlement was no easy achievement.  The settlement is the result of voluminous discovery and two lengthy and hard-fought mediations led by an experienced mediator well-versed in home care wage and hour class actions.  Between these two mediations the parties also held an in-person settlement conference with Your Honor and received critical guidance regarding the value of the claims at issue in this litigation.  Further, after an MOU was announced the parties met in multiple post-MOU conferences with the Court and the mediator to further refine the settlement terms.  As set forth below, these lengthy and heated negotiations have resulted in a fair and reasonable settlement for the members of the proposed Class and Collective ("Class Members" unless noted otherwise).

The settlement also satisfies the criteria for preliminary approval under federal law. Accordingly, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the proposed settlement as described in the Final Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit A to the Declaration of Steven L. Wittels ("Wittels Decl.");[1] (2) preliminarily certify the proposed "Rule 23 Class" and "FLSA Collective" for settlement purposes; (3) approve the proposed Notice of Proposed Class Action Settlement and Final Approval Hearing (the "Notice") and direct its distribution; (4) appoint Wittels McInturff Palikovic and Hymowitz Law Group, PLLC as Class Counsel ("Class Counsel"); (5) schedule the Final Approval Hearing; and (6) grant such other relief as the Court deems just and proper.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

### A.       <u>Factual Allegations and Plaintiff's Investigation</u>

Plaintiff and Class Members are current and former home health care workers employed by Defendant. Plaintiff alleges that Defendant's pay practices violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et. seq.</u>, New York Labor Law ("NYLL") Article 6 and Article 19, and Public Health Law § 3614-c (commonly known as the "Wage Parity Law"). Class and Collective Action Compl. ("Compl.") ¶¶ 72–126, ECF No. 1. Defendant represents that it employed approximately 12,000 home health care workers in New York during the applicable statute of limitations period. Settlement Agreement at p. 2.[2]

---

[1] Unless otherwise indicated, all exhibits are attached to the Wittels Decl.

[2] Payroll data produced by Defendant as part of the litigation and settlement discovery reveals unique employee identification numbers for between 12,416 and 13,181 individuals. Wittels Decl. ¶ 22. This variation is due to discrepancies in the data, including the employee identification numbering system used by Defendant over the nine years covered by this lawsuit. Id. Once the class list is finalized (which list shall include additional personal data such as social security numbers and last known addresses that will help eliminate duplicates, see Settlement Agreement ¶ 3.6(B), the parties will be able to identify the exact number of Class Members).

Prior to commencing this action, Class Counsel conducted a thorough investigation into the Class Members' claims, their damages, and the likelihood of obtaining class certification. Wittels Decl. ¶ 16.  Further, Class Counsel performed extensive background research on Preferred, and obtained information on Preferred's compensation policies and practices.  Id. ¶ 17. Class Counsel also conducted in-depth interviews with Plaintiff and other of Preferred's former employees concerning, inter alia, Preferred's treatment of its home care workers, the number of hours home aides worked, Defendant's pay practices, and other information pertinent to Plaintiff's claims in this action.  Id.  Counsel also obtained and reviewed numerous documents and communications from Plaintiff and other workers and conducted research and investigation into the pertinent case law and the facts in other home care wage and hour class actions that informed the present case, as well as extensive legal research and analysis concerning the particular legal complexities attendant to home-care wage and hour claims.  Id.

**B.      Litigation and Settlement Negotiations**

On September 29, 2017 Plaintiff filed her Class and Collective Action Complaint in this Court on behalf of herself and all other similarly situated workers.  The Complaint seeks recovery of wages, liquidated damages, interest, an order enjoining Preferred's allegedly unlawful pay practices, statutory penalties, and attorneys' fees and costs.  Compl. at pp. 21–23.

From the get-go this case has been distinguished by its intensely litigated proceedings. These include appearances on Defendant's motion to stay discovery and dismiss the complaint (ECF No. 18), Plaintiff's motion for conditional certification (ECF No. 32), and Plaintiff's motion for appointment as interim class counsel (ECF No. 50).  In early 2018 the parties also negotiated a tolling agreement (ECF No. 12) and a confidentiality order (ECF No. 15) in an attempt to reach early resolution.  Wittels Decl. ¶ 19.  During this same time the parties

exchanged comprehensive analyses of the merits and viability of Plaintiff's claims, including lengthy settlement-related correspondence on February 9 and 23, and March 30, 2018.  Id. ¶ 20.

These early efforts between counsel unfortunately did not bear fruit and the parties resumed litigation.  Plaintiff then researched and drafted comprehensive written discovery, which discovery was issued on May 22 and 24, 2018.  Id. ¶ 21.  Plaintiff also began ESI negotiations and served her motion for conditional FLSA certification (ECF No. 21).  Id. Defendant likewise engaged in ESI and related Rule 26(f) discussions and served its opening dismissal brief (ECF No. 23).  Id.  Then, on July 10, 2018, the parties sought to stay the case pending class-wide mediation but advised the Court that they would continue the briefing on Defendant's dismissal motion and Plaintiff's conditional certification motion.  ECF No. 25.

On July 10, 2018, the parties also entered into a Pre-Mediation Agreement, which contained confidentiality provisions facilitating the exchange of discovery, including Defendant's time and payroll data for the entire statute of limitations period.  Wittels Decl. ¶ 22. The parties then spent over three months negotiating the exchange of documents and other data to assess the claims and defenses and to calculate potential damages in advance of mediation.  Id. Prior to and in connection with the mediation, Preferred produced thousands of pages of documents, including hundreds of thousands of lines of payroll data.  Id.  The parties then prepared numerous comprehensive reports on liability and damages issues including analyzing with the assistance of technical and subject matter experts hundreds of thousands of time and payroll records for the approximately 12,000 Class Members.  Id.  Using the documents provided by Defendant, and Class Counsel's prior and subsequent research and investigation, Plaintiff prepared and submitted a comprehensive confidential pre-mediation brief.  Id.  In support of its position, Defendant also submitted a thorough confidential pre-mediation brief.  Id.

On January 30, 2019, the parties participated in an 8+ hour mediation at the offices of Martin F. Scheinman, Esq., a highly regarded mediator with extensive experience in the wage and hour class and collective action context generally, and home care wage and hour class actions specifically.  Id. ¶ 23.  Despite mediator Scheinman's assistance, the parties did not reach agreement on the terms of a settlement and they agreed to exchange further discovery while also resuming litigation.  Id.  The ensuing document exchanges were made and analyzed by Plaintiff's counsel and their technical and subject matter experts in the spring of 2019.  Id.

As for the litigation, following a March 14, 2019 conference with Your Honor, on March 19, 2019 Defendant consented to the conditional certification of an FLSA collective.  ECF No. 65.  Then, during an April 11, 2019 court conference, Your Honor directed the parties to redouble their settlement efforts, which the parties did via correspondence on April 21, May 2, May 10, May 14, May 17 and a lengthy meet and confer on April 29.  Wittels Decl. ¶ 24.  During this same period, the parties vigorously litigated the issue of notice to the FLSA collective and the resumption of formal document discovery.  See ECF Nos. 67, 68, 71 (the parties' filings detailing disputed discovery and FLSA notice issues).

On May 23, 2019, the parties held a comprehensive settlement conference with Your Honor, including private sessions where the parties discussed the strength of their arguments with the Court and Plaintiff disclosed to Your Honor her $12,000,000 class-wide damages calculation.  Wittels Decl. ¶ 25.  As discussed at the May 23 settlement conference, this sum was compiled by Plaintiff's economist and wage and hour damages expert (Dr. Alexander Vekker,

PhD, a professor at the University of Pennsylvania) after he analyzed hundreds of thousands of lines of Defendant's payroll, time, and other electronic data.[3]  Id.

With the aid of mediator Scheinman, at the conclusion of the lengthy mediation session on July 2, 2019 and conferences with mediator Scheinman on July 17 and Your Honor on July 11 and 22, the parties reached agreement on several key settlement terms.  See the Court's July 22, 2019 Electronic Order ("As discussed on the record, the parties have reached a tentative settlement in principle.  The Court commends counsel's efforts to resolve this case through mediation.").

During the remainder of the summer and fall of 2019 the parties engaged in extensive and protracted negotiations regarding the material settlement terms, including through multiple rounds of negotiations among counsel and numerous interventions by Mr. Scheinman, including mediation conferences with Mr. Scheinman on August 18 and 21, and September 18, 20, 24, 26, 27, October 2, 7, 22, 28, 30, 31, and November 7, 13, and 18.  Wittels Decl. ¶ 27.  On November 12, 2019, the parties executed a memorandum of understanding setting forth the material settlement terms.  Id.

The parties then spent the period from December 2019 to May 2020 negotiating the final settlement terms.  Id. ¶ 28.  As with all prior settlement negotiations, these discussions were vigorous and included comprehensive written correspondence and meet and confers among counsel on December 6, January 7, 14, 30, February 9, 17, 19, 20, 26, 28, March 2–6, 10–12, 26,

---

[3] This figure does not include Plaintiff's claims for statutory penalties pursuant to New York's Wage Theft Prevention Act.  Consistent with Your Honor's guidance, Plaintiff elected to forego an analysis of these claims for settlement purposes.  Plaintiff's damages model also did not include her claim for class-wide spread-of-hours pay, as while Plaintiff believes the cases decided in workers' favor are better reasoned, her counsel recognizes that several cases in this District have limited recovery on this claim only to workers making at or below the applicable New York state minimum wage.  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 45 (E.D.N.Y. 2015).

27, 30, April 3, 7, 8, 10, 13, 16, 17, 20, 24, and 26.  Id.  The parties also attended a telephonic mediation/arbitration with Mr. Scheinman on March 6 to attempt to resolve certain remaining disputes.[4]  Id. ¶ 29.  During this same period the parties had multiple settlement status conferences with Your Honor, including on December 12, January 31, February 20, March 11, April 10, and April 20.  Id.  In connection with these court conferences, the parties provided Your Honor with two draft settlement agreements and an exhaustively researched and comprehensively written report responding to issues the Court raised during the April 10 conference.  See ECF No. 84.

These lengthy negotiations with both Your Honor's and Mr. Scheinman's assistance culminated in the Settlement Agreement that was executed on May 13 and May 14, 2020.  Settlement Agreement at pp. 21–22.  At all times, the parties' negotiations have been vigorous, adversarial, and at arm's length.  Wittels Decl. ¶ 30.

## II.    SUMMARY OF THE SETTLEMENT TERMS

### A.    <u>The Settlement Amount</u>

Under the Settlement Agreement, Defendant will establish a cash fund of Six Million, Five Hundred Thousand Dollars and No Cents ($6,500,000) ("Settlement Fund").  Settlement Agreement § 4.1.  Each Class Member is entitled to a <u>pro rata</u> share of the net settlement fund as determined by the parties' agreed-upon formula.  Id. § 4.1; Settlement Formula (Exhibit A to the Settlement Agreement).  The average estimated payment to Class Members is approximately $342.  Wittels Decl. ¶ 32.

---

[4] The parties continue to dispute whether Mr. Scheinman was empowered to act as an arbitrator during this March 6 session but have been nevertheless able to resolve the disagreements that led to this mediation/arbitration.  Wittels Decl. ¶ 29.

In addition, the parties agree that as a result of this action, Defendant reformed its pay practices to further ensure that all home care workers are properly paid for all hours worked. Settlement Agreement § 4.5.  Based on Defendant's pre-mediation discovery and Plaintiff's $12,000,000 damages model, Plaintiff reasonably estimates the value of this equitable relief at $6,000,000 over the next six years.  Wittels Decl. ¶ 33.  The total value of the settlement is therefore $12,500,000.  Id.; see also Fleisher v. Phoenix Life Ins. Co., Nos. 11 CV 8405, 14 CV 8714, 2015 WL 10847814, at *10 (S.D.N.Y. Sep. 9, 2015) ("The overall value of the settlement comprises monetary as well as non-monetary relief."); Velez v. Novartis Pharm. Corp., No. 04 CV 09194, 2010 WL 4877852, at *8, *18 (S.D.N.Y. Nov. 30, 2010) (both monetary and non-monetary relief considered in calculating value of settlement).

### B.    Eligible Class Members

Current and former workers who are entitled to receive payments from the Settlement Fund include two groups of Preferred workers: the "Rule 23 Class" and the "FLSA Collective" (together, "Class Members").  Settlement Agreement §§ 1.13, 1.24.  The "Rule 23 Class" consists of all individuals who have been employed by Defendant as Home Health Care Attendants at any time from September 29, 2011 through the date the Court grants preliminary approval.  Id. § 1.24.  The "FLSA Collective" consists of all individuals who worked for Defendant as Home Health Care Attendants at any time from September 29, 2014 through the date of preliminary approval.  Id. § 1.13.  Unless otherwise specified, "Class Members" refers to both the Rule 23 Class and the FLSA Collective.

### C.    Distribution of the Settlement Fund

Each Class Member will be paid a share of $6,500,000 (minus administration costs, attorneys' fees and expenses, and the service award) based on each individual's actual

uncompensated time, tenure, and the relative size (aggregate damages) and strength of each class-wide claim Plaintiff asserted in this litigation.   See Settlement Agreement, Exhibit A (setting forth the formula that will be used to allocate the net settlement fund).  This formula, which is based on Defendant's time data and Class Members' tenure/relevant uncompensated time, was cross-tested with Plaintiff's damages model and reasonably correlates with Plaintiff's model such that Class Members will be fairly compensated in relation to their actual alleged damages.  Wittels Decl. ¶ 34.[5]  Critically, Class Members will not be required to submit a claim form to receive payment and instead will be issued checks directly.  Settlement Agreement § 4.3(C); see also The Federal Judicial Center's "Judges' Class Action Notice and Claims Process Checklist" ("When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms.");[6] id. (directing courts to question if "a claims process [is] actually necessary").[7]

---

[5] As with any data set of this size, computer glitches, minor inconsistencies, and the collection date (i.e., stopping point) of Defendant's payroll data required Dr. Vekker to make certain projections in order to produce a class-wide damages model.  Because of the much greater expense it will require to fill in the gaps in Plaintiff's damages model with actual data (as opposed to projections), for settlement distribution purposes the parties elected to use Class Member tenure/uncompensated hours as a proxy for damages. Id.  An allocation plan based on Plaintiff's damages model would require Defendant to process and produce substantial additional data, which must be compiled into a single database.  This introduces additional expense and delay in distributing the settlement funds.  Moreover, the compilation and computations will require expert involvement on both sides.  Instead, the parties elected to use the formula based on tenure/uncompensated time as a proxy for damages.  Id.  This formula avoids delay, expense, and makes the required computations sufficiently simple so that the Settlement Administrator can apply the formula without expert involvement.  As discussed above, this proxy formula reasonably correlates with Plaintiff's damages model to ensure that Class Members are fairly compensated in relation to their actual damages.

[6] Available at: https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf

[7] See also Sullivan v. DB Invs., Inc., 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that "claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns."); McGreevy v. Life Alert Emergency Response, Inc., 258 F. Supp. 3d 380, n.1 (S.D.N.Y. 2017) ("[n]umerous studies and articles show that potential class and collective members rarely participate in class action settlements when such settlements require opt-in.").

In order to maximize the monetary compensation to Class Members, and to allow

Defendant to remain solvent, the mediator recommended (and the parties agreed), that the

Settlement Fund would be distributed in two payments over a one-year period.  Wittels Decl. ¶

36.  Following the Court's issuance of final settlement approval and the expiration of the appeal

deadline (the "Effective Date" defined in Settlement Agreement § 1.9), Defendant will deposit

$3,250,000 in an escrow account administered by the Settlement Administrator.  Settlement

Agreement §§ 4.2–3.  Each Class Member will then receive an initial settlement check equal to

50% of that individual's total settlement amount.  Id. § 4.3(C).

Defendant will then deposit the amount needed to fund the remainder of the payments

over 12 months in 12 equal monthly payments beginning within 30 days of the initial deposit,

and within 12 months the Settlement Administrator will mail final settlement checks to Class

Members for the remaining 50%.  Id. §§ 4.2, 4.3.[8]

### D.    Releases

Upon the Effective Date, Plaintiff and each Rule 23 Class Member who does not timely

opt out of the Class will fully release and discharge Defendant from all New York state law

claims asserted in the action.  Settlement Agreement § 4.10(A).  This release includes claims for

all damages arising from any such claims, including claims for liquidated damages, interest, and

---

[8] While the funds from uncashed checks will be returned to Defendant, numerous quality control measures have been put in place to ensure that Class Members receive and cash their settlement checks. For example, Defendant is required to certify that the Class List contains the "most current and up to date information that Defendant has for Class Members." Settlement Agreement § 3.6(B). The Settlement Administrator will then run the Class List through the National Change of Address Database to update any changed addresses. Id. § 3.6(E). The Settlement Administrator is also empowered to take all further reasonable and customary efforts to ensure that the Class List is as up to date and accurate as practicable. Id. Notices and checks returned undeliverable will be re-mailed following a skip trace (id. §§ 3.6(H), 4.3(E)), and Class Members will be given 90 days to cash their settlement checks. Id. §§ 4.3(C), (D). Any Class Member who has not cashed their check within 45 days will be mailed a reminder notice to cash their check. Id. Finally, for 18 months following the settlement's effective date the parties will maintain a Reserve Fund to inter alia compensate Class Members who have reasonable explanations for not having timely cashed their checks. Id. § 1.23.

attorneys' fees and costs.  Id.  In addition, each FLSA Collective Member who cashes their settlement checks specifically and affirmatively releases Defendant from any FLSA claims asserted in the action.  Id. § 3.8.

### E.   Named Plaintiff Service Award

In recognition of the services she rendered on behalf of the Rule 23 Class and the FLSA Collective, Plaintiff will apply for a service award of no more than $10,000.  Settlement Agreement § 4.7.  "Courts regularly grant requests for service awards in class actions to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs."  Hall v. ProSource Techs., LLC, No. 14 CV 2502, 2016 WL 1555128, at *9 (E.D.N.Y. Apr. 11, 2016) (internal quotations and citations omitted); see also Toure v. Amerigroup Corp., No. 10 CV 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) ("[S]ervice awards recognize the risks that the named Plaintiffs . . . faced by participating in a lawsuit against their current or former employer and the efforts they made on behalf of the class.").  Further, Plaintiff "took significant risk in pursuing the case," as she "could have faced retaliation from defendants and/or be 'black balled' from the industry" as a result of his involvement.  Karic v. Major Automotive Cos., Inc., No. 09 CV 5708, 2016 WL 1745037, at *7 (E.D.N.Y. Apr. 27, 2016).

As detailed in the Declaration of Lead Class Counsel Steven Wittels, Plaintiff Ms. Medvedeva reviewed and discussed the pleadings, discovery demands, and memoranda of law.  Id. She conferred with Class Counsel regarding the status of the case and the settlement negotiations, at all times encouraging Class Counsel to obtain the best possible result for the absent Class members. Id.  Indeed, Plaintiff's participation in this case was significant and indispensable.  Id.

The requested service award is well-deserved and falls well within the range of awards approved in similar cases.  See, e.g., In re Polaroid, No. 03 CV 8335, 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (citing Dornberger v. Metropolitan Life Ins. Co., No. 95 CV 10374, 203 F.R.D. 118 (S.D.N.Y. Oct. 5, 2001) (case law supports service awards of between $2,500 and $85,000); Karic, 2016 WL 1745037, at *8 (collecting cases and approving service awards of $20,000 each to seven named plaintiffs in wage and hour action); Puglisi v. TD Bank, N.A., No. 13 CV 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving service awards of $15,000 each for two of the named plaintiffs and $10,000 each for three other named plaintiffs in a wage and hour action);  Hernandez v. Merrill Lynch & Co., Inc., No. 11 CV 8472, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $13,000 to class representatives in wage and hour action).   Moreover, the service award request was subject to arm's length negotiations between the parties, was facilitated by a noted mediator, and will be disclosed to the Class.  Wittels Decl. ¶ 37.  In sum, both the facts and law support the requested Service Award.  The Court need not rule on the requested Service Award now; however, pursuant to the Settlement Agreement Plaintiff will move for final court approval of the Service Award simultaneously with the Motion for Final Approval of the Settlement.

## F.      Attorneys' Fees and Litigation Costs

Class Counsel will request that the Court approve litigation expenses and attorneys' fees of one third of the Settlement Fund, rather than the gross settlement benefit (i.e. $2,166,666).  Id. § 4.6.  This sum is consistent with fee awards in the Second Circuit.  See Hall, 2016 WL 1555128, at *11 ("33% of the common fund is considered routine and therefore reasonable.") (internal citations omitted)); Sierra v. Spring Scaffolding LLC, No. 12 CV 05160, 2015 WL 10912856, at *7 (E.D.N.Y. Sep. 30, 2015) (same).

Class Counsel's requested fee and expense award is also reasonable in relation to the result achieved for the Class.  As noted supra, Class Counsel achieved $6,500,000 in monetary benefits as well as injunctive relief reasonably valued at $6,000,000.  In awarding attorneys' fees, it is well settled that "courts include the value of both the monetary and non-monetary benefits conferred on the Class."  Fleisher, 2015 WL 10847814, at *15; see also id. at *10 ("The overall value of the settlement comprises monetary as well as non-monetary relief.").  "Leading authorities agree, as do courts in this Circuit and nationwide."  Id. at *15 (collecting authorities); see also Berni v. Barilla G. e R. Fratelli, S.p.A., No. 16 CV 4196, 2019 WL 2341991, at *20 (E.D.N.Y. June 3, 2019) ("well established that non-monetary benefits may be considered" in awarding class action fees).

"The Federal Judicial Center provides an example of when it is appropriate to base a percentage fee on the value of injunctive relief through objective criteria: 'an injunction against an overcharge may be valued at the amount of the overcharge multiplied by the number of people likely to be exposed to the overcharge in the near future.'"  Fleisher, 2015 WL 10847814, at *15.

The Federal Judicial Center's method was precisely the method used in calculating the $6,000,000 value of the injunctive relief Class Counsel obtained here.  Wittels Decl. ¶ 33; see also Sheppard v. Consol. Edison Co. v. N.Y., Inc., No. 94 CV 0403, 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) (valuing non-monetary injunctive relief at "an estimated $5 million," when considering class counsel's fee request); McCoy v. Health Net, Inc., 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (even though the parties could only "fairly value the injunctive relief at between $26 million and $38 million," the court used this valuation for setting fee); Tennille v. W. Union Co., No. 09 CV 00938, 2013 WL 6920449, at *10 (D. Colo. Dec. 31, 2013) (adding $46,560,596 in injunctive value to $19,000,000 in available refunds and awarding fee of 35% ($22,946,208) of

13

$65,560,596 because an attorneys' fee based solely on the monetary component "would severely undervalue class counsel's efforts in obtaining the injunctive relief and other benefits included in the [settlement]."); Sykes v. Harris, No. 09 Civ 8486, 2016 WL 3030156, at *17 (S.D.N.Y. May 24, 2016) (considering value of injunctive relief in setting class counsel fees); Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, 3d. Ed., 35 (2010) (basing fees on the "actual value to the class of any settlement fund **plus** the actual value of any nonmonetary relief") (emphasis added); Principles of the Law of Aggregate Litigation, The American Law Institute, Mar 1, 2010, § 3.13 (noting fee awards are to be "based on both the monetary **and** nonmonetary value of the judgment or settlement") (emphasis added).

When considering the $6,000,000 injunctive benefit Class Counsel's efforts confer on the Class, the requested attorneys' fee and expense award represents just 17.33% of the $12,500,000 gross settlement benefit.  Wittels Decl. ¶ 38.  Class Counsel's requested fee is thus at the low end of fees approved in comparable cases, as a fee of one third of the total value obtained for the Class has repeatedly been deemed "reasonable and consistent with the norms of class litigation in this Circuit."  Garcia v. Pancho Villa's of Huntington Village, Inc., No. 09 CV 486, 2012 WL 1843785, at *8 (E.D.N.Y. May 21, 2012) (internal quotations and citations omitted); Toure, 2012 WL 3240461, at *5 (same).  It is thus no surprise that Courts in this Circuit have routinely approved fee requests for one third of the value obtained in cases of a similar size to the instant matter.  See, e.g., Beckman v. KeyBank, N.A., 293 F.R.D. 467 (S.D.N.Y. 2013) (awarding one third of $4.9 million settlement in wage and hour action); Puglisi, 2015 WL 4608655, at *1 ("The attorneys . . . who prosecuted this case are experienced class action employment lawyers with good reputations among the employment law bar.  The Court grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $3,300,000.00 in attorneys' fees, which is one-third . . . .").

Finally, Class Counsel's fee and expense request was subject to arm's length negotiations between the parties, was facilitated by a noted mediator, will be disclosed to the Class, and will be paid on the same schedule as the payments to Class Members.  Wittels Decl. ¶ 38.  The Court need not rule on fees and costs now, as pursuant to Federal Rule of Civil Procedure 23(h), Plaintiff will move for final court approval of Class Counsel's fee and expense request simultaneously with the Motion for Final Approval of the Settlement.

### G.   The Settlement Administrator

The parties have agreed on the selection of Arden Claims Services as the Settlement Administrator to provide notice to the Class and administer payment of the settlement to Class Members.  Id. § 1.25.  The Settlement Administrator's fee of $225,000 will be paid from the Settlement Fund.  Id. §§ 1.26, 4.1.  At the insistence of Class Counsel, the Settlement Administrator has agreed to cap its fee, and based on Class Counsel' experience the Settlement Administrator's fee in this matter is reasonable for a case of this size.   Wittels Decl. ¶ 39.

## III.   RULE 23 CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a motion for preliminary approval;

2. Dissemination of mailed notice of settlement to all affected class members; and

3. A final settlement approval hearing for the court to consider the fairness, adequacy, and reasonableness of the settlement.

See Fed. R. Civ. P. 23(e); see also Herbert B. Newberg & Alba Conte, Newberg on Class Actions  §§ 11.22, et seq. (4th ed. 2002) ("Newberg").  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  With this motion, Plaintiff requests that the Court take the first step: granting

preliminary approval of the settlement, conditionally certifying the settlement class, and

approving the proposed Notice and authorizing its dissemination to the Class.

The parties submit the following proposed schedule for the final resolution of this matter

for the Court's consideration and approval:

1. Within fifteen (15) days after entry of the Preliminary Approval Order, Defendant will provide the Settlement Administrator and Class Counsel with a Class List, containing, inter alia, the full names, social security numbers, last known addresses, phone numbers, and primary language of each Class Member.  Settlement Agreement § 3.6(B).

2. In advance of the Settlement Administrator's mailing of any Notice, the Settlement Administrator will set up and operate a case-specific call center, including live operator and voice-mail technology, to provide telephone support for the settlement and to address questions from and otherwise provide information to Class Members regarding the settlement.  Id. § 3.6(C).  Class Members will be able to have their questions answered and speak to someone in English, Russian, and Spanish.  Wittels Decl. ¶ 41.

3. In advance of the Settlement Administrator's mailing of any Notice, counsel will negotiate in good faith (1) a list of frequently asked questions and answers ("FAQs") to be used by the Settlement Administrator in responding to inquiries from Class Members following the issuance of the Notice, and (2) the Settlement Administrator's recorded message to callers.  Settlement Agreement § 3.6(C).  These documents will also be translated into Russian and Spanish by certified translators.  Wittels Decl. ¶ 42.

4. In advance of the Settlement Administrator's mailing of any Notice, the Settlement Administrator will update the Class List to ensure that it is as accurate as practicable.  Settlement Agreement § 3.6(E).

5. Within thirty (30) days of receiving the Class List, the Settlement Administrator will mail the Notice to Class Members.  Id. § 3.6 (F).

6. Notices retuned as undeliverable will be skip traced and re-mailed.  Id. § 3.6 (G)–(H).

7. Settlement Class Members will have sixty (60) days after the date the Notice is mailed to opt out or object to the settlement.  Id. §§ 3.7(A), 3.8(A).

8.   A final Fairness Hearing will be held as soon as is convenient for the Court.  Id. § 3.9.

9.   No later than three (3) business days prior to the Fairness Hearing the Settlement Administrator shall certify to the Court the completion of its responsibilities that can be accomplished prior to the Fairness Hearing. Id. § 3.7(J).

10.  Plaintiff will file a Motion for Final Approval of Settlement no later than seven (7) days before the Fairness Hearing.  Id. § 3.9.

11.  After the final Fairness Hearing, if the Court grants Plaintiff's Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  Id. § 3.10.

12.  Not later than ten (10) days following the settlement's Effective Date, the Settlement Administrator will disburse initial settlement checks to Class Members.  Id. § 4.3(C).

13.  Within twelve (12) months of the Effective Date, the Settlement Administrator will mail final settlement checks to Class Members.  Id. § 4.3(D).

14.  For 18 months following the Effective Date, the Settlement Administrator will maintain the Reserve Fund to address errors and omissions in the calculation of Class Members' individual shares of the settlement, including but not limited to (a) claims from individuals claiming to be Class Members but not identified as such by Defendant, (b) Class Members who correctly challenge their settlement share, and (c) Class Members who have reasonable explanations for not having timely cashed their checks.  Id. § 1.23.

## IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

The law strongly favors compromise and settlement of class actions.  See

Moukengeshcaie v. Eltman, Eltman & Cooper, P.C., No. 14 CV 7539, 2019 WL 5204809, at *6

(E.D.N.Y. Oct. 15, 2019) (noting that "[j]udicial policy favors the settlement and compromise of

class actions") (citing Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116–17 (2d Cir.

2005)); Karic v. Major Automotive Cos., Inc., No. 09 CV 5708, 2016 WL 1745037, at *4

(E.D.N.Y. Apr. 27, 2016).  In addition, courts encourage early settlement of class actions

"because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."  Azogue v. 16 for 8 Hospitality LLC, No. 13 CV 7899, 2016 WL 4411422, at *3 (S.D.N.Y. Aug. 19, 2016) (internal quotations and citation omitted); see also Clem v. KeyBank, N.A., No. 13 CV 789, 2014 WL 2895918, at *5 (S.D.N.Y. June 20, 2014) (commending parties for acting responsibly in reaching early settlement).

The approval of a proposed class action settlement is a matter of discretion for the trial court.  Victoria Perez v. Allstate Ins. Co., No. 11 CV 1812, 2019 WL 1568398, at *1 (E.D.N.Y. Mar. 29, 2019) (citing Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1998)).  "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties."  Puglisi, 2015 WL 574280, at *1 (internal quotation marks omitted).  "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ."  Id. (internal quotations omitted); see also Garcia, 2012 WL 1843785, at *2 (same); In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 05 CV 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.").

Indeed, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  Spagnuoli v. Louie's Seafood Rest., LLC, No. 13 CV 4907, 2018 WL 7413304, at *3 (E.D.N.Y. Sep. 27, 2018) (internal quotation marks omitted); see also Moukengeshcaie, 2019 WL 5204809, at *8 ("Given the presumption of fairness when a class settlement has been reached after arm's-length negotiations between experienced, capable counsel after meaningful discovery, the Court finds that the process of reaching the proposed

18

settlement in this case was procedurally fair.") (internal citations omitted); Oladipo v. Cargo Airport Servs. USA, LLC, No. 16 CV 6165, 2019 WL 2775785, at *8 (E.D.N.Y. July 2, 2019) (same).  The force of this presumption is increased when a settlement is reached with the assistance of an experienced mediator, as is the case here.  Ortega v. Uber Techs. Inc., No. 15 CV 7387, 2018 WL 4190799, at *5 (E.D.N.Y. May 4, 2018); Toure v. Amerigroup Corp., No. 10 CV 5391, 2012 WL 1432302, at *1 (E.D.N.Y. Apr. 20, 2012).  Indeed, the settlement in this case was overseen both by an experienced mediator and a federal judge well-versed in wage and hour matters.

Preliminary approval requires only the Court's "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  Victoria Perez, 2019 WL 1568398, at *1; Puglisi, 2015 WL 574280, at *1 (citing Newberg § 11.25).  In fact, "[c]ourts often grant preliminary settlement approval without requiring a hearing or a court appearance."  Sukhnandan v. Royal Health Care of Long Island LLC, No. 12 CV 4216, 2013 WL 4734818, at *1 (S.D.N.Y. Sep. 3, 2013).  To grant preliminary approval, the Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  Victoria Perez, 2019 WL 1568398, at *1 (quoting In re Traffic Exec. Ass'n, 627 F.2d 631, 634 (2d Cir. 1980)); Newberg § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice to be sent to class members) (quoting Manual for Complex Litigation (3d ed.) § 30.41).  "[W]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class and falls within the

reasonable range of approval, preliminary approval is granted." Berkson v. Gogo LLC, 147 F.

Supp. 3d 123, 130 (E.D.N.Y. 2015) (internal citations omitted).

Here, the settlement was reached after Class Counsel conducted a thorough investigation

and evaluated the proposed Class' claims and defenses, and after vigorous arm's-length

negotiations between the parties that were facilitated by both the Court and a noted class action

mediator. Wittels Decl. ¶ 10. Accordingly, this settlement bears all the hallmarks of a fair

settlement. See, e.g., Moukengeshcaie, 2019 WL 5204809, at *8 (finding that settlement

negotiations were fair where the parties were represented by knowledgeable counsel, engaged in

discovery, and had their negotiations overseen by an experienced mediator); Victoria Perez, 2019

WL 1568398, at *1 (same).

### A.   The Settlement Is Fair, Reasonable, and Adequate

In evaluating class action settlements, courts in the Second Circuit consider the nine

factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) abrogated

on other grounds by Goldberger v. Integrated Resource, Inc., 209 F.3d 43 (2d Cir. 2000).

Although the Court's task on a motion for preliminary approval is merely to perform an "initial

evaluation," Newberg § 11.25, and to determine whether the settlement falls within the range of

possible final approval or "the range of reasonableness," id. at § 11.26, it is useful for the Court

to consider the criteria on which it will ultimately judge the settlement.

The Grinnell factors are (1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  Grinnell, 495 F.2d at 463. These factors are not to be applied in a rigid, formalistic manner.  Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice."  Id. at 468.  Here, the totality of the Grinnell factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### 1. Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1)

By reaching a favorable settlement prior to trial, Plaintiff seeks to avoid significant risk, expense, and delay and instead ensure a substantial recovery for the Class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  Doe #1 by Parent #1 v. New York City Dep't of Educ., No. 16 CV 1684, 2018 WL 3637962, at *11 (E.D.N.Y. July 31, 2018) (quoting In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), aff'd sub. nom. D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001)).  This case is no exception, with approximately 12,000 Class Members and novel claims under federal and state law.

Continued litigation will only add expense and delay.  While the parties have engaged in exhaustive pre-mediation discovery, extensive additional discovery will be required to prepare this case for class certification and trial.  In addition, Defendant would request a decision regarding its fully-briefed motion to dismiss and the parties likely would file cross-motions for summary judgment on several of the unique legal issues raised by Plaintiff's claims.  If the Court denied the motions, a lengthy, fact-intensive trial would be necessary and would consume tremendous time and resources for the parties and the Court.  Further, any judgment would likely be appealed, adding further uncertainty and delay.  In contrast, the settlement bestows substantial

monetary relief to Class Members in a prompt and efficient manner, has led Preferred to reform its pay practices, and avoids the risks and costs inherent in class actions specifically, and litigation generally.  Therefore, the first Grinnell factor weighs heavily in favor of approval.  See, e.g., Moukengeshcaie, 2019 WL 5204809, at *8) (factor favors approval because "[g]iven the complexity of any class action lawsuit . . . it is reasonable to assume that absent the instant Settlement, continued litigation would have required extensive time and expense") (citation omitted); Karic, 2016 WL 1745037, at *5 (noting that "[i]n the absence of a settlement, further litigation in this case would clearly cause additional expense and delay, and could lead to a fact-intensive trial."); Hernandez v. Immortal Rise, Inc., 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (factor weighs in favor of approval because class and collective action litigation to recover overtime wages "would be complex, expensive, and long"); Reid v. SuperShuttle Intern., Inc., No. 08 CV 4854, 2012 WL 3288816, at *2 (E.D.N.Y. Aug. 10, 2012) (factor favors approval because "[a]bsent a settlement, this case would likely take substantial time and resources to resolve . . . additional discovery, briefing and argument of motions for summary judgment and for class certification (and, with class certification, potential appeals) and eventually, perhaps, a lengthy trial followed by further appeals.").

### 2.  The Reaction of the Class (Grinnell Factor 2)

Notice of the settlement and its details has not yet been issued to the Class.  The Court should therefore analyze this factor after the notice has been issued and the response of Class Members can be assessed.  At this early stage, this factor is neutral.

### 3.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3)

Although preparing this case through trial would likely require many hundreds (if not thousands) of hours of additional discovery for both sides, the parties have completed more than

enough discovery to recommend settlement.  The pertinent question raised by this factor is

"whether counsel had an adequate appreciation of the merits of the case before negotiating."

Spagnuoli, 2018 WL 7413304, at *4 (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d

516, 537 (3d Cir. 2004)).  "The pretrial negotiations and discovery must be sufficiently

adversarial that they are not designed to justify a settlement . . . [but are] an aggressive effort to

ferret out facts helpful to the prosecution of the suit."  Id. (quoting In re Austrian & German

Bank Holocaust Litig., 80 F. Supp. 2d at 176).

The discovery taken here easily meets this standard.  Class Counsel undertook in-depth

pre-litigation investigation, and the parties fully briefed Defendant's motion to dismiss and

Plaintiff's motion for conditional FLSA collective action certification.  Wittels Decl. ¶¶ 17–22.

Defendant then produced full payroll data for the Class and Plaintiff worked closely with her

expert in analyzing hundreds of thousands of lines of payroll data to assess the scope of

Defendant's alleged wage and payroll violations.  Id. ¶ 22.  The parties also undertook significant

pre- and post-lawsuit legal research and analysis concerning Plaintiff's claims.  Id. ¶¶ 16–26.  As

a result of this and Class Counsel's participation in three vigorous settlement discussions

conducted by Your Honor and an experienced mediator, Class Counsel was able to evaluate the

strengths and weaknesses of Class Members' claims against Plaintiff's $12,000,000 damages

model.

Based on these circumstances, the parties were well-equipped to make the hard-fought

compromises necessary to resolve a litigation of this size.  Moukengeshcaie, 2019 WL 5204809,

at *8 (approving settlement because the parties "have adequately evaluated the merits of the

case, and participated in an all-day mediation."); Frank v. Eastman Kodak Co., 228 F.R.D. 174,

185 (W.D.N.Y. 2005) (approving settlement "in relatively early stages of discovery" where

parties had exchanged extensive information pertaining to Defendant's time and pay practices and where counsel's negotiations had "been in no way collusive").

Your Honor's assistance in this process, along with that of a noted class action mediator, further supports preliminary approval. "A settlement . . . reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process." Elkind v. Revlon Consumer Prod. Corp., No. 14 CV 2484, 2017 WL 9480894, at *17 (E.D.N.Y. Mar. 9, 2017), report and recommendation adopted, No. 14 CV 2484, 2017 WL 1169552 (E.D.N.Y. Mar. 29, 2017) (quoting In re Penthouse Executive Club Comp. Litig., No. 10 CV 1145, 2013 WL 1828598, at *1 (S.D.N.Y. Apr. 30, 2013)). Here, as in Puglisi, "[a]n experienced class action employment mediator . . . assisted the Parties with the settlement negotiations and presided over a full-day mediation. This reinforces the non-collusive nature of the settlement." 2015 WL 574280, at *2; Garcia v. Pancho Villa's of Huntington Village, Inc., No. 09 CV 486, 2012 WL 1843785, at *2 (E.D.N.Y. May 21, 2012); Toure, 2012 WL 1432302, at *1.

4.   **Plaintiff Faces Real Risks if the Case Proceeds (Grinnell Factors 4 and 5)**

Although Plaintiff believes her case is strong, she is nevertheless cognizant of the considerable risks of proceeding to trial. First, "[l]itigation inherently involves risks." Hall v. ProSource Tech., LLC, No. 14 CV 2502, 2016 WL 1555128, at *7 (E.D.N.Y. Apr. 11, 2016) (quoting In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y 1997)). Indeed, "the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." Id. (quoting Siler v. Landry's Seafood House–North Carolina, Inc., No. 13 CV 587, 2014 WL 2945796, at *6 (S.D.N.Y. June 30, 2014)). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the

relief offered by the settlement." In re Austrian & German Bank Holocaust Litig, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

Moreover, there is no guarantee that this case will lend itself to class certification. Specifically, Defendant "would argue that there are individualized questions as to the job duties and payment structure for the class members that makes certification and ultimately trial on a class-wide basis impractical." Sierra v. Spring Scaffolding LLC, No. 12 CV 05160, 2015 WL 10912856, at *5 (E.D.N.Y. Sep. 30, 2015). Indeed, Defendant "would likely pursue all potential defenses and raise multiple issues in the course of the litigation, making the outcome of [Plaintiff's] claims uncertain." Moukengeshcaie, 2019 WL 5204809, at *9. A "trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under federal and state law, and in light of the defenses available to Defendant, which would pose substantial risk as to both liability and damages." Hall, 2016 WL 1555128, at *7 (internal quotations and citations omitted). Plaintiff would have to overcome, among other things, Preferred's defenses that at least some of Class Members' claims are time-barred, that Defendant did not act willfully, that Plaintiff was never entitled to be compensated for wage notice or wage statement violations or spread of hours pay, and that Plaintiff and Class Members were paid in accordance with the law. Sierra, 2015 WL 10912856, at *5.

While Plaintiff believes that she could ultimately establish Preferred's liability, Plaintiff's Counsel are both experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties and therefore weighs in favor of preliminary approval. See, e.g., Immortal Rise, Inc., 306 F.R.D. at 100 (Your

Honor finding that risks as to both liability and damages, including overcoming defendant's

defenses and proving willfulness weighed in favor of final approval).

   5.  **Maintaining the Class Through Trial Would Not Be Simple
       (Grinnell Factor 6)**

The risk of obtaining class certification and maintaining it through trial is also present.

The Court has not yet certified the Class and no FLSA Collective Members have opted in

pursuant to 29 U.S.C. § 216(b).  To obtain Class certification and defend against attempts to

decertify the Collective, Plaintiff would likely have to overcome Defendant's defenses that

individual questions predominate, that the challenged pay practices were not uniform for all

potential Class and Collective Members, and that Plaintiff cannot prove damages.  See, e.g.,

Zeller v. PDC Corporation, No. 13 CV 5035, 2016 WL 748894, at *3 (E.D.N.Y. Jan. 28, 2016)

(finding that "maintaining a class through trial would be neither simple nor easy"); Reid v.

SuperShuttle Intern., Inc., 2012 WL 3288816 at *3 (same).

   While Class Counsel believes that the Court would certify the Rule 23 Class and finally

certify the FLSA Collective, both determinations would be reached only after extensive

litigation, including electronic, deposition, and expert discovery and extensive briefing.  See

Moukengeshcaie, 2019 WL 5204809, at *9 ("If plaintiff was to move for class certification,

defendant may well oppose the motion and move for decertification.  This process would require

extensive briefing by both parties and inherently involves risk, expense, and delay.").  Further,

Defendant would likely challenge those determinations after the close of discovery.  See Torres

v. Gristede's Operating Corp., No. 04 CV 3316, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21,

2010) aff'd, 519 F. App'x 1 (2d Cir. 2013) ("The risk of maintaining class status throughout trial

also weighs in favor of final approval.  Defendant would likely move to decertify, requiring

another round of briefing.").  Defendant could also seek permission to file an interlocutory

appeal under Fed. R. Civ. P. 23(f).  Torres, 2010 WL 5507892, at *5.  "Settlement eliminates the risk, expense, and delay inherent in this process."  Id.; see also Willix v. Healthfirst, Inc., No. 07 CV 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (same).  This factor strongly favors preliminary approval.

### 6. Defendant Likely Could Not Withstand a Greater Judgment (Grinnell Factor 7)

The parties negotiated heavily over the settlement amount and the timing of Defendant's obligation to fund the settlement, taking into account Defendant's ability to pay a settlement that would both compensate proposed Class Members and allow the agency to remain solvent.  Wittels Decl. ¶ 38.  Moreover, as the Court is aware from the ongoing involvement of defense counsel (Hodgson Russ) for Preferred in a separate ERISA benefits and captive insurance class action (Gonzalez de Fuente et al. v. Preferred Home Care of New York LLC et al., No. 18 CV 6749 (E.D.N.Y.)) the company has limited resources to fight litigation on multiple fronts.  Thus, settlement now, before further defense costs are incurred in this matter, will help ensure Class Members receive settlement payments without the heightened risk of unavailability of funds to satisfy a judgment sometime in the future.

This factor therefore weighs strongly in favor of the Court's approval of the settlement.  Chambery v. Tuxedo Junction Inc., No. 12 CV 06539, 2014 WL 3725157, at *7 (W.D.N.Y. July 25, 2014) (settlement strongly favored where defendant's finances played a large role in reaching settlement and defendant needed to borrow to satisfy settlement payment).  Further, even if Defendant could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair."  Hall, 2016 WL 1555128, at *8 (quoting In re Austrian & German Bank Holocaust Litig, 80 F. Supp. 2d at 178 n. 9);  Immortal Rise, Inc., 306 F.R.D. at 101 (same).

**7.   The Settlement Amount Is Substantial, Even in Light of the Best Possible
Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)**

The determination of whether a settlement amount is reasonable "does not involve the

use of a 'mathematical equation yielding a particularized sum.'"  Bodon v. Domino's Pizza,

LLC, No. 09 CV 2941, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) (quoting In re Austrian

& German Bank Holocaust Litig, 80 F. Supp. 2d at 178).  "[T]he question . . . is not whether the

settlement represents the highest recovery possible . . . but whether it represents a reasonable one

in light of the many uncertainties the class faces."  Id.  "There is no reason, at least in theory,

why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a

single percent of the potential recovery."  City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 n.

2 (2d Cir. 1974); see also Moukengeshcaie, 2019 WL 5204809, at *9) ("It is well-settled law that

a cash settlement amounting to only a fraction of the potential recovery will not per se render the

settlement inadequate or unfair.") (quoting Johnson v. Brennan, No. 10 CV 4712, 2011 WL

4357376, at *11 (S.D.N.Y. Sep. 16, 2011)).  Here, Preferred has agreed to settle this case for a

substantial amount: $6,500,000, plus considerable injunctive relief valued at an additional

$6,000,000.  Even if the Court were to only consider the $6,500,000 monetary relief, this sum is

more than 50% of the $12,000,000 in damages Plaintiff used as the basis for her settlement

negotiations.

The settlement also treats individual Class Members fairly in relation to their realistic

outcomes at trial.  As discussed supra, Class Counsel was careful to ensure that the payment

allocation plan tracked Plaintiff's damages model and yields a fair result.  Indeed, looking at

exemplars of individual Class Members' recovery under the settlement versus their realistic

outcomes at trial further demonstrates the settlement's reasonableness.  The chart below details

the payments that will be made to 32 individuals, between the 10th and the 90th percentiles of 40

Class Members selected at random by Plaintiff's expert from Defendant's pre-mediation production and compares those sums with what these same Class Members could reasonably expect to recover at trial.  As set forth in the following chart, the overwhelming majority of Class Members will be giving up less than $200 to avoid the risk of trial and receive a payment in the near future.

| Employee ID | Overtime + Shaving + Wage Parity Damages[9] | Projected Settlement Allocation[10] | Difference |
|---|---|---|---|
| 126039 | $262.30 | $38.69 | -$223.61 |
| 120192 | $632.66 | $297.90 | -$334.75 |
| 45248 | $2.67 | $7.74 | $5.07 |
| 125944 | $2.20 | $23.21 | $21.01 |
| 129041 | $46.80 | $77.38 | $30.58 |
| 128826 | $241.26 | $112.20 | -$129.06 |
| 43661 | $557.99 | $495.28 | -$62.71 |
| 123103 | $0.00 | $7.74 | $7.74 |
| 40709 | $0.00 | $7.74 | $7.74 |
| 42205 | $248.96 | $243.74 | -$5.22 |
| 126491 | $201.72 | $27.08 | -$174.63 |
| 125705 | $507.63 | $189.57 | -$318.06 |
| 121434 | $437.69 | $23.21 | -$414.48 |

---

[9] On a classwide basis these three claims were 94.17% of Plaintiff's 12,000,000 damages model.  Wittels Decl. ¶ 35.  The remaining 5.83% of Plaintiff's damages model is attributable to Class Members' unpaid travel time.  Id.  Following the Court's April 11, 2019 direction that the parties redouble their settlement efforts, both Plaintiff and Defendant separately performed random samples of episodes of care where travel time could have occurred, calculated the potential uncompensated travel time for each episode of care, and projected those calculations on a class-wide basis.  Id.  Because the parties' travel time projections were less than 10% apart, the parties agreed to use Plaintiff's higher $700,000 valuation of this claim for mediation and settlement purposes.  Id.  Considering that the class-wide damages for this claim are based on a random sample, there is no methodologically sound way to incorporate these damages into the analysis in this table, which is also based on a random sample.  Id.  In accordance with the Settlement Agreement's allocation formula (the "Third Claim Allocation" of 5% of the net settlement fund) this claim will be paid in reference to only those weeks in which Class Members worked on episodes of care where travel time could have occurred (i.e. the "Third Claim Allocation").  Id.  This allocation will require data collection by defendant that has not yet been completed.  Id.

[10] Plaintiff's projected settlement allocation was derived by applying the parties' allocation plan to Defendant's pre-mediation data and document production.  Id.  Because the settlement funds will be distributed based on Defendant's retrieval of its current and most up to date data for the approximately 12,000 Class Members, Defendant is waiting until the Court issues preliminary approval (which will set the end date of the class period) before it incurs the expense of retrieving, formatting, and analyzing this data.  Id.

| 131083 | $23.62 | $23.21 | -$0.40 |
| 41168 | $0.00 | $77.38 | $77.38 |
| 118403 | $0.00 | $3.87 | $3.87 |
| 124522 | $237.26 | $46.43 | -$190.83 |
| 123655 | $175.37 | $46.43 | -$128.94 |
| 41529 | $10,252.53 | $10,044.17 | -$208.36 |
| 44655 | $19.39 | $11.61 | -$7.78 |
| 129864 | $146.25 | $77.38 | -$68.87 |
| 42421 | $9.83 | $135.41 | $125.58 |
| 43577 | $8.18 | $127.67 | $119.49 |
| 120671 | $64.25 | $7.74 | -$56.51 |
| 124255 | $138.67 | $247.61 | $108.94 |
| 123385 | $513.55 | $301.77 | -$211.78 |
| 42365 | $68.08 | $11.61 | -$56.48 |
| 44444 | $341.59 | $394.62 | $53.03 |
| 128546 | $76.05 | $112.20 | $36.15 |
| 125475 | $88.79 | $116.07 | $27.28 |
| 128419 | $46.62 | $135.41 | $88.78 |
| 123887 | $21.49 | $3.87 | -$17.62 |

This case presents significant risks that strongly favor compromise. Given the attendant risks of litigation, the settlement provides substantial value to each Class Member. Every Class Member will receive a payment keyed to their individual aggregate damages and Defendant has reformed its pay practices. Weighing the benefits of the settlement against the risks associated with proceeding with litigation, the settlement is reasonable.

*   *   *

In sum, the Grinnell factors all weigh in favor of issuing preliminary approval of the settlement. Because the settlement, on its face, is "fair, adequate, and reasonable, and not the product of collusion," Frank v. Eastman Kodak Co., 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (quoting Joel A. v. Giuliani, 218 F.3d 132, 138–39 (2d Cir. 2000)), the Court should grant preliminary approval.

## V.     THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED

Plaintiff seeks to certify the following class under Federal Rule of Civil Procedure 23(e):

> All individuals who have been employed by Defendant as Home Health Care Attendants, which term shall include, but not be limited to, hourly Home Care Aides, Home Health Aides, Home Health Attendants, Home Attendants, Personal Care Aides, Personal Care Assistants, Personal Assistants Unskilled, Personal Assistants performing consumer directed personal assistance (CDPAPs), Live-in Home Health Care Attendants, private pay Home Health Care Attendants, and all others providing home care services, at any time from September 29, 2011 through the date of preliminary approval.

As discussed below, the Rule 23 Class meets the requirements for class certification for settlement purposes, and Preferred does not oppose provisional certification of the Rule 23 Class. Settlement Agreement § 1.24; see also Newberg § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

"Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing." Puglisi v. TD Bank, N.A., No. 13 CV 637, 2015 WL 4608655, at *2 (E.D.N.Y. July 30, 2015) (collecting cases).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Plaintiff requests certification of a hybrid 23(b)(2) injunctive and 23(b)(3) damages class and thus must satisfy both of these Rule 23(b) requirements.  Rule 23(a) requires that:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rules 23(b)(2) and (3) require courts to find that:

[T]he party opposing the class has [allegedly] acted or refused to act on grounds that apply generally to the class; [and]

[Q]uestions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  Elkind v. Revlon Consumer Prod. Corp., No. 14 CV 2484, 2017 WL 9480894, at *6 (E.D.N.Y. Mar. 9, 2017) (quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997)).

## A.     Numerosity

"[N]umerosity is presumed at a level of 40 members."   Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiff easily satisfies this requirement because there are approximately 12,000 Class Members.  Wittels Decl. ¶ 22.  In addition, "sheer size alone is not the only factor to consider when analyzing numerosity . . . and a finding of numerosity is supported where, as here, the potential class members are of limited financial means, or may fear retaliation by their employer."  Spencer v. No Parking Today, Inc., No. 12 CV 6323, 2013 WL 1040052, at *13 (S.D.N.Y. Mar. 15, 2013) (collecting cases); see also Immortal Rise, Inc., 306 F.R.D. at 97 (Bloom, M.J.) (class is sufficiently numerous such that "joinder of all members is impracticable" at 150 putative members).

B.      **Commonality**

The Rule 23 Class also satisfies the commonality requirement.  The commonality

requirement is met "where there are questions of law or fact common to the class."  Elkind, 2017

WL 9480894 at *8.  "[T]here need only be a single issue common to all members of the class, as

the critical inquiry is whether the common questions lay at the core of the cause of action

alleged." Karic v. Major Automotive Cos., Inc., No. 09 CV 5708, 2016 WL 1745037, at *5

(E.D.N.Y. Apr. 27, 2016) (internal quotations omitted); see also Wal-Mart Stores, Inc. v. Dukes,

131 S. Ct. 2541, 2551 (2011) ("Their claims must depend upon a common contention—for

example, the assertion of [unlawful conduct] on the part of the same supervisor.  That common

contention, moreover, must be of such a nature that it is capable of classwide resolution—which

means that determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke.").

This case involves numerous common issues and courts in this District routinely find

commonality when presented with the same common questions as those at issue here.  See

Cazares v. AVA Restaurant Corp., No. 15 CV 0477, 2017 WL 1229727, at *4 (E.D.N.Y. Mar.

31, 2017) ("In wage cases the commonality requirement is usually satisfied where the plaintiffs

allege that defendants had a common policy or practice of unlawful labor practices."); Moreira v.

Sherwood Landscaping Inc., No. 13 CV 2640, 2015 WL 1527731, at *11 (E.D.N.Y. Mar. 31,

2015) ("claims by workers that their employers have unlawfully denied them wages to which

they were legally entitled have repeatedly been held to meet the commonality prerequisite for

class certification.") (internal citations and quotations omitted); Omar v. 1 Front St. Grimaldi,

Inc., No. 16 CV 5824, 2019 WL 1322614, at *10 (E.D.N.Y. Jan. 8, 2019) (commonality satisfied

where plaintiff and class members "bring identical claims" for, <u>inter alia</u>, unpaid overtime and failure to provide wage notices).

### C.   <u>Typicality</u>

Rule 23 requires that the claims of the representative party be typical of the claims of the class.  This criterion "requires that plaintiffs' claims be typical of the claims of the class."  <u>Karic</u>, 2015 WL 9433847, at *5.  "Typicality has been found when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  <u>Id.</u> (internal quotations omitted).

"Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  <u>Frank</u>, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  <u>Elkind</u>, 2017 WL 9480894, at *9; <u>see also</u>  <u>Immortal Rise, Inc.</u>, 306 F.R.D. at 98  ("all class members allege that they are owed back pay for defendants' failure to pay required minimum and overtime wages. The claims alleged by the named plaintiffs in this action . . . are sufficiently similar to other class members' claims to satisfy this requirement.").

Notably, the typicality requirement is "not highly demanding."  <u>Willix v. Healthfirst, Inc.</u>, No. 07 CV 1143, 2009 WL 6490087, at *3 (E.D.N.Y. Dec. 3, 2009) (citation omitted).  Like commonality, it is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." <u>Lopez v. Setauket Car Wash & Detail Ctr.</u>, 314 F.R.D. 26, 29 (E.D.N.Y. 2016) (citation omitted).  And as with commonality, typicality is not defeated by "minor variations in the fact patterns underlying individual claims," <u>Robidoux v. Celani</u>, 987 F.2d 931, 936–37 (2d Cir.

1993), as long as the wrong is alleged to have occurred in the same general fashion.  Typicality

under Rule 23(a)(3) should also "be determined with reference to the company's actions, not

with respect to particularized defenses it might have against certain class members."  Wagner v.

NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996).

     Here, typicality is easily met because all Class Members, including Plaintiff, "were

employed by the defendant[] and allegedly were subjected to the same allegedly unlawful

employment policies and practices."  Cazares, 2017 WL 1229727, at *6.  In fact, this case is

virtually indistinguishable from the many wage and hour class actions in this Circuit where

courts have found the typicality requirement satisfied.  See., e.g., Omar, 2019 WL 1322614, at

*10 (typicality met where plaintiff's claims "all stem from defendants' alleged uniformly

wrongful conduct"); Vargas v. Howard, 324 F.R.D. 319, 326 (S.D.N.Y. 2018) (typicality met

where "representatives' claims against Defendants, like the claims of the absent class members,

arise out Defendants' policies and course of conduct regarding the ways in which [class

members] were paid for their labor"); Lopez, 314 F.R.D. at 29 ("[S]ince the claims at issue here

stem from the common question of whether Defendants' policy violated the law, the claims and

defenses of the representative Plaintiffs are typical of those of the class").

     **D.**    **Adequacy of the Named Plaintiff**

     Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure

that the named representative will 'have an interest in vigorously pursuing the claims of the

class, and . . . have no interests antagonistic to the interests of other class members.'"  Toure v.

Cent. Parking Sys., No. 05 CV 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sep. 28, 2007)

(quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict

that goes to the very subject matter of the litigation will defeat a party's claim of representative status." Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 165 (S.D.N.Y. 2014) (quoting Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.)) (internal quotation marks omitted); Mendez v. MCSS Rest. Corp., No. 16 CV 2746, 2019 WL 2504613, at *10 (E.D.N.Y. June 17, 2019) (same).  "In order to meet the adequacy requirement, the party seeking class certification must establish two elements: (1) the proposed class counsel is 'qualified, experienced, and generally able to conduct the litigation,' and (2) the representative plaintiffs' interests are not antagonistic to those of the proposed class.  Elkind, 2017 WL 9480894, at *10 (quoting Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 352 (E.D.N.Y. 2006)).

Plaintiff meets the adequacy requirement because there is no evidence that she has interests that are antagonistic to or at odds with those of the Class Members and she seeks to maximize the Class' recovery.   Mendez, 2019 WL 2504613, at *10 (adequacy satisfied where plaintiffs "allege a common practice or policy of unlawful labor practices [and] their claims will require similar legal and factual proof to those of absent class members"); see also Immortal Rise, Inc., 306 F.R.D. at 98 ("Only a fundamental conflict of interest between a representative and the class or subclass will defeat the adequacy of representation requirement").  Moreover, Plaintiff has contributed significant time and effort to the case by participating in numerous in-person meetings and telephone conferences with Class Counsel, providing Class Counsel with detailed factual information regarding the home care workers' job duties, reviewing and discussing the pleadings, discovery, demands, and memoranda of law.  Wittels Decl. ¶ 37. Plaintiff also assisted with preliminary negotiations with Defendant's counsel, and supported Class Counsel during two mediations and various follow-up calls.  Id.  In sum, Plaintiff has been an excellent class representative.

sc

Class Counsel also meets the adequacy requirement of Rule 23(a)(4).  Wittels McInturff Palikovic and Hymowitz Law Group, PLLC attorneys have extensive experience in successfully prosecuting wage and hour class actions.  Wittels Decl. ¶¶ 3–7.  The lead attorney prosecuting this case, Steven L. Wittels, was one of the lead trial counsel in the largest class action jury verdict in the history of employment discrimination litigation.  Id. ¶ 4.  Mr. Wittels has also served as Class Counsel in dozens of wage and hour, employment discrimination and consumer fraud class actions, generating hundreds of millions of dollars in recoveries to class members. Id. ¶ 3.  At all times, Mr. Wittels has been assisted by attorneys with significant class action experience and expertise.  Id. ¶ 7.  Further, Wittels McInturff Palikovic and Hymowitz Law Group, PLLC have dedicated substantial time and resources, investigating, prosecuting, and settling Plaintiff's and Class Members' claims.  Id. ¶ 8.  The work that Class Counsel has performed on this case demonstrates the firms' skill and commitment to representing the interests of the Class.  Id.

### E.    Certification is Proper Under  Rule 23(b)

Plaintiff requests certification of a hybrid 23(b)(2) injunctive and 23(b)(3) damages class. Specifically, the parties have agreed that as a result of the litigation Defendant enhanced its practices to further ensure that its home care workers are properly paid for all hours worked. Settlement Agreement § 4.5.  Certifying a class for injunctive or declaratory relief is proper if "the party opposing the class has [allegedly] acted or refused to act on grounds that apply generally to the class."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) is typically relied on where, as here, a plaintiff class is seeking systematic reform through injunctive relief.  Marisol A. v. Giuliani, 126 F.3d 372, 378 (2d Cir. 1997).  Indeed, "(b)(2) classes have been certified" in a host of cases "where commonality findings were based primarily on the fact that defendant's conduct

is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct."  See also Jermyn v. Best Buy Stores, L.P., 276 F.R.D. 167, 17–43 (S.D.N.Y. 2011) (reaffirming earlier decision to certify class under both (b)(2) and (b)(3)); Stinson v. City of New York, 282 F.R.D. 360, 380 (S.D.N.Y. 2012) (certifying b(2) and b(3) classes and noting that "when a district court engages in the analysis required under Rule 23(b)(2) and Rule 23(b)(3), a class can be certified seeking both declaratory and injunctive relief as well as money damages"); Kartman v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883, 895 (7th Cir. 2011) cert denied 132 S.Ct. 242 (2011) ("[I]n an appropriate case, a Rule 23(b)(2) class and a Rule 23(b)(3) class may be certified where there is a real basis for both damages and an equitable remedy.") (emphasis in original); In re ConAgra Foods, Inc., 90 F. Supp. 3d 919, 977 (C.D. Cal. 2015) (same); Seekamp v. It's Huge, Inc., No. 09 CV 00018, 2012 WL 860364, at *8 (N.D.N.Y. Mar. 13, 2012) (collecting cases).

Certifying an injunctive relief class is appropriate here because by reforming the practices challenged by this action, Defendant is acting on grounds generally applicable to the Class. Moreover, improving Defendant's pay practices is plainly of paramount importance to Class Members, many of whom currently work for Defendant or may return to work for Defendant in the future.

Plaintiff also satisfies Rule 23(b)(3)'s requirement for certifying a damages class.  Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623

(1997).  That Plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3)

is satisfied.  Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of

Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality");

see also Puglisi v. TD Bank, N.A., No. 13 CV 637, 2015 WL 4608655, at *3 (E.D.N.Y. July 30,

2015) (predominance satisfied by plaintiffs' "common factual allegations and common legal

theory—that Defendant violated federal and state wage and hour laws by . . . failing to pay them

for premium overtime hours).

### 1.  Common Questions Predominate

To establish predominance, Plaintiff must demonstrate that "the issues in the class action

that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate

over those issues that are subject only to individualized proof."  Cordes & Co. Fin. Servs., Inc. v.

A.G. Edwards & Sons, Inc., 502 F.3d 91, 108 (2d Cir. 2007); see also Elkind, 2017 WL 9480894,

at *14 ("The predominance element of Rule 23(b)(3) requires a showing that common questions

predominate over any questions affecting only individual members.") (quotations omitted).

The essential predominance inquiry is whether "liability can be determined on a class-

wide basis, even when there are some individualized damage issues."  In re Visa Check/Master

Money Antitrust Litig., 280 F.3d 124, 139 (2d Cir. 2001) (superseded by statute).  Simply

because a defense "may arise and [] affect different class members differently does not compel a

finding that individual issues predominate over common ones."  Id. at 138.  Where plaintiffs are

"unified by a common legal theory" and by common facts, the predominance requirement is

satisfied.  Immortal Rise, Inc., 306 F.R.D. at 98–99 (internal citations and quotations omitted).

District courts "have routinely found that common questions predominate in wage and

hour actions brought on behalf of a class of employees of the same employer challenging

allegedly illegal policies and practices."  Murphy v. LaJaunie, No. 13 CV 6503, 2015 WL 4528140, at *7 (S.D.N.Y. July 24, 2015) (collecting cases).  In fact, "[n]umerous courts have found that wage claims are especially suited to class litigation—perhaps **the most perfect questions for class treatment**—despite differences in hours worked, wages paid, and wages due."  Mendez, 2019 WL 2504613, at *11 (emphases added) (internal citation and quotations omitted) (collecting cases).

Here, Class Members' common factual allegations and common legal theory—that Defendant allegedly violated state wage and hour laws—predominate over any factual or legal variations among Class Members.  Thus, for all Class Members, the issue of whether they were the victims of alleged unlawful wage and hour practices will predominate over any individualized inquiries "because [Defendant] will likely be liable to all parties or to none."  Cazares, 2017 WL 1229727, at *8.  A finding of predominance in this case is therefore squarely in line with the majority of cases in this District.  See id. (predominance met in class action challenging employment policies of, inter alia, failure to pay overtime premiums and provide accurate wage notices and statements); Mendez, 2019 WL 2504613, at *11–12 (predominance met with respect to liability and damages in class action alleging systematic underpayment due to timekeeping errors, policy of undercompensating overtime, and failure to provide accurate wage notices and statements); Omar v. 1 Front St. Grimaldi, Inc., No. 16 CV 5824, 2019 WL 1322614, at *11 (E.D.N.Y. Jan. 8, 2019) (predominance met in overtime class action where "plaintiffs allege that their claims are all based on defendants' alleged uniform policies, which will be established through generalized proof") (internal quotations omitted); Lopez v. Setauket Car Wash & Detail Ctr., 314 F.R.D. 26, 30 (E.D.N.Y. 2016) (predominance satisfied because common question regarding whether defendants properly calculated overtime wages owed

"predominates over the individualized question of damages due each [p]laintiff"); Rosario v. Valentine Ave. Disc. Store, Co., No. 10 CV 5255, 2013 WL 2395288, at *9 (E.D.N.Y. May 31, 2013) (Bloom, M.J.), report and recommendation adopted sub nom. Rosario v. Valentine Ave. Disc. Store, Co., No. 10 CV 5255, 2013 WL 4647494 (E.D.N.Y. Aug. 29, 2013) (predominance met where "[p]laintiff contends that defendants had a uniform practice of paying employees below minimum wage, and of not paying overtime wages").

### 2.   A Class Action Is a Superior Mechanism for Adjudicating Claims

The second part of the Rule 23(b)(3) analysis entails a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  Green v. Wolf Corp., 406 F.2d 291, 301 (2d Cir. 1968); Amchem Prods., Inc., 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); see also Elkind, 2017 WL 9480894 at *16 ("Allowing this case to proceed as a class action will . . . eliminate the potential for repetitious litigation and inconsistent adjudications.").  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether the case would be manageable as a class action at trial; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.   Fed. R. Civ. P. 23(b)(3).[11]

---

[11] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  See Amchem, 521 U.S. at 620 ("[c]onfronted with a request for

*Footnote continued on the following page.*

Here, Plaintiff and Class Members have limited financial resources with which to prosecute individual actions, and while Plaintiff is unaware of any pending individual lawsuits filed by Class Members arising from the same allegations, there is certainly the threat of financial hardship or even insolvency from the separate proposed class action proceeding against Defendant.  Wittels Decl. ¶ 58.  The proposed settlement here is an optimal result for current and former employees who in these uncertain times will undoubtedly benefit greatly from their proposed settlement payments.  Indeed, it is also "extremely unlikely" that a meaningful number of proposed Class Members could have or would bring separate actions given that they are "almost exclusively low-wage workers with limited resources and virtually no command of the English language or familiarity with the legal system." Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (finding superiority requirement "easily satisfied"); Moreira v. Sherwood Landscaping Inc., No. 13 CV 2640, 2015 WL 1527731, at *15 (E.D.N.Y. Mar. 31, 2015) (where "many potential class members are foreign-born, have limited reading and writing skills, and may fear reprisal from Defendants . . .  a class action . . . is likely the only device by which many of the proposed class members would obtain relief.") (internal citations and quotations omitted).

Further, "[c]ourts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policies, the damages suffered are small relative to the expense and burden of individual litigation, and some potential class members are currently

---

settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 183 (W.D.N.Y. 2005) ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  In re Zyprexa Prod. Liab. Litig., 253 F.R.D. 69, 199 (E.D.N.Y. 2008) (internal quotations and citations omitted).

employed by the defendants." Cazares, 2017 WL 1229727, at *8 (citing cases). Adjudicating separate actions all arising from the same operative facts also poses a significant burden on the courts. To date, no difficulties have occurred in managing this action and this District is an appropriate forum for adjudicating this case as many of the Class Members performed work for Defendant in this District. Additionally, the Court has already conditionally certified Plaintiff's claims under the FLSA (ECF No. 66) and there is "overwhelming precedent in the Second Circuit supporting certification of simultaneous NYLL class actions and FLSA collective actions." Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 164 (S.D.N.Y. 2008).

Employing the class action device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources, prevent inconsistent adjudications of similar issues and claims, and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings. See Elkind, 2017 WL 9480894, at *16 ("permitting the instant action to proceed as a class action will consolidate what could potentially result in tens of thousands of separate cases"); Karic v. Major Automotive Companies, Inc., No. 09 CV 5708, 2016 WL 1745037, at *12 (E.D.N.Y. Apr. 27, 2016) (approving class where plaintiffs claimed that "proceeding as a class action will achieve economies of scale for the Class Members and preserve judicial resources by consolidating common issues of fact and law, with the result of preserving public confidence in the system by avoiding inconsistent adjudications," and noting that "there is no indication that the Class Members desire to control their own cases"). A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the claims of Defendant's home care workers.

## VI.   THE FLSA COLLECTIVE REQUESTED BY PLAINTIFF SHOULD BE CONDITIONALLY CERTIFIED

Plaintiff seeks to certify the following class under Section 216(b) of the FLSA (the

"FLSA Collective"):

> All individuals who have been employed by Defendant as Home Health Care Attendants which term shall include, but not be limited to, hourly Home Care Aides, Home Health Aides, Home Health Attendants, Home Attendants, Personal Care Aides, Personal Care Assistants, Personal Assistants Unskilled, Personal Assistants performing consumer directed personal assistance (CDPAPs), Live-in Home Health Care Attendants, private pay Home Health Care Attendants, and all others providing home care services, at any time since September 29, 2014 through preliminary approval.

As discussed below, the FLSA Collective meets all of the certification requirements for

class certification for settlement purposes, and Defendant does not oppose provisional

certification of the above FLSA Collective for settlement purposes only.  Settlement Agreement

§ 1.13.  Section 216(b) of the FLSA provides that plaintiffs must be "similarly situated" in order

to pursue an FLSA collective action.  See 29 U.S.C. § 216(b).  On March 20, 2019, the Court

entered the parties' stipulation that Plaintiff is similarly situated to Defendant's other Home

Health Care Attendants.  ECF No. 66.  At that time, however, the issue of "who is similarly

situated," was left open "to be negotiated by the parties with the assistance of the Court if such

assistance is necessary."  Id.  The parties have now agreed on the definition of the FLSA

Collective and thus there are no further impediments to notifying potential Collective Members

of the settlement and their right to opt into the settlement.  See Settlement Agreement § 1.13

(defining FLSA collective).

Further, the Court's determination that the settlement meets the criteria for preliminary

approval is sufficient to satisfy the Court's burden under Cheeks v. Freeport Pancake House,

Inc., 796 F.3d 199 (2d Cir. 2015).  Under Cheeks an FLSA settlement "should be approved if the

proposed agreement 'reflects a reasonable compromise over contested issues.'"  Santiago v.

44

Church Ave. Express Inc., No. 18 CV 1594, 2020 WL 597320, at *2 (E.D.N.Y. Feb. 7, 2020)

(Bloom, M.J.) (quoting Kochilas v. Nat. Merchant Servs., Inc., No. 14 CV 311, 2015 WL

5821631, at *7 (E.D.N.Y. Oct. 2, 2015)).  "Generally, there is a strong presumption in favor of

finding a settlement fair, as the Court is generally not in as good a position as the parties to

determine the reasonableness of an FLSA settlement."  Santiago, 2020 WL 597320, at *2

(quoting Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)).

        "In determining whether a proposed FLSA settlement is fair and reasonable, a court

should consider the totality of circumstances, including but not limited to the following factors:

(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable

the parties to avoid anticipated burdens and expenses in establishing their claims and defenses;

(3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement

agreement is the product of arm's length bargaining between experienced counsel; and (5) the

possibility of fraud or collusion."  Santiago, 2020 WL 597320, at *3 (quoting Wolinsky v.

Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)) (internal alterations omitted).

        Critically, "[t]he standard for approval of an FLSA settlement is lower than for a Rule 23

settlement because an FLSA settlement does not implicate the same due process concerns as

does a Rule 23 settlement."  Kochilas, 2015 WL 5821631, at *7 (internal citations omitted); see

also Rasulev v. Good Care Agency, Inc., No. 16 CV 1993, 2017 WL 11507653, at *8 (E.D.N.Y.

Apr. 19, 2017) (same); Surdu v. Madison Glob., LLC, No. 15 CV 6567, 2018 WL 147379, at *6

(S.D.N.Y. Mar. 23, 2018) ("[A]n FLSA settlement is examined with less scrutiny than a class

action settlement" and "settlement of a collective action does not implicate the same due process

concerns as the settlement of a class action" ).  This is because FLSA settlements typically do not

bind the individuals who fail to obtain a settlement payment.   The settlement here is precisely one such settlement.

Further, "[b]ecause the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, satisfaction of the Grinnell factor analysis satisfies the standards of approval of an FLSA settlement."  Spagnuoli v. Louie's Seafood Rest., LLC, No. 13 CV 4907, 2018 WL 7413304, at *5 (E.D.N.Y. Sep. 27, 2018) (internal quotations omitted); Rasulev, 2017 WL 11507653, at *8  (same); Sierra v. Spring Scaffolding LLC, No. 12 CV 05160, 2015 WL 10912856, at *4 (E.D.N.Y. Sep. 30, 2015) ("[S]atisfaction of the Grinnell factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement."); Ramos v. Nikodemo Operating Corp., No. 16 CV 1052, 2017 WL 11508016, at *5 (E.D.N.Y. Aug. 7, 2017) (same); Surdu, 2018 WL 147379, at *6 (same); Hall v. ProSource Tech., LLC, No. 14 CV 2502, 2016 WL 1555128, at *9 (E.D.N.Y. Apr. 11, 2016) (same).

For the reasons set forth above concerning the propriety of granting preliminary class action settlement approval, there is ample basis to certify the FLSA Collective for settlement purposes.  For example, Plaintiff's evidence of Class Members' range of possible recovery underscores that the parties have reached a reasonable compromise of contested FLSA claims. There are various methods to make such a showing.  See Douglas v. Allied Universal Sec. Servs., 371 F. Supp. 3d 78, 83–84 (E.D.N.Y. 2019) (collecting cases and observing "[t]here are various methods to proffer such facts: by indicating what was alleged in the Complaint or the evidence shown through discovery, among others.").  Here, the cash portion of the settlement provides $6,500,000, plus the parties have agreed to substantial injunctive relief valued at an additional $6,000,000.  Even if the Court were to only consider the $6,500,000 in payments to

Class Members, this sum is more than 50% of the $12,000,000 in damages Plaintiff used as the basis for her settlement negotiations.

Further, as detailed on pp. 29–30 above, the examples demonstrating 32 Class Members' recovery under the settlement compared to their realistic outcomes at trial show that for the overwhelming majority of Class Members they are giving up less than $200 by accepting a settlement payment in exchange for foregoing the risks of litigating this case through trial and appeals. This too is an acceptable metric for judging the range of possible recovery for the thousands Collective Members affected by this settlement. Id. at 84 ("Using specific employees as exemplars could provide the information [regarding the range of possible recovery] to the Court if the collective is too numerous."). This settlement easily hurdles the criteria for preliminary Cheeks review.

## VII.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g), Advisory Committee's note.

Wittels McInturff Palikovic and Hymowitz Law Group, PLLC meet the Rule 23(g) criteria.  Class Counsel has done substantial work identifying, investigating, pursuing, and settling Plaintiff's and Class Members' claims.  Wittels Decl. ¶¶ 9–30.  Additionally, Class Counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and the lawyers assigned to this matter are well-versed in wage and hour law, class action law and are well-qualified to represent the interests of the class.  Id. ¶ 39.  Accordingly, Wittels McInturff Palikovic and Hymowitz Law Group, PLLC should be appointed Class Counsel.

## VIII.   THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED

The content of the Notice fully complies with due process, Federal Rule of Civil Procedure 23, and 29 U.S.C. § 216(b).  Pursuant to Rule 23(c)(2)(B), notice must provide:

[T]he best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:

(i)      the nature of the action;
(ii)     the definition of the class certified;
(iii)    the class claims, issues, or defenses;
(iv)     that a class member may enter an appearance through an attorney if the member so desires;
(v)      that the court will exclude from the class any member who requests exclusion;
(vi)     the time and manner for requesting exclusion; and
(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Notice also satisfies the requirements of the FLSA.  To serve the "broad remedial purpose" of the FLSA, courts can order notice to other potentially similarly situated individuals.  See Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165 (1989).  In Hoffmann-La Roche, the Supreme Court held that the benefits to the judicial system of collective actions "depend upon

employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  493 U.S. at 170.  Courts are encouraged to become involved in the notice process early, to ensure "timely, accurate, and informative" notice and to help facilitate the litigation moving forward.  Id. at 171–72.

Here, the Notice satisfies each of these requirements and adequately apprises Class Members of their rights under the settlement.  The Notice will be delivered in an envelope that is based on the Federal Judicial Center's sample class action notice envelope.[12]  As noted in the Federal Judicial Center's "Judges' Class Action Notice and Claims Process Checklist," "[a] good notice starts with the envelope design, examples of which are at www.fjc.gov."[13]

As for the Notice itself, it is based on the Federal Judicial Center's Illustrative Forms of Class Action Notices[14] and informs its recipients about how Class Members can exclude themselves from the settlement, how the members of the Rule 23 Class and the FLSA Collective can object to the settlement, and the consequences of inaction.  The Notice also describes the material terms of the settlement, informs Class Members about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.  Courts in this District have approved class notices even when they provided only general information about a settlement.  See, e.g., Toure v. Amerigroup Corp., No. 10 CV 5391, 2012 WL 1432302, at *2 (E.D.N.Y. Aug. 6, 2012) ("class notice need only describe the terms of the settlement generally") (internal quotations omitted).  "Notice need not be perfect, but must be the best notice practicable under the circumstances."  Moukengeshcaie v. Eltman, Eltman &

---

[12] Available at: https://www.fjc.gov/sites/default/files/2015/ClaAct07.pdf.

[13] Available at: https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

[14] Available at: https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction.

Cooper, P.C., No. 14 CV 7539, 2019 WL 5204809, at *10 (E.D.N.Y. Oct. 15, 2019) (finding notice adequate where that notice "fairly apprises the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceeding). The detailed information in the Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B) and the FLSA.

The parties' notice plan also satisfies Rule 23(c)(2)(B)'s requirement that the Court order "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

In accordance with the Settlement Agreement the parties propose to distribute the Notice by U.S. Mail, and their notice plan complies fully with due process and Fed. R. Civ. P. 23. As discussed above, the parties have agreed to a detailed notice process that reflects all current best practices for class action notices and contains numerous quality control measures to ensure that the notice will reach as many Class Members as possible. See pp. 16–17, n. 10 supra.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant Plaintiff's Motion and endorse the proposed Order.

Dated:  June 26, 2020
         Armonk, New York

Respectfully submitted,

  /s/ Steven L. Wittels
  Steven L. Wittels (SW-8110)
  J. Burkett McInturff (JM-4564)
  Tiasha Palikovic (TP-5697)

**WITTELS MCINTURFF PALIKOVIC**
18 Half Mile Road
Armonk, New York 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com

*Lead Counsel for Plaintiff and the Class*

Daniel Hymowitz (DH-0936)
**HYMOWITZ LAW GROUP, PLLC**
1629 Sheepshead Bay Road
Brooklyn, NY 11235
Telephone: (718) 807-9900
Facsimile: (866) 521-6040
daniel@hymowitzlaw.com

Andrey Belenky (AB-1976)
Dmitry Kheyfits (DK-9799)
**KHEYFITS P.C.**
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Phone: (212) 203-5399
Facsimile: (212) 203-6445
abelenky@kheyfits.com
dkheyfits@kheyfits.com

*Co-Counsel for Plaintiff and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the documents submitted in support of

Plaintiff's Motion for Preliminary Approval of Class Action Settlement, and Related Relief via ECF

this 26th day of June upon the following counsel of record:


W. Matthew Groh
NANESS, CHAIET & NANESS, LLC
375 North Broadway, Suite 202
Jericho, New York 11753
(516) 827-4300
matt@ncnlaw.com

*Attorney for Defendant*



    _____/s/  Steven L. Wittels_____
            Steven L. Wittels