UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLA MEDVEDEVA,<br>Individually and on Behalf of All Others Similarly<br>Situated,<br><br>                                Plaintiff,<br><br>            -against-<br><br>ASSISTCARE HOME HEALTH SERVICES LLC d/b/a<br>PREFERRED HOME CARE OF NEW YORK and<br>PREFERRED HOME CARE OF NEW YORK LLC,<br><br>                                Defendant. | Case No. 1:17-cv-05739 (LB) |

## MEMORANDUM OF LAW IN SUPPORT OF
## *GONZALEZ* PLAINTIFFS' MOTION TO INTERVENE

Levy Ratner, P.C.
80 Eighth Avenue, Floor 8
New York, NY 10011-5126
(212) 627-8100
(212) 627-8182 (fax)

On the Brief:    Laureve Blackstone
                      Ryan J. Barbur

i

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

FACTUAL & PROCEDURAL BACKGROUND ...................................................... 3
    A.    The *Gonzalez* Litigation and This Case. ................................................. 3
    B.    The *Medvedeva* Proposed Settlement. ................................................... 5

ARGUMENT ......................................................................................................... 7

I.     THE PROPOSED INTERVENORS MEET THE REQUIREMENTS FOR MANDATORY INTERVENTION. ....................................................................... 7
    A.    LEGAL STANDARDS. ................................................................... 7
    B.    INTERVENORS' APPLICATION IS TIMELY ............................... 8
        1.    The *Gonzalez* Plaintiffs Filed Shortly After Notice of Impairment of Their Interests. ........................................................................ 9
        2.    There Is No Prejudice to the *Medvedeva* Parties. ................................. 10
    C.    INTERVENORS HAVE AN INTEREST THAT THE PROPOSED SETTLEMENT WOULD IMPAIR. ................................. 11
    D.    INTERVENORS' INTERESTS ARE NOT ADEQUATELY REPRESENTED. 11
        1.    The Release Is Overbroad and Ambiguous. ......................................... 12
        2.    The Settlement Amount Is Grossly Inadequate If *Gonzalez* Is Included. ........ 16
        3.    The Terms of the Proposed Settlement Impose Improper Barriers to Opting Out and Objecting By Chilling Class Members' Ability to Object and Violating Their Constitutional and Statutory Rights. ......................................... 16
            a.    The Objection Requirements Are Inconsistent with Rule 23's Requirements and Due Process. ................................................ 17
            b.    The Opt-Out and Objection Procedures Interfere with Class Members' Constitutional and Statutory Rights. ..................................... 19
    E.    THE PROPOSED RULE 23(B)(2) RELIEF IS MEANINGLESS. .................... 21
    F.    THE PROPOSED NOTICE DOES NOT PROVIDE CLASS MEMBERS ACCURATE INFORMATION TO MAKE INFORMED DECISIONS REGARDING THE SETTLEMENT AND THEIR RIGHTS. ............................. 23

CONCLUSION .................................................................................................... 24

## TABLE OF AUTHORITIES

Cases

*Berni v. Barilla G. e R. Fratelli, S.p.A.*,
  332 F.R.D. 14 (E.D.N.Y. 2019) ................................................................. 21, 22

*Buchet v. ITT Consumer Fin. Corp.*,
  845 F. Supp. 684 (D. Minn. 1994) .................................................................. 12

*Chen-Oster v. Goldman, Sachs & Co.*,
  No. 10-cv-6950 (AT) (JCF), 2015 WL 4619663 (S.D.N.Y. Aug. 3, 2015)..................... 7, 8, 24

*City of Livonia Employees' Retirement System v. Wyeth*,
  No. 07-cv-10329(RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013)........................... 17

*Cook v. Bates*,
  92 F.R.D. 119 (S.D.N.Y. 1981)....................................................................... 10

*Cullan & Cullan LLC v. M-Qube, Inc.*,
  No. 13 Civ. 172, 2014 WL 347034 (D. Neb. Jan. 30, 2014) ..................................... 12

*Diaz v. Trust Territory of the Pacific Islands*,
  876 F.2d 1401 (9th Cir. 1989)......................................................................... 11

*First Step Trump, Inc.*,
  349 NLRB 42, *enforced by* 522 F. 3d 46 (1st Cir. 2008)...................................... 21

*Freebird, Inc. v. Merit Energy Co.*,
  No. 10-cv-1154 (KHV), 2012 WL 6085135 (D. Kan. Dec. 6, 2012) ............................ 18

*Gale v. Chicago Title Ins. Co.*,
  929 F.3d 74 (2d Cir. 2019)............................................................................. 22

*Grandbouche v. Clancy*,
  825 F.2d 1463 (10th Cir. 1987)........................................................................ 20

*In re Auction Houses Antirust Litig.*,
  No. 00-CV-0648 (LAK), 2001 WL 170792 (S.D.N.Y. Feb. 22, 2001) ........................... 3

*In re Auction Houses*,
  42 F. App'x 511 (2d Cir. 2002)................................................................... 13, 15

*In re Cmty. Bank of Northern Virginia*,
  418 F.3d 277 (3d Cir. 2005)........................................................................... 11

*In re Penn Central Commercial Commercial Paper Litigation*,
  62 F.R.D. 341 (S.D.N.Y. 1974)........................................................................ 10

*Int'l Union v. Garner*,
  102 F.R.D. 108 (M.D. Tenn. 1984).................................................................... 20

*Jim Causley Pentinc v. NLRB*,
  620 F.2d 122 (6th Cir. 1980).......................................................................... 21

*Karvaly v. eBay, Inc.*,
  245 F.R.D. 71 (E.D.N.Y. 2007) ....................................................................... 13

*Lloyd v. Navy Federal Credit Union*,
  No. 17-cv-128, 2018 WL 5247367 (S.D. Cal. Oct. 22, 2018) ............................... 17, 19

*Long Island Trucking, Inc. v. Brooks Pharmacy*,
  219 F.R.D. 53 (E.D.N.Y. 2003) ........................................................................ 8

ii

*McClintic v. Lithia Motors*,
No. 11–cv- 859(RAJ), 2012 WL 112211 (W.D. Wash. Jan.12, 2012) ................................... 18
*Mobil Exploration and Producing U.S. v. NLRB*,
200 F. 3d 230 (5th Cir. 1999)................................................................................................ 21
*NAACP v. New York*,
413 U.S. 345 (1973)............................................................................................................... 8
*National Super Spuds, Inc. v. New York Mercantile Exchange*,
660 F.2d 9 (2d Cir. 1981)................................................................................... 1, 4, 15, 23
*Perry v. Schwarzenegger*,
591 F. 3d 1147 (9th Cir. 2010)............................................................................................. 20
*Restor-a-Dent Dental Labs, Inc. v. Certified Alloy Prods, Inc.*,
725 F.2d 871 (2d Cir. 1984).................................................................................................. 9
*Smith v. Levine Leichtman Capital*,
No. 10-cv-00010 (JSW), 2012 WL 12920189 (N.D. Cal. Nov.15, 2012) .......................... 19
*Stone v. First Union Corp.*,
371 F.3d 1305 (11th Cir. 2004)........................................................................................... 12
*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001)................................................................................................. 8
*TBK Partners, Ltd. v. W. Union Corp.*,
675 F.2d 456 (2d Cir. 1982)............................................................................................. 1, 13
*Thole v. U.S. Bank, N.A.*,
140 S. Ct. 1615 (2020) ................................................................................................. 5, 6, 7
*Trbovich v. United Mine Workers of America*,
404 U.S. 528 (1972)............................................................................................................. 11
*United States v. Pitney Bowes, Inc.*,
25 F.3d 66 (2d Cir. 1994)...................................................................................................... 9
*United States v. Yonkers Bd. Of Educ.*,
801 F.2d 593 (2d Cir. 1986).................................................................................................. 8
*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)............................................................................................................. 22
*Walters v. Target Corp.*,
No. 16-cv-1678-L-MDD, 2019 WL 6696192 (S.D. Cal. Dec. 6, 2019) ............................. 18
*Wilson v. DirectBuy, Inc.*,
No. 09 Civ 590, 2011 WL 2050537 (D. Conn. May 16, 2011) ........................................... 15

Statutes

29 U.S.C. § 150 ................................................................................................................... 20
29 U.S.C. § 151 ................................................................................................................... 21
29 U.S.C. § 157 ................................................................................................................... 21
New York Insurance Law § 1213(c) ..................................................................................... 5
Section 3614-c of the New York Public Health Law ......................................................... 13

Rules

Fed. R. Civ. P. 23 ................................................................................................... 11, 17, 18
Fed. R. Civ. P. 23(b)(2) .............................................................................................. 22, 23

iii

Fed. R. Civ. P. 23(d)(1)(B)(iii) .................................................................................. 8
Fed. R. Civ. P. 23(e)(5) ..................................................................................... 17, 18
Fed. R. Civ. P. 23(e)(5)(A) ........................................................................................ 18
Fed. R. Civ. P. 24 .............................................................................................. 8, 11
Fed. R. Civ. P. 24(a) .................................................................................... 2, 11, 24
Fed. R. Civ. P. 24(a)(2) ......................................................................................... 7, 11
Fed. R. Civ. P. 24(b) ............................................................................................... 24

Other Authorities

Newberg on Class Actions, § 13.30 ..................................................................... 17, 18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLA MEDVEDEVA,<br>Individually and on Behalf of All Others Similarly<br>Situated,<br><br>                              Plaintiff,<br><br>          -against-<br><br>ASSISTCARE HOME HEALTH SERVICES LLC (d/b/a<br>PREFERRED HOME CARE OF NEW YORK and<br>PREFERRED HOME CARE OF NEW YORK LLC,<br><br>                           Defendant. | Case No. 1:17-cv-05739 (LB) |

## MEMORANDUM OF LAW IN SUPPORT OF
## *GONZALEZ* PLAINTIFFS' MOTION TO INTERVENE

### INTRODUCTION

It is well-established in the Second Circuit that any claims released by a class action settlement agreement must be "based on the identical factual predicate as that underlying the claims in the settled class action." *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982); *see also National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981) (Friendly, J.). Here, Plaintiff Medvedeva has proposed a settlement that, on its face, releases claims in *Gonzalez de Fuente el al. v. Preferred Home Care of New York, LLC, et al.*, No. 18-cv-06749 (AMD) (PK) (E.D.N.Y.) ("*Gonzalez*"), a case that is based on markedly different facts. In *Medvedeva v. Assistcare Home Health Services, LLC*, 17-cv-05739 (LB) ("*Medvedeva*"), the Plaintiff alleges that Assistcare d/b/a Preferred is failing to pay overtime, not compensating for travel time, shaving hours, and failing to pay all wages due under the Wage Parity Law, New York Labor Law, and the Fair Labor Standards Act (FLSA), while the *Gonzalez* plaintiffs allege that related employers Preferred and Edison are misappropriating wage and benefits payments owed under the Wage Parity Law through a captive insurance scheme that also violates the Employee

Retirement Income Security Act of 1974 (ERISA). Despite the Court's previous recognition that these two cases are fundamentally different,[1] the release proposed by Medvedeva now attempts to sweep in all Wage Parity Law claims, including those in *Gonzalez*, and arguably seeks to sweep in *Gonzalez*'s ERISA claims as well, against all the *Gonzalez* defendants, the majority of whom were not sued in *Medvedeva*.[2]

Plaintiff Medvedeva's proposed overbroad release, untethered to the facts of her case, is impermissible under Second Circuit law, and justifies mandatory intervention by the *Gonzalez* plaintiffs. As explained further below, the *Gonzalez* plaintiffs meet all the requirements of Federal Rule of Civil Procedure 24(a): First, this motion is timely, as the *Gonzalez* plaintiffs sought intervention as soon as it was clear that their interests were substantially threatened. Second, they have an interest related to the subject of the action by virtue of the overbroad release that threatens potential recovery in their separate pending case. Third, disposition of this case, unless the release is modified, will impair the *Gonzalez* plaintiffs' ability to protect their interests. And finally, their interests are not adequately represented here, as demonstrated by the terms of Medvedeva's proposed settlement, including all of the following:

- an overbroad and ambiguous release, based on a damages exposure calculation that did not consider the *Gonzalez* claims but would release them for $0;

- improper barriers to opting out and objecting, such as requiring objectors to submit to a deposition, prohibiting group opt-outs in violation of Rule 23, and burdening opt-outs

---

[1] *See* Tr. of Conference before Hon. Lois Bloom, May 23, 2019, at 4-6 (ECF No. 74).

[2] The defendants in *Gonzalez* include Preferred Home Care of New York LLC (i.e., Assistcare), Edison Home Health Care, HealthCap Assurance, Inc., HealthCap Enterprises, LLC, and a number of individuals, including, among others, the principals of Preferred, Edison and HealthCap, as well as the trustees of the ERISA plan. *See* Blackstone Decl. ¶ 2 (Ex. 1).

2

and objectors who are assisted by an attorney or labor union with impermissible disclosure requirements;

- meaningless purported injunctive relief; and

- a proposed notice that fails to apprise potential class members that they may be giving up all rights in *Gonzalez* without any recovery in return;

In seeking to intervene, the relief the *Gonzalez* plaintiffs seek is minimal: They want their claims carved out from any settlement in *Medvedeva*, to prevent "some class members" from being "forced to give up something of value to enable other class members to benefit from a settlement made richer at their expense." *In re Auction Houses Antirust Litig.*, No. 00-CV-0648 (LAK), 2001 WL 170792, at *12 (S.D.N.Y. Feb. 22, 2001), *aff'd*, 42 F. App'x 511 (2d Cir. 2002).

## FACTUAL & PROCEDURAL BACKGROUND

### A. The *Gonzalez* Litigation and This Case.

The *Gonzalez* litigation was filed in November 2018 by Ynes Gonzalez de Fuente and Mariya and Ivan Kobryn as a proposed class action. As previously explained to this Court, the *Gonzalez* plaintiffs bring claims under ERISA, the Wage Parity Law, and the New York Labor Law, against, *inter alia*, Preferred Home Care of New York, LLC ("Preferred"). *See* Declaration of Laureve Blackstone ("Blackstone Decl.") ¶¶ 2, 4 (Ex. 1) (*Gonzalez* Am. Compl.); *see also* ECF No. 70 (Letter dated May 20, 2019 to Hon. Lois Bloom). As noted above, Preferred is the d/b/a of Assistcare Home Health Services, LLC, the defendant in *Medvedeva*.

The *Gonzalez* plaintiffs allege that Preferred and its related company, Edison Home Health Care, created a single employer welfare benefit plan, covering thousands of home care workers employed by both Preferred and Edison, for the purpose of appearing compliant with the Wage Parity Law, while actually evading its requirements and misappropriating ERISA-protected plan assets. Through this scheme, over an initial three-year period, Preferred and Edison purported to

3

set aside approximately $62.9 million dollars for the benefits portion of compensation mandated by the Wage Parity Law, but paid out less than $12.8 million towards employee health benefits. Instead, Preferred, Edison, and their principals retained millions of dollars of plan assets for themselves, in violation of the Wage Parity Law and ERISA's fiduciary and prohibited transaction rules. *See* Blackstone Decl. ¶ 2 (Ex. 1).

In May 2019, the *Gonzalez* plaintiffs wrote to this Court expressing their concerns (and putting counsel for the *Medvedeva* parties on notice) that *Medvedeva* might be settled for a potentially inadequate amount if any release was not tailored to exclude the *Gonzalez* plaintiffs' unique claims. *See Medvedeva*, ECF. No. 70. The *Gonzalez* plaintiffs were alerted to the possibility that the *Medvedeva* defendants might attempt to settle the *Gonzalez* plaintiffs' claims when the *Gonzalez* defendants argued that *Gonzalez* should be dismissed based on the so-called "first filed rule." *Gonzalez* ECF No. 23 at 3.[3]

At a *Medvedeva* status conference on May 23, 2019, this Court acknowledged, having reviewed both the *Gonzalez* and *Medvedeva* pleadings, that "there aren't great amounts of overlaps" between the two cases. *See* Tr. of Conference before Hon. Lois Bloom, May 23, 2019, at 4-6 (ECF No. 74). This Court observed that "both [cases] have wage parity claims that are state law claims," while distinguishing the core claims in the two cases because "the *Gonzalez* case is an ERISA case," while *Medvedeva* "is a FLSA case." *Id.* at 5. This Court also recognized that *Gonzalez* included "a big claim under the wage parity law." *Id.* at 6. In response to a direct inquiry from this Court, counsel for Medvedeva stated on the record that he had no intention of amending his complaint to include ERISA claims or additional claims under the Wage Parity Law. *Id.* at 11.

---

[3] Neither the *Gonzalez* defendants, nor Assistcare d/b/a Preferred, ever sought to have the cases deemed related under Local Civ. R. 50.3.1.

In July 2019, the *Gonzalez* defendants, including Assistcare d/b/a Preferred, moved to dismiss the *Gonzalez* Amended Complaint. *See Gonzalez*, ECF Nos. 58-61. The *Gonzalez* plaintiffs simultaneously moved to strike defendant HealthCap Assurance, Inc.'s pleadings from the *Gonzalez* litigation because HealthCap is an unauthorized insurer not licensed in New York and had not posted the required bond under the New York Insurance Law § 1213(c). *See Gonzalez*, ECF No. 63. In September 2019, the *Gonzalez* defendants moved to stay pending the Supreme Court's decision in *Thole v. U.S. Bank, N.A.*, a case concerning Article III standing for ERISA claims. *See Gonzalez*, ECF No. 75-76.

On February 13, 2020, Judge Donnelly granted the *Gonzalez* plaintiffs' motion to strike HealthCap's pleadings, accepting plaintiffs' calculation of a successful judgment against HealthCap to be at least $25 million and requiring that HealthCap post a bond in that amount before entering pleadings in the case. *See Gonzalez*, ECF No. 81 (Mem. & Order on Motion to Strike). Judge Donnelly also granted the *Gonzalez* defendants' motion to stay and ordered briefing within 14 days of the Supreme Court's decision in *Thole*, 140 S. Ct. 1615 (2020), which the parties have now submitted. *See Gonzalez*, ECF Nos. 80, 82, 84.

Most recently, Judge Donnelly has ordered the *Gonzalez* parties to appear at a status conference to be held on July 15, 2020. *Gonzalez* Scheduling Order, dated July 2, 2020.

**B. The *Medvedeva* Proposed Settlement.**

*Medvedeva* was filed in September 2017. ECF No. 1. On June 26, 2020, Plaintiff Medvedeva moved for preliminary approval of a class and collective action settlement and related relief, which seeks approval for a release of "all claims that were or could have been brought up to the date of the Preliminary Approval Order . . . under the Wage Parity Law . . . and any regulations, guidance, interpretations, case law, agency web-site positing, agency statement, or other authority thereunder, inclusive of all alleged unpaid or unaccrued wages, overtime, wage

parity benefits, or other benefits." *See* ECF No. 95-1 (Final Class Action Settlement Agreement and Release) (§4.10 Release). The releasees include "Defendant," *i.e.*, Assistcare Home Health Services LLC (d/b/a Preferred Home Care of New York and Preferred Home Care of New York LLC), plus all of the following:

> any related present and former parent companies, subsidiaries, related or affiliated companies, companies, and their respective owners, shareholders, officers, directors, employees, members, managers, consultants, insurers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them.

*Id.* at § 1.22. The settlement agreement provides that "any Rule 23 Class Member who does not timely and properly opt-out" pursuant to specific procedures "shall be bound by the above release." *Id.* at § 4.10 (A).

The settlement's opt-out and objection procedures are complicated, onerous and intimidating. First, the opt-out procedures require talismanic language ("I elect to exclude myself from the class settlement in Medvedeva v. Assistcare Home Health Services LLC") in order for the opt-out to be valid, ECF No. 95-1 (§ 3.7(A) Class Member Opt-Out) and require objectors to "consent to deposition by Class Counsel and/or Defendant's counsel prior to the Fairness Hearing." *Id.* (§ 3.8(A) Objections to Settlement by Rule 23 Class Members). The procedures only permit individual opt-outs and decree that a statement on behalf of more than one class member will be "null and void." *Id.* (§ 3.7(D)).

Second, both the opt-out and objection procedures make it difficult for an individual to opt-out or object if assisted by an attorney or a labor union. The proposed settlement would require that any opt-out made with the assistance of an attorney or law firm staff or any union, labor organization, or similar entity or group, or labor or union or community organizer, state as much

and provide the contact information (including telephone number and email address) of all persons

who assisted the Rule 23 class member. ECF No. 95-1 (§ 3.7(A) Rule 23 Member Opt-Out).

Further, objections filed with the assistance of an attorney, law firm staff, or any union, labor

organization, or similar entity or group must contain the following to be valid: (1) written statement

of any legal support; (2) copies of any papers, brief, or other documents upon which the objection

is based; (3) list of people who will be called to testify in support; (4) statement of Rule 23 class

member's membership in the class; and (5) "a statement of whether any union, labor organization,

or similar entity or group, labor or union or community organizer, or attorney or law firm staff, or

any other person assisted the Rule 23 Class Member with the objection, and if so the contact

information (including telephone number and email address) of all persons that assisted the Rule

23 Class Member." ECF No. 95-1 (§3.8(A) Objections to Settlement by Rule 23 Class Members).

*Id.*

## ARGUMENT

### I.   THE PROPOSED INTERVENORS MEET THE REQUIREMENTS FOR MANDATORY INTERVENTION.

#### A.   LEGAL STANDARDS.

Under Rule 24(a), an application to intervene must be granted when the applicant

> claims an interest relating to the property or transaction which is the
> subject of the action and is so situated that disposing of the action
> may as a practical matter impair or impede the [applicant's] ability
> to protect its interest, unless existing parties adequately represent
> that interest.

Fed. R. Civ. P. 24(a)(2); *see also Chen-Oster v. Goldman, Sachs & Co.*, No. 10-cv-6950 (AT)

(JCF), 2015 WL 4619663, at *4 (S.D.N.Y. Aug. 3, 2015), *aff'd*, No. 10-cv-6950 (AT) (JCF), 2016

WL 11645644 (S.D.N.Y. June 6, 2016) (noting intervention as of right granted "when an applicant:

(1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the

subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by other parties") (citation, quotation marks omitted).

Rule 23 contemplates that absent class members, such as Ms. Gonzalez and the Kobryns, can intervene to protect their interests. *See* Fed. R. Civ. P. 23(d)(1)(B)(iii) (providing that a court may issue orders requiring notice to class members of their "opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action"). "It is common to permit intervention in a class action in order to cure some deficiency in the ability of the named plaintiffs to represent the class." *Chen-Oster*, 2015 WL 4619663, at *5. Furthermore, "'[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee notes); *see also Long Island Trucking, Inc. v. Brooks Pharmacy*, 219 F.R.D. 53, 55-56 (E.D.N.Y. 2003) (same).

## B.   INTERVENORS' APPLICATION IS TIMELY.

The *Gonzalez* plaintiffs' Motion is timely filed. In considering a motion to intervene, "[t]he timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion." *United States v. Yonkers Bd. Of Educ.*, 801 F.2d 593, 594-95 (2d Cir. 1986). In exercising its discretion, the court is to consider, "all of the circumstances of the case." *Id.* at 595 (citing *NAACP v. New York*, 413 U.S. 345, 365-66 (1973)). These circumstances generally include:

> (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.

8

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). The key factors here—notice

and prejudice—weigh heavily in favor of finding that the present Motion is timely filed.

### 1. The *Gonzalez* Plaintiffs Filed Shortly After Notice of Impairment of Their Interests.

The *Gonzalez* plaintiffs filed this Motion to Intervene 10 days after it became apparent that

their direct interests were prejudiced by *Medvedeva*. In the context of intervention, the interest

implicated "must be direct, as opposed to remote or contingent." *Restor-a-Dent Dental Labs, Inc.*

*v. Certified Alloy Prods, Inc.*, 725 F.2d 871, 874 (2d Cir. 1984). As counsel for the *Gonzalez*

plaintiffs explained in their May 20, 2019 letter to this Court:

> The Wage Parity Law claim raised in *Medvedeva* is entirely distinct
> from the claim in *Gonzalez*. *Medvedeva* is based entirely on the
> premise that home health aides were not paid the benefit portion
> required under the Wage Parity Law because it was not listed on
> their paystubs. . . By contrast, the issue in *Gonzalez* is that any
> benefits purportedly paid to the home care workers were a sham,
> because Preferred and Edison recouped them in violation of the
> Wage Parity Law. . . . . **To the extent a settlement is reached in**
> ***Medvedeva* with respect to the Wage Parity Law claim, it could**
> **not appropriately take into account the value of the Wage Parity**
> **Law claim in *Gonzalez*, which has yet to be fully litigated and is**
> **not before the Court in *Medvedeva*.**

ECF No. 70 at 2 (emphasis added) (internal citations omitted). As set forth more fully below, the

*Gonzalez* plaintiffs' interests in *Medvedeva* have now become direct and immediate because the

proposed settlement purports to do precisely what counsel warned against—impose a backdoor

settlement of the *Gonzalez* plaintiffs' factually and legally distinct claims by virtue of an overly-

broad release without providing any, much less sufficient, value for settling these claims.

Moreover, the *Gonzalez* plaintiffs had every reason to believe that the *Medvedeva* litigants would

not seek to settle their claims. In response to this Court's expressed views that "there aren't great

amounts of overlaps" between the *Gonzalez* and *Medvedeva* cases because *Medvedeva* "is a FLSA

case" and "the *Gonzalez* case is an ERISA case," counsel for Medvedeva assured the Court that

he would not be seeking to add additional Wage Parity or ERISA claims to the *Medvedeva* complaint in response to the *Gonzalez* litigation, but would only be adding "claims based on the payroll records of the defendants that are produced." *See* ECF 74 at 4-6, 11.[4]

### 2. There Is No Prejudice to the *Medvedeva* Parties.

Allowing the *Gonzalez* plaintiffs to intervene will not prejudice the existing parties to *Medvedeva*. While intervention will always delay proceedings to some degree, the critical question is whether "there exists a benefit which will outweigh this delay." *In re Penn Central Commercial Paper Litigation*, 62 F.R.D. 341, 348 (S.D.N.Y. 1974). Granting the *Gonzalez* plaintiffs' Motion to Intervene is unlikely to introduce any significant delay into the proceedings. The *Gonzalez* plaintiffs have no interest in disturbing the fundamental terms of the proposed settlement agreement. They merely wish to intervene in order to: (i) properly tailor the release to avoid the uncompensated impairment of claims based upon distinct factual and legal predicates to ensure that they are able to proceed with their own litigation and, if necessary, (ii) clarify and/or correct certain substantive and procedural deficiencies contained in the proposed settlement before they are communicated to the class via the proposed notices. Additionally, any delay that would be occasioned by granting the Motion is all but inevitable. If the issues referenced in this Motion are not resolved through the *Gonzalez* plaintiffs' intervention, they will unquestionably be the subject of an objection at the fairness hearing. The difference is that intervention by the *Gonzalez* plaintiffs will require the *Medvedeva* litigants to address these issues in advance of issuing otherwise

---

[4] Even if the *Gonzalez* plaintiffs' interests had been directly implicated prior to the proposed settlement of the *Medvedeva* litigation, "[i]n the absence of prejudice to the opposing party, even significant tardiness will not foreclose intervention." *Cook v. Bates*, 92 F.R.D. 119, 122 (S.D.N.Y. 1981). As shown below, the existing parties are not prejudiced by intervention.

misleading notices to the class, which contain onerous and intimidating opt-out and objection procedures, thereby providing a significant benefit that vastly outweighs any minor delays.

## C.   INTERVENORS HAVE AN INTEREST THAT THE PROPOSED SETTLEMENT WOULD IMPAIR.

The *Gonzalez* plaintiffs also satisfy the third factor for mandatory intervention as they claim a significant protected interest in this action. A claimed interest is sufficient for intervention if it "relate[s] to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). Courts have found that when class members "seek intervention as a matter of right," the "interest" and "impairment" requirements of Rule 24 "are satisfied by the very nature of Rule 23 representative litigation." *See In re Cmty. Bank of Northern Virginia*, 418 F.3d 277, 314 (3d Cir. 2005); *see also Diaz v. Trust Territory of the Pacific Islands*, 876 F.2d 1401, 1405 n. 1 (9th Cir. 1989) (class member who timely applies "should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court") (internal quotation and citation omitted). Here, Medvedeva and Preferred appear to be trying to sweep the *Gonzalez* claims into their settlement, while providing no value for them. Accordingly, the *Gonzalez* plaintiffs have a protectable interest in this litigation that will be impaired if the proposed settlement moves forward.

## D.   INTERVENORS' INTERESTS ARE NOT ADEQUATELY REPRESENTED.

Finally, the fourth factor for mandatory intervention is satisfied because the *Gonzalez* plaintiffs' interests are not adequately represented by Medvedeva. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972); *see* Fed. R. Civ. P. 24(a) advisory committee notes to the 1966 Amendment ("A class member who claims that his 'representative' does not adequately

11

represent him, and is able to establish that proposition with sufficient probability . . . should, as a general rule, be entitled to intervene in the action.").

A proposed intervenor can satisfy this burden by demonstrating divergence of interests between himself and the class representative. *See Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 689-90 (D. Minn. 1994) ("[Intervenors] argue that the [settlement] gives the class insufficient value, that the release is overbroad, and that the notice given to class members was deficient. This position clearly puts them at odds with class counsel, and, therefore, the Court finds that [intervenors] have made the minimal showing necessary to support their motions to intervene"); *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 13 Civ. 172, 2014 WL 347034, at *8 (D. Neb. Jan. 30, 2014) (explaining that the proposed intervenors satisfied the minimal showing of inadequacy of representation where parties had "no motivation to protect the interests of the intervenor"); *Stone v. First Union Corp.*, 371 F.3d 1305, 1312 (11th Cir. 2004) (employees "permitted to intervene to represent their interests were different than [plaintiff's] interests" due to dissimilarities in claims). Here, as in *Buchet*, the *Gonzalez* plaintiffs "argue that the [settlement] gives the class insufficient value, [and] that the release is overbroad," as well as that "the notice [proposed to be] given to class members [would be] deficient." *Buchet*, 845 F. Supp. at 690. "This position clearly puts [Intervenors] at odds with class counsel," and therefore provides "the minimal showing necessary to support their motions to intervene." *Id.*

### 1.  The Release Is Overbroad and Ambiguous.

The lack of adequate representation for the *Gonzalez* plaintiffs is glaringly apparent in the scope and ambiguity of the proposed release, which appears to release their claims for $0. There is no carve-out for the *Gonzalez* claims, although it would have been simple to add a proviso excluding all claims that are alleged in the First Amended Complaint now pending in *Gonzalez*. *See* ECF No. 95-1 (§4.10 Release). The release is not confined to claims that were or could have

12

been brought based on the facts alleged in Medvedeva's complaint. *See id*. Instead, it purports to broadly include "all claims that were or could have been brought up to the date of the Preliminary Approval Order under the New York Labor Law (NYLL), Section 3614-c of the New York Public Health Law (known as the Home Care Worker Wage Parity Law) . . . " *Id*. Thus, on its face, with no explicit carve-out, the language of the release includes *at least* the wage parity claims at issue in *Gonzalez*—and possibly all of the *Gonzalez* claims, as discussed below.

This release as drafted should be rejected by the Court under well-established Second Circuit law providing that a class action settlement may not release claims that were not at issue in the case unless those claims are "based on the *identical* factual predicate as the class claims." *See In re Auction Houses*, 42 F. App'x at 519 ("In the twenty-one years since *Super Spuds,* we have never affirmed the approval of a class action settlement which included the uncompensated impairment of non-class claims unless the non-class claims were based on the *identical* factual predicate as the class claims.") (citing *Super Spuds*) (emphasis in *Auction Houses*)); *see also*, *e.g.*, *TBK Partners*, 675 F.2d at 460 (any claims released by a settlement agreement must be "based on the identical factual predicate as that underlying the claims in the settled class action"); *Karvaly v. eBay*, *Inc.*, 245 F.R.D. 71, 89-90 (E.D.N.Y. 2007) (rejecting proposed settlement that benefited some class members' claims at the expense of other class members' claims). Here, the factual predicate for the *Gonzalez* litigation is entirely distinct from the factual predicate for the *Medvedeva* litigation. *See* Section A of Factual & Procedural Background, *supra*; *see also* ECF No. 70.

The overbroad release here is also ambiguous as to whether it releases claims against other *Gonzalez* defendants, and even as to whether it releases claims that are not wage parity claims, including the *Gonzalez* ERISA claims. If the release is unmodified, the *Gonzalez* plaintiffs expect

the defendants in their case to argue that their claims have been released. For example, the *Gonzalez* plaintiffs plead Wage Parity Law and ERISA claims against Edison Home Health Care, which is not a Defendant but is an affiliated entity that shares common ownership with Preferred, as well as the individual owners and officers of Preferred and Edison.[5] The "releasees" for released claims include "any related or affiliated companies," which would include Edison, and "their respective owners, shareholders, officers, directors," etc., which would include the individual defendants named in *Gonzalez*. ECF No. 95-1 (¶1.22 (defining "releasees"), ¶4.10 (Release)).[6]Although the proposed class releasing claims includes only individuals who worked for Defendant Assistcare d/b/a Preferred, some of those individuals work for Edison as well. Blackstone Decl. ¶ 11. Additionally, the *Medvedeva* proposed release would cover "insurers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers [repeated twice], successors, and assigns, and all persons or entities acting by, through, under or in concert with them," which could be read to include HealthCap and all other defendants in *Gonzalez*. All of these releasees are released from claims that are not explicitly tethered to the facts of the *Medvedeva* case and would seem to extend far beyond the legal allegations therein, inclusive not only of "unpaid or unaccrued wages, overtime, wage parity benefits," but also "all other benefits . . . liquidated, damages, interest, attorneys' fees, costs, taxes, claims administration fees, and court costs." The limited exclusion for "vested or incurred, reported or unreported, claims under any

---

[5] *See* Blackstone Decl. ¶ 6 (Ex. 2) (Edison Home Health Care Welfare Plan Financial Statements January 31, 2017 and 2016 at p.5, explaining that the welfare benefits plan at issue in the *Gonzalez* litigation "is available to regular full-time employees of Edison Home Health Care and Preferred Home Care of New York, two affiliated companies which share common ownership").

[6] Counsel for Medvedeva states that the proposed class includes between 12,416 and 13,181 individuals (n. 2 ECF No. 94 p. 2). Based on these numbers it is unclear to *Gonzalez* counsel whether the Edison employees are intended to be included in the *Medvedeva* settlement or not.

14

employee benefit plan governed by ERISA" is potentially ambiguous even as to whether it covers the statutory prohibited transaction and breach of fiduciary ERISA claims at the core of the *Gonzalez* case, including those against defendants who have no relevance to *Medvedeva*, such as HealthCap, the captive insurer. Certainly, the *Gonzalez* plaintiffs expect that without explicitly carving out their case, the *Gonzalez* defendants will argue that the release in *Medvedeva* bars their claims. Accordingly, the release is not only overbroad, it is also problematically ambiguous as to the scope of its overlap with the *Gonzalez* case. *See Wilson v. DirectBuy, Inc*., No. 09 Civ. 590, 2011 WL 2050537, at *15 (D. Conn. May 16, 2011) ("Ambiguity within the release of a class action settlement agreement all but requires future litigation. . . . [T]he court does not intend to approve any future settlement agreements between the parties absent a more clearly written release.").

The Second Circuit's reasoning for rejecting overbroad releases highlights the conflict between the *Gonzalez* plaintiffs and Medvedeva if the release is not modified. As explained in *Auction Houses*, a settlement that purports to release claims based on facts not alleged in the underlying case creates a conflict of interest:

> The core proposition underlying [the leading Second Circuit case of] *Super Spuds* is that "[t]here is no justification for requiring [persons in objectors' position] to release claims based on unliquidated contracts as part of a settlement in which payments to class members are to be determined solely on the basis of the contracts they liquidated." In other words, there is no reason why some class members should be forced to give up something of value to enable other class members to benefit from a settlement made richer at their expense. "***An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class***."

*In re Auction Houses*, 42 F. App'x at 518 (quoting *Super Spuds*, 660 F.2d at 18) (emphasis added).

15

**2. The Settlement Amount Is Grossly Inadequate If *Gonzalez* Is Included.**

Intervenors take no position as to whether the proposed $6,500,000 settlement is adequate for the wage and hour violations that are alleged in *Medvedeva*.

As to the wage parity claims at issue in the *Gonzalez* litigation, however, those are worth far more than $12 million and are not mentioned in valuing the total exposure for Preferred. Plaintiffs have previously calculated the value of their claims in the *Gonzalez* litigation as at least $25 million through the end of the 2017 plan year (and that amount has continued to grow as the *Gonzalez* defendants have funneled additional contributions into the Plan in subsequent plan years). Judge Donnelly accepted Plaintiffs' calculations in granting Plaintiffs' Motion to Strike defendant HealthCap's motions to dismiss by requiring HealthCap to post a $25 million bond. (*Gonzalez*, ECF No. 81, "The plaintiffs calculate that a successful judgment is likely to be at least $25 million. I accept that calculation, and require that HealthCap post a bond of $25 million before entering a pleading in this case."); *see* Blackstone Decl. ¶ 10.[7]

If any claims in *Gonzalez* are being released, the settlement amount demonstrates that the *Gonzalez* plaintiffs lack adequate representation.

**3. The Terms of the Proposed Settlement Impose Improper Barriers to Opting Out and Objecting By Chilling Class Members' Ability to Object and Violating Their Constitutional and Statutory Rights.**

The lack of adequate representation for the *Gonzalez* plaintiffs is further demonstrated by the burdensome opt-out and objection procedures contained in the settlement agreement, which

---

[7] The $25 million exposure against HealthCap is for liability for ERISA prohibited transactions, the only claim against defendant HealthCap. Plaintiffs estimate that the value of liability for wage parity, prohibited transaction and ERISA claims against defendants Edison and Preferred is now well in excess of $25 million as the *Gonzalez* defendants have funneled additional contributions into the Plan in subsequent plan years, in addition to other damages against the other defendants. Blackstone Decl. ¶ 10.

unduly chill potential class members' ability to protect their rights by introducing unnecessary and complicated obstacles for class members. *See* Section B of Factual & Procedural Background, *supra* (describing the onerous opt-out and objection procedures). These procedures are inconsistent with the requirements of Rule 23 because they fail to safeguard the interests of class members who wish to opt-out or object. *See*, *e.g*., Newberg on Class Actions, § 13.30 Format of Objections ("Courts should be cautious of objection formats that unduly chill class members' capacity to object to the settlement. . . .Courts will accordingly carefully scrutinize proposed limitations on objection formats and curtail those that over-reach.").

### a. The Objection Requirements Are Inconsistent with Rule 23's Requirements and Due Process.

Rule 23 provides that "[a]ny class member may object to the [proposed settlement]" and the "objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection." Fed. R. Civ. P. 23(e)(5). The proposed procedures here restrict a class member from filing an objection on behalf of anyone else, directly contradicting Rule 23(e)(5), which permits class members to object on behalf of a broader group.

The extent to which the objection procedures go to discourage and even intimidate potential objectors is wholly inconsistent with the requirements of Rule 23 and due process. "A court reviewing a proposed class action settlement for its fairness and reasonableness should carefully consider whether an objection procedure raises unnecessary and complicated hurdles to testing the fairness and reasonableness of a settlement that seeks to bind absent class members." *Lloyd v. Navy Federal Credit Union*, No. 17-cv-128, 2018 WL 5247367, at *10 (S.D. Cal. Oct. 22, 2018). The procedures here, in addition to offending class members' First Amendment and statutory rights as discussed further *infra*, are unnecessary hurdles that should be scrutinized by this Court. *See City*

*of Livonia Employees' Retirement System v. Wyeth*, No. 07-cv-10329(RJS), 2013 WL 4399015, at *10 (S.D.N.Y. Aug. 7, 2013) (quoting Federal Judicial Center) ("'There should be no unnecessary hurdles that make it difficult for class members to exercise their rights to opt out, object, submit a claim, or make an appearance.'"). The requirement to consent to a deposition to submit a valid objection, for example, appears to serve no other purpose than to intimidate a potential objector. *See Freebird, Inc. v. Merit Energy Co.*, No. 10-cv-1154 (KHV), 2012 WL 6085135, at *7 (D. Kan. Dec. 6, 2012) (finding that a requirement that an objector provide dates on which they can be deposed designed to discourage class members from filing objections).

The requirement that an objector may only appear at a fairness hearing if they have filed an acceptable written objection in advance is also inconsistent with Rule 23's forgiving approach. *See* Newberg on Class Actions § 13.30 (*citing* B. Rothstein and T. Willging, Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, 32 (3d ed. 2010) ("If objectors and unrepresented class members appear at the fairness hearing, it is important to permit them to fully voice their concerns. For class members who feel strongly enough about their injuries to appear, the fairness hearing is their 'day in court.'"); s*ee Walters v. Target Corp.*, No. 16-cv-1678-L-MDD, 2019 WL 6696192, at *8 (S.D. Cal. Dec. 6, 2019) (finding objection requirement indicating, among other things, whether objector will appear at the fairness hearing, too onerous in light of Rule 23(e)(5)(A)).

Likewise, the requirement of talismanic language appearing on the objection serves no purpose other than to disqualify otherwise valid objections. *See* Section B of Factual & Procedural Background, *supra* (citing §3.7(A)); *McClintic v. Lithia Motors*, No. 11–cv- 859(RAJ), 2012 WL 112211, at *6 (W.D. Wash. Jan.12, 2012) (rejecting a similarly disqualifying approach and noting

18

that "a hallmark of a reasonable settlement is one that encourages participation by making all forms of participation reasonably accessible to class members.").

In exercising its discretion, the court should be satisfied that class members' due process rights are safeguarded. *Lloyd*, No. 17-cv-128, 2018 WL 5247367, at *10 (S.D. Ca. Oct. 22, 2018). ("the parties cannot limit the Court's discretion regarding the type of notice it finds must be provided to class members to satisfy constitutional due process concerns, including notice regarding the objection procedure class members will need to follow for the Court to consider their objections"); *see Smith v. Levine Leichtman Capital,* No. 10-cv-00010 (JSW), 2012 WL 12920189, at *2 (N.D. Cal. Nov.15, 2012) (finding the objections procedures unduly burdensome, including where procedures required submission of a telephone number and proof of class membership). Rather than provide class members with due process, the objection procedures/barriers here appear purposefully designed to dissuade, discourage, and intimidate class members from filing objections and deny them their day in court.

**b.  The Opt-Out and Objection Procedures Interfere with Class Members' Constitutional and Statutory Rights.**

<u>**First Amendment Rights**</u>: The opt-out and objection procedures provide that a class member who files an opt-out or objection with the assistance of a union or labor organization must make certain disclosures for the objection to be valid.[8] *See* Section B of Factual & Procedural Background, *supra* (citing ECF No. 95-1 §§ 3.7-3.8). The required disclosures include the identity of the union or labor organization, as well as all persons who assisted with the opt-out or objection, including their contact information. Such compelled disclosures violate class members' First Amendment associational rights.

---

[8] It is well-known in the New York home care industry that significant numbers of employees are organized.

"The freedom to associate with others for the common advancement of political beliefs and ideas lies at the heart of the First Amendment." *Perry v. Schwarzenegger*, 591 F. 3d 1147, 1152 (9th Cir. 2010); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (describing that the First Amendment, while not normally restricting the conduct of private individuals, can be invoked in the context of court orders in litigation between private parties). Such compelled disclosure of a class members' communications with a union or labor organization, as well as the identity of such individuals "would have the practical effect of discouraging the exercise of First Amendment associational rights." *Perry v. Schwarzenegger, 591 F. 3d 1147, 1152 (9th Cir. 2010).* As a result, the parties to this litigation "must demonstrate a need for the information sufficient to outweigh the impact on those rights." *Id.*

In her motion for preliminary approval, Plaintiff Medvedeva has given no justification for the relevance or necessity of this information. *Grandbouche*, 825 F.2d at 1466-67 (describing the factors to be considered when determining whether disclosure would not infringe on First Amendment rights, including, *inter alia*, relevance, necessity, and nature of information); *Int'l Union v. Garner,* 102 F.R.D. 108, 116 (M.D. Tenn. 1984) (holding that the party seeking disclosure "has not demonstrated that the disclosures it seeks are substantially related to a legitimate and compelling interest . . . . [n]or is the information necessary or critical to the case or highly material or relevant"). The information sought in the opt-out and objection procedures is for no other reason than to intimidate and dissuade class members from objecting, as well as from exercising their First Amendment and statutory rights.

**Rights Under the National Labor Relations Act:** Not only are speech and association protected by the First Amendment, but the National Labor Relations Act, 29 U.S.C. § 150 *et seq.*, recognizes speech in the context of labor-management relations as protected concerted activity:

> It is hereby declared to be the policy of the United States . . . [to protect] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.

29 U.S.C. § 151. Congress enacted NLRA § 7, 29 U.S.C. § 157, specifically to protect, *inter alia*, worker conversations with union organizers and co-workers when discussing wages, hours, and other terms and conditions of employment. Such meetings and conversations are recognized conduct for "mutual aid and protection." 29 U.S.C. § 157; *see, e.g., Jim Causley Pentinc v. NLRB*, 620 F.2d 122 (6th Cir. 1980) (workers' discussions about work-site safety concerns protected activity); *First Step Trump, Inc.*, 349 NLRB 42 *enforced by* 522 F. 3d 46 (1st Cir. 2008) (15 workers writing letters about safety concerns protected activity); *Mobil Exploration and Producing U.S. v. NLRB*, 200 F. 3d 230 (5th Cir. 1999) (employee statement to co-worker in lunchroom protected). Congress has recognized that employee and union speech is protected concerted activity under federal labor law and a compelling interest to be guarded closely.

Here, for no other reason than to intimidate class members from filing objections, the parties propose procedures requiring class members to disclose their communications with unions and labor organizations. Class members' communications for "mutual aid and protection" have no bearing on and are not relevant to any objections they may file in this proceeding.

### E.     THE PROPOSED RULE 23(B)(2) RELIEF IS MEANINGLESS.

The lack of adequate representation for the *Gonzalez* plaintiffs is further demonstrated by the proposed certification of a Rule 23(b)(2) injunctive relief settlement class in *Medvedeva*, i.e., potentially a non opt-out class. Medvedeva does not explicitly state whether the proposed Rule 23(b)(2) class would have an opt-out right. It is "normal" not to afford an opt-out right for a Rule 23(b)(2) class, although the Court has discretion to provide one. *See Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 27-28 (E.D.N.Y. 2019). With only the most minimal information

21

about the purported relief for which Medvedeva is seeking (b)(2) certification, and no clarity about whether an opt-out right is proposed, *Gonzalez* plaintiffs are concerned about the impact of this aspect of the settlement on their claims.

> Rule 23(b)(2) precludes certification unless:

>> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed. R. Civ. P. 23(b)(2). Since *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011), Rule 23(b)(2) certification is not appropriate "if the class sought monetary relief" more than "merely incidental to the injunctive or declaratory relief sought." *Gale v. Chicago Title Ins. Co.*, 929 F.3d 74, 76-77 (2d Cir. 2019).

Here, Medvedeva has offered no sufficient justification for certifying a Rule 23(b)(2) class. The settlement papers make vague assertions about the nature of the injunctive relief purportedly obtained. *See* ECF No. 94 at 1 ("Defendant also reformed the pay practices challenged in this lawsuit, which injunctive relief will benefit current and future employees for years to come"); *id.* at 38 (referring to "reforming the practices challenged by this action," but providing no specifics). Medvedeva proposes that Defendant's payroll reform is "reasonably valued at $6,000,000," but offer no basis for that valuation, other than claiming Plaintiff calculated "the amount of the overcharge multiplied by the number of people likely to be exposed to the overcharge in the near future." *Id.* It is not clear what "overcharge" Medvedeva is referring to (presumably underpayment rather than overcharge), and no papers submitted to the Court provide any details of any proposed injunctive relief. The Settlement Agreement states in full that "The Parties also agree that, as a result of the Litigation, Defendant enhanced its practices to further ensure that all home care workers are properly paid for all hours worked. Plaintiff estimates the cumulative value of such

improvements at not less than One Million Dollars ($1,000,000) per year to Class Members each year over six years or Six Million Dollars ($6,000,000)." ECF No. 95-1 at p.16, ¶4.5.

Such allusions to vague changes in corporate practices—with no detail about what those changes are, when they were made, and no guarantees or protections as to how long they will be in effect—do not constitute injunctive relief appropriate for certification under Rule 23(b)(2).

## F.     THE PROPOSED NOTICE DOES NOT PROVIDE CLASS MEMBERS ACCURATE INFORMATION TO MAKE INFORMED DECISIONS REGARDING THE SETTLEMENT AND THEIR RIGHTS.

Finally, the lack of adequate representation for the *Gonzalez* plaintiffs is also evident in the proposed notices that are before the Court. The *Gonzalez* plaintiffs will suffer harm if *either* the notice proposed by Medvedeva or Preferred is approved. Both notices reflect all the defects in the settlement described above. The barriers to opting out and objecting are substantial. And most importantly from the perspective of the *Gonzalez* plaintiffs, nowhere does either notice explicitly mention the *Gonzalez* litigation, so class members will not realize that they are losing the potential recovery in that action. Judge Friendly's rejection of the proposed settlement in *Super Spuds* recognized that the class notice "did not adequately apprise class members who also held claims in respect of unliquidated contracts that these ... were being placed on the block although these class members were to receive nothing in return." 660 F.2d at 16. Here, too, unless the settlement agreement is modified to exclude the *Gonzalez* claims, settlement members will not be informed that they are giving up the right to recover certain claims but will receive nothing in return.

## CONCLUSION

For all the reasons described above, the *Gonzalez* plaintiffs should be permitted to intervene for the purpose of protecting their interests and those of additional class members in the *Gonzalez* litigation.[9]

Dated:      July 6, 2020
            New York, New York

                                            LEVY RATNER, P.C.

                                            */s Laureve Blackstone*
                                    By:     Laureve Blackstone
                                            Ryan Barbur
                                            *Attorneys for Proposed Intervenors*
                                                *Ynes Gonzalez de Fuente,*
                                                *Mariya Kobryn, Ivan Kobryn*
                                            80 Eighth Avenue, 8th Floor
                                            New York, New York 10011
                                            (212) 627-8100
                                            (212) 627-8182 (fax)
                                            lblackstone@levyratner.com

---

[9] For the reasons discussed above, the Court should find that the *Gonzalez* plaintiffs have a right to intervene under Fed. R. Civ. P. 24(a). Even if the Court is not inclined to find a mandatory right to intervene, permissive intervention is appropriate under Rule 24(b), which permits intervention for anyone "who has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "In exercising discretion under this rule, courts consider factors that include 'the nature and extent of the intervenors' interests,' the degree to which those interests are 'adequately represented by other parties,' and 'whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Chen-Oster*, 2015 WL 4619663, at *5 (citation omitted). All these factors are satisfied here.