**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ALLA MEDVEDEVA,
Individually and on Behalf of All Others
Similarly Situated,

|   |   |
|---|---|
| Plaintiff, | Case No. 17 CV 5739-LB |

v.

ASSISTCARE HOME HEALTH SERVICES
LLC (d/b/a PREFERRED HOME CARE OF
NEW YORK and PREFERRED HOME
CARE OF NEW YORK LLC),

Defendant.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF THE CLASS AND COLLECTIVE**
**ACTION SETTLEMENT AND RELATED RELIEF**

**WITTELS MCINTURFF PALIKOVIC**
Steven L. Wittels
J. Burkett McInturff
Tiasha Palikovic
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com

*Lead Counsel for Plaintiff and the Class*

Dated:  November 6, 2020

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................................................1

I.     FACTUAL AND PROCEDURAL BACKGROUND...........................................................2

    A.    Factual Allegations and Plaintiff's Investigation......................................................... 2

    B.    Litigation and Settlement Negotiations ....................................................................... 3

II.    SUMMARY OF THE SETTLEMENT TERMS .........................................................8

    A.    The Settlement Amount ............................................................................................... 8

    B.    Eligible Class Members ............................................................................................... 9

    C.    Allocation Formula and Distribution of the Settlement Fund ..................................... 9

    D.    Releases...................................................................................................................... 13

    E.    Named Plaintiff Service Award ................................................................................. 13

    F.    The Settlement Administrator.................................................................................... 15

III.    RULE 23 CLASS ACTION SETTLEMENT PROCEDURE .............................................15

IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ...................17

    A.    Adequacy of Representation:  Both Plaintiff and Her Counsel Are Zealous and
        Qualified Advocates for the Class .............................................................................. 21

    B.    Presence of Arm's-Length Negotiations:  The Parties' Vigorous Negotiations
        Were Arm's Length at All Times ............................................................................... 23

    C.    Adequate Relief for the Class: The Settlement Amount Is Substantial, Even in
        Light of the Best Possible Recovery and the Attendant Risks of Litigation .............. 24

        1.    Litigation Through Trial  Would Be Complex, Costly, and Long
            (Grinnell Factor 1)........................................................................................... 24

        2.    Plaintiff Faces Real Risks if the Case Proceeds  (Grinnell Factors 4 and 5).... 26

        3.    Maintaining the Class Through Trial  Would  Not Be Simple
            (Grinnell Factor 6)........................................................................................... 27

    D.    Effectiveness of the Proposed Method of Distributing Relief: Direct Payments to
        Class Members Without a Claims Process is the Preferred Method and the Parties'
        Allocation Plan is Reasonable and Fair ..................................................................... 29

E.   The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Award was Negotiated at Arms' Length and is Well Within the Norms of this Circuit ............................................................................................................ 30

F.   Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Actual Damages and is Reasonable ........................ 37

G.   The Remaining Grinnell Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate ......................................................................................... 41

    1.   The Reaction of the Class (Grinnell Factor 2) .................................................... 41

    2.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3) .................................................................. 41

    3.   Defendant Likely Could Not Withstand a Greater Judgment (Grinnell Factor 7) ............................................................................................... 42

    4.   The Settlement Amount Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9) ........ 43

V.    THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED ..........................44

A.   Numerosity .................................................................................................................. 46

B.   Commonality ............................................................................................................... 46

C.   Typicality .................................................................................................................... 47

D.   Adequacy of the Named Plaintiff ............................................................................... 49

E.   Certification is Proper Under Rule 23(b) ................................................................... 50

    1.   Common Questions Predominate ........................................................................ 51

    2.   A Class Action Is a Superior Mechanism for Adjudicating Claims ................... 53

VI.   THE FLSA COLLECTIVE REQUESTED BY PLAINTIFF SHOULD BE CONDITIONALLY CERTIFIED ....................................................................................55

VII.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .............59

VIII. THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED ...............................................................................................60

CONCLUSION ......................................................................................................................... 62

# TABLE OF AUTHORITIES

**Cases**

Aboud v. Charles Schwab & Co.,
  2014 WL 5794655 (S.D.N.Y. Nov. 4, 2014) ..........................................................41

Abrams & Abrams, P.A.,
  605 F.3d 238 (4th Cir. 2010) ................................................................................36

Alleyne v. Time Moving & Storage Inc.,
  264 F.R.D. 41 (E.D.N.Y. 2010) ...........................................................................35

Amchem Prods., Inc. v. Windsor,
  521 U.S. 591 (1997)........................................................................................50, 53

Azogue v. 16 for 8 Hospitality LLC,
  2016 WL 4411422 (S.D.N.Y. Aug. 19, 2016) .......................................................18

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,
  222 F.3d 52 (2d Cir. 2000).....................................................................................21

Bodon v. Domino's Pizza, LLC,
  2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) ..........................................................43

Bourlas v. Davis Law Assocs.,
  237 F.R.D. 345 (E.D.N.Y. 2006) ..........................................................................49

Cazares v. AVA Restaurant Corp.,
  2017 WL 1229727 (E.D.N.Y. Mar. 31, 2017) ............................................47, 48, 54

Chambery v. Tuxedo Junction Inc.,
  2014 WL 3725157 (W.D.N.Y. July 25, 2014) .......................................................43

Cheeks v. Freeport Pancake House, Inc.,
  796 F.3d 199 (2d Cir. 2015).................................................................................56

Clem v. KeyBank, N.A.,
  2014 WL 2895918 (S.D.N.Y. June 20, 2014) .......................................................18

Consol. Rail Corp. v. Town of Hyde Park,
  47 F.3d 473 (2d Cir. 1995) .................................................................................46

Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,
  502 F.3d 91 (2d Cir. 2007); ...........................................................................21, 51

D'Amato v. Deutsche Bank,
  236 F.3d 78 (2d Cir. 2001)..............................................................................23, 24

iv

*Damassia v. Duane Reade, Inc.,*
  250 F.R.D. 152 (S.D.N.Y. 2008) ......................................................................55

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006)...........................................................21, 22, 49

*Doe #1 by Parent #1 v. New York City Dep't of Educ.,*
  2018 WL 3637962 (E.D.N.Y. July 31, 2018) ........................................24

*Dornberger v. Metropolitan Life Ins. Co.,*
  203 F.R.D. 118 (S.D.N.Y. 2001) ....................................................................14

*Douglas v. Allied Universal Sec. Servs.,*
  371 F. Supp. 3d 78 (E.D.N.Y.) ......................................................................58

*Elkind v. Revlon Consumer Prod. Corp.,*
  2017 WL 9480894 (E.D.N.Y. Mar. 9, 2017) ................................... passim

*Fermin v. Las Delicias Peruanas Rest., Inc.,*
  93 F. Supp. 3d 19 (E.D.N.Y. 2015) ...............................................................5

*Fleisher v. Phoenix Life Ins. Co.,*
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)...........................8, 31, 32

*Frank v. Eastman Kodak Co.,*
  228 F.R.D. 174 (W.D.N.Y. 2005)..............................................42, 44, 47, 53

*Goldberger v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000)..........................................................................34

*Green v. Wolf Corp.,*
  406 F.2d 291 (2d Cir. 1968) .......................................................................53

*Hall v. ProSource Technologies, LLC,*
  2016 WL 1555128 (E.D.N.Y. April 11, 2016) .............................. passim

*Hernandez v. Merrill Lynch & Co., Inc.,*
  2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ..................................14, 35

*Hicks v. Stanley,*
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................36

*Hoffman-La Roche Inc. v. Sperling,*
  493 U.S. 165 (1989) ......................................................................................61

*Iglesias-Mendoza v. La Belle Farm, Inc.,*
  239 F.R.D. 363 (S.D.N.Y. 2007) ..................................................................54

*In re Austrian & German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................... passim

In re EVCI Career Colls. Holding Corp. Sec. Litig.,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................................................18, 30

In re Flag Telecom Holdings, Ltd. Sec. Litig.,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...........................................................35

In re GSE Bonds Antitrust Litig.,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019).................................................20, 23, 33

In re Lloyd's Am. Trust Fund Litig.,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)...........................................34

In re Merrill Lynch Tyco,
    249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................36

In re Namenda Direct Purchaser Antitrust Litig.,
    2020 WL 2749223 (S.D.N.Y. May 27, 2020) ............................................30

In re Nortel Networks Corp. Sec. Litig.,
    539 F.3d 129 (2d Cir. 2008).................................................................35

In re Painewebber Ltd. P'ships Litig.,
    171 F.R.D. 104 (S.D.N.Y 1997) ...........................................................26

In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,
    330 F.R.D. 11 (E.D.N.Y. 2019) ..................................................... passim

In re Penthouse Executive Club Comp. Litig.,
    2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013)..............................................23

In re Polaroid,
    2007 WL 2116398 (S.D.N.Y. July 19, 2007) ...........................................14

In re Visa Check/Master Money Antitrust Litig.,
    280 F.3d 124 (2d Cir. 2001).............................................................51, 53

In re Warfarin Sodium Antitrust Litig.,
    391 F.3d 516 (3d Cir. 2004)..............................................................41

In re Zyprexa Prod. Liab. Litig.,
    253 F.R.D. 69 (E.D.N.Y. 2008) ...........................................................53

Jackson v. Bloomberg, L.P.,
    298 F.R.D. 152 (S.D.N.Y. 2014) .......................................................21, 49

Joel A. v. Giuliani,
    218 F.3d 132 (2d Cir. 2000)..............................................................44

Johnson v. Brennan,
    2011 WL 4357376 (S.D.N.Y. Sep. 16, 2011)...........................................44

Karic v. Major Automotive Companies, Inc.,
    2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) .................................................14, 18

Kochilas v. Nat. Merchant Servs., Inc.,
    2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015)....................................................56, 57

Lliguichuzhca v. Cinema 60, LLC,
    948 F. Supp. 2d 362 (S.D.N.Y. 2013)..................................................................56

Lopez v. Setauket Car Wash & Detail Ctr.,
    314 F.R.D. 26 (E.D.N.Y. 2016) ...........................................................48, 49, 52

Marisol A. v. Giuliani,
    126 F.3d 372 (2d Cir. 1997)................................................................................46

McCoy v. Health Net, Inc.,
    569 F. Supp. 2d 448 (D.N.J. 2008) .....................................................................32

McGreevy v. Life Alert Emergency Response, Inc.,
    258 F. Supp. 3d 380 (S.D.N.Y. 2017).................................................................11

Mendez v. MCSS Rest. Corp.,
    2019 WL 2504613 (E.D.N.Y. June 17, 2019) ........................................21, 22, 49

Meredith Corp. v. SESAC, LLC,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015)...................................................................30

Moreira v. Sherwood Landscaping Inc.,
    2015 WL 1527731 (E.D.N.Y. Mar. 31, 2015) ...............................................47, 54

Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.,
    2019 WL 5204809 (E.D.N.Y. Oct. 15, 2019) ............................................. passim

Murphy v. LaJaunie,
    2015 WL 4528140 (S.D.N.Y. July 24, 2015) ......................................................51

Oladipo v. Cargo Airport Servs. USA, LLC,
    2019 WL 2775785 (E.D.N.Y. July 2, 2019).........................................................19

Omar v. 1 Front St. Grimaldi, Inc.,
    2019 WL 1322614 (E.D.N.Y. Jan. 8, 2019) ............................................47, 48, 52

Ortega v. Uber Techs. Inc.,
    2018 WL 4190799 (E.D.N.Y. May 4, 2018) ........................................................19

Ramos v. Nikodemo Operating Corp.,
    2017 WL 11508016 (E.D.N.Y. Aug. 7, 2017).......................................................58

Rasulev v. Good Care Agency, Inc.,
    2017 WL 11507653 (E.D.N.Y. Apr. 19, 2017) ....................................................57

Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,
   237 F.R.D. 26 (E.D.N.Y. 2006) ................................................46

Reid v. SuperShuttle Intern., Inc.,
   2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012) .................................25, 28

Robidoux v. Celani,
   987 F.2d 931 (2d Cir. 1993) ................................................48

Rosario v. Valentine Ave. Disc. Store, Co.,
   2013 WL 2395288 (E.D.N.Y. May 31, 2013) ........................................52

Rossini v. Ogilvy & Mather, Inc.,
   798 F.2d 590 (2d Cir. 1986) ................................................50

Santiago v. Church Ave. Express Inc.,
   2020 WL 597320 (E.D.N.Y. Feb. 7, 2020) ....................................56, 57

Shapiro v. JPMorgan Chase & Co.,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ......................................35

Sheppard v. Consol. Edison Co. v. N.Y., Inc.,
   2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002) .......................................32

Siddiky v. Union Square Hosp. Grp., LLC,
   2017 WL 2198158 (S.D.N.Y. May 17, 2017) .......................................58

Sierra v. Spring Scaffolding LLC,
   2015 WL 10912856 (E.D.N.Y. Sept. 30, 2015) ................................30, 57

Siler v. Landry's Seafood House–North Carolina, Inc.,
   2014 WL 2945796 (S.D.N.Y. June 30, 2014) ......................................26

Spagnuoli v. Louie's Seafood Rest., LLC,
   2018 WL 7413304 (E.D.N.Y. Sep. 27, 2018) ..............................18, 41, 57

Spencer v. No Parking Today, Inc.,
   2013 WL 1040052 (S.D.N.Y. Mar. 15, 2013) ......................................46

Sukhnandan v. Royal Health Care of Long Island LLC,
   2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013) ......................................19

Sullivan v. DB Invs., Inc.,
   667 F.3d 273 (3d Cir. 2011) ................................................11

Surdu v. Madison Glob., LLC,
   2018 WL 147379 (S.D.N.Y. Mar. 23, 2018) ....................................57, 58

Sykes v. Harris,
   2016 WL 3030156 (S.D.N.Y. May 24, 2016) .......................................33

Tennille v. W. Union Co.,
  2013 WL 6920449 (D. Colo. Dec. 31, 2013)..........................................................................32

Torres v. Gristede's Operating Corp.,
  2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ........................................................................28

Torres v. Gristede's Operating Corp.,
  519 F. App'x 1 (2d Cir. 2013) ...............................................................................................28

Toure v. Amerigroup Corp.,
  2012 WL 1432302 (E.D.N.Y. April 20, 2012) ....................................................19, 21, 24, 62

Toure v. Cent. Parking Sys.,
  2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).................................................................21, 49

Vargas v. Howard,
  324 F.R.D. 319 (S.D.N.Y. 2018) ...........................................................................................48

Velez v. Novartis Pharm. Corp.,
  2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .........................................................................9

Victoria Perez v. Allstate Ins. Co.,
  2019 WL 1568398 (E.D.N.Y. Mar. 29, 2019) .............................................................18, 19, 21

Wagner v. NutraSweet Co.,
  95 F.3d 527 (7th Cir. 1996) ...................................................................................................48

Wal-Mart Stores, Inc. v. Dukes,
  131 S.Ct. 2541 (2011)............................................................................................................46

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,
  396 F.3d 96 (2d Cir. 2005).....................................................................................................17

Willix v. Healthfirst, Inc.,
  2009 WL 6490087 (E.D.N.Y. Dec. 3, 2009) .........................................................................48

Willix v. Healthfirst, Inc.,
  2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..........................................................................28

Wolinsky v. Scholastic Inc.,
  900 F. Supp. 2d 332 (S.D.N.Y. 2012)) ..................................................................................57

Yim v. Carey Limousine NY, Inc.,
  2016 WL 1389598 (E.D.N.Y. 2016).......................................................................................20

Zeller v. PDC Corporation,
  2016 WL 748894 (E.D.N.Y. Jan. 28, 2016) ..........................................................................28

Zeltser v. Merrill Lynch & Co., Inc.,
  2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014)........................................................................35

**Statutes**

29 U.S.C. § 216(b) ................................................................................. 56

New York Labor Law, Article 19 ............................................................ 2

New York Wage Parity Law ..................................................................... 2

**Other Authorities**

Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist ............. 9, 49

Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, 3d. Ed., 35 (2010) ................................................................................. 33

Federal Judicial Center, Manual for Complex Litigation (3d ed.) ............................................... 19

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................ 45, 50

Fed. R. Civ. P. 23(b) ............................................................................ 45

Fed. R. Civ. P. 23(c)(2)(B) ........................................................ 60, 61, 62

Fed. R. Civ. P. 23(c)(3) ....................................................................... 61

Fed. R. Civ. P. 23(e) ........................................................................... 15

Fed. R. Civ. P. 23(e)(1)(B) ................................................................... 19

Fed. R. Civ. P. 23(g)(1)(A) ............................................................ 59, 60

**Treatises**

Herbert B. Newberg & Alba Conte, Newberg on Class Actions §§11.22, et seq. (4th ed. 2002) 15, 19, 45

Principles of the Law of Aggregate Litigation, The American Law Institute, Mar 1, 2010, § 3.13 ................................................................................. 33

Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.) ............................................. 21, 49

## INTRODUCTION

Plaintiff Alla Medvedeva ("Plaintiff") brought this wage and hour class and collective action against Defendant Assistcare Home Health Services LLC, d/b/a Preferred Home Care of New York and Preferred Home Care of New York LLC ("Defendant" or "Preferred") to recover unpaid wages and to reform Defendant's allegedly unlawful pay practices.  Following more than three years of extensive investigation and litigation, the parties have agreed to a settlement that reaches a substantial portion of this lawsuit's goal.  Specifically, the settlement provides for a large settlement fund of $6,500,000 to be distributed directly to Class Members without the need to submit any proofs of claim.  Following the commencement of the litigation Defendant also reformed the pay practices challenged in this lawsuit, which reform will benefit current and future employees for years to come.  Plaintiff has reasonably valued this ongoing non-monetary relief at $6,000,000, thus yielding a class and collective action settlement valued at $12,500,000.

As the Court is well aware, this settlement was no easy achievement.  The settlement is the result of voluminous discovery and two lengthy and hard-fought mediations led by an experienced mediator well-versed in home care wage and hour class actions.  Between these two mediations the parties also held an in-person settlement conference with Your Honor and received critical guidance regarding the value of the claims at issue in this litigation.  Further, after an MOU was announced in July 2019 the parties met in multiple post-MOU conferences with the Court and the mediator to further refine the settlement terms.  As set forth below, these lengthy and heated negotiations have resulted in a fair and reasonable settlement for the members of the proposed Class and Collective ("Class Members" unless noted otherwise).

The settlement also satisfies the criteria for preliminary approval under federal law.  Accordingly, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the proposed settlement as described in the Final Amended Settlement Agreement and Release

("Settlement Agreement"), attached as Exhibit A to the accompanying Declaration of Steven L. Wittels ("Wittels Decl.");[1] (2) preliminarily certify the proposed "Rule 23 Class" and "FLSA Collective" for settlement purposes; (3) approve the proposed Notice of Proposed Class Action Settlement and Final Approval Hearing (the "Notice") and direct its distribution; (4) appoint Wittels McInturff Palikovic and Hymowitz Law Group, PLLC as Class Counsel ("Class Counsel"); (5) schedule the Final Approval Hearing; and (6) grant such other relief as the Court deems just and proper.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  <u>Factual Allegations and Plaintiff's Investigation</u>

Plaintiff and Class Members are current and former home health care workers employed by Defendant.  Plaintiff alleges that Defendant's pay practices violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et. seq.</u>, New York Labor Law ("NYLL") Article 6 and Article 19, and Public Health Law § 3614-c (commonly known as the "Wage Parity Law").  Class and Collective Action Compl. ("Compl.") ¶¶ 72–126, ECF No. 1.  Defendant's records demonstrate that it employed approximately 19,000 home health care workers in New York during the applicable statute of limitations period.  Wittels Decl. ¶ 24.

Prior to commencing this action, Class Counsel conducted a thorough investigation into the Class Members' claims, their damages, and the likelihood of obtaining class certification. Wittels Decl. ¶ 17.  Further, Class Counsel performed extensive background research on Preferred, and obtained information on Preferred's compensation policies and practices.  <u>Id.</u> ¶ 18. Class Counsel also conducted in-depth interviews with Plaintiff and other of Preferred's former employees concerning, <u>inter alia</u>, Preferred's treatment of its home care workers, the number of

---

[1] Unless otherwise indicated, all exhibits are attached to the Wittels Decl.

hours home aides worked, Defendant's pay practices, and other information pertinent to Plaintiff's claims in this action.  Id.  Counsel also obtained and reviewed numerous documents and communications from Plaintiff and other workers and conducted research and investigation into the pertinent case law and the facts in other home care wage and hour class actions that informed the present case, as well as extensive legal research and analysis concerning the particular legal complexities attendant to home-care wage and hour claims.  Id.

      **B.**    **Litigation and Settlement Negotiations**

On September 29, 2017 Plaintiff filed her Class and Collective Action Complaint in this Court on behalf of herself and all other similarly situated workers.  The Complaint seeks recovery of wages, liquidated damages, interest, an order enjoining Preferred's allegedly unlawful pay practices, statutory penalties, and attorneys' fees and costs.  Compl. at pp. 21–23, ECF No. 1.

From the get-go this case has been distinguished by its intensely litigated proceedings. These include appearances on Defendant's motion to stay discovery and dismiss the complaint (ECF No. 18), Plaintiff's motion for conditional certification (ECF No. 32), and Plaintiff's motion for appointment as interim class counsel (ECF No. 50).  In early 2018 the parties also negotiated a tolling agreement (ECF No. 12) and a confidentiality order (ECF No. 15) in an attempt to reach early resolution.  Wittels Decl. ¶ 20.  During this same time the parties exchanged comprehensive analyses of the merits and viability of Plaintiff's claims, including lengthy settlement-related correspondence on February 9 and 23, and March 30, 2018.  Id. ¶ 21.

These early efforts between counsel unfortunately did not bear fruit and the parties resumed litigation.  Plaintiff then researched and drafted comprehensive written discovery, which discovery was issued on May 22 and 24, 2018.  Id. ¶ 22.  Plaintiff also began ESI negotiations and served her motion for conditional FLSA certification (ECF No. 21).  Id.

Defendant likewise engaged in ESI and related Rule 26(f) discussions and served its opening dismissal brief (ECF No. 23).  Id.  Then, on July 10, 2018, the parties sought to stay the case pending class-wide mediation but advised the Court that they would continue the briefing on Defendant's dismissal motion and Plaintiff's conditional certification motion.  ECF No. 25.

On July 10, 2018, the parties also entered into a Pre-Mediation Agreement as well as a Mediation Agreement prepared by Mediator Martin F. Scheinman, Esq., which contained confidentiality provisions facilitating the exchange of discovery, including Defendant's time and payroll data for the entire statute of limitations period.  Wittels Decl. ¶ 23.  The parties then spent over three months negotiating the exchange of documents and other data to assess the claims and defenses and to calculate potential damages in advance of mediation.  Id.  Prior to and in connection with the mediation, Preferred produced thousands of pages of documents, including hundreds of thousands of lines of payroll data.  Id.  The parties then prepared numerous comprehensive reports on liability and damages issues including analyzing with the assistance of technical and subject matter experts hundreds of thousands of time and payroll records for approximately 12,000 Class Members.  Id.  Using the documents provided by Defendant, and Class Counsel's prior and subsequent research and investigation, Plaintiff prepared and submitted a comprehensive confidential pre-mediation brief.  Id.  In support of its position, Defendant also submitted a thorough confidential pre-mediation brief.  Id.

On January 30, 2019, the parties participated in an 8+ hour mediation at the offices of Martin F. Scheinman, Esq., a highly regarded mediator with extensive experience in the wage and hour class and collective action context generally, and home care wage and hour class actions specifically.  Id. ¶ 24.  Despite mediator Scheinman's assistance, the parties did not reach agreement on the terms of a settlement and they agreed to exchange further discovery while also

resuming litigation.  Id.  The ensuing document exchanges were made and analyzed by

Plaintiff's counsel and their technical and subject matter experts in the spring of 2019.  Id.

As for the litigation, following a March 14, 2019 conference with Your Honor, on March

19, 2019 Defendant consented to the conditional certification of an FLSA collective.  ECF No.

65.  Then, during an April 11, 2019 conference, Your Honor directed the parties to redouble their

settlement efforts, which the parties did via correspondence on April 21, May 2, May 10, May

14, May 17 and a lengthy meet and confer on April 29.  Wittels Decl. ¶ 25.  During this same

period, the parties vigorously litigated the issue of notice to the FLSA collective and the

resumption of formal document discovery.  See ECF Nos. 67, 68, 71 (the parties' filings detailing

disputed discovery and FLSA notice issues).

On May 23, 2019, the parties held a comprehensive settlement conference with Your

Honor, including private sessions where the parties discussed the strength of their arguments

with the Court and Plaintiff disclosed to Your Honor her $12,000,000 class-wide damages

calculation.  Wittels Decl. ¶ 26.  As discussed at the May 23 settlement conference, this sum was

compiled by Plaintiff's economist and wage and hour damages expert (Dr. Alexander Vekker,

PhD, a professor at the University of Pennsylvania) after he analyzed hundreds of thousands of

lines of Defendant's payroll, time, and other electronic data.[2]  Id.

With the aid of mediator Scheinman, at the conclusion of the lengthy mediation session

on July 2, 2019 and conferences with mediator Scheinman on July 17 and Your Honor on July

---

[2] This figure does not include Plaintiff's claims for statutory penalties pursuant to New York's Wage
Theft Prevention Act.  Consistent with Your Honor's guidance, Plaintiff elected to forego an analysis of
these claims for settlement purposes.  Plaintiff's damages model also did not include her claim for class-
wide spread-of-hours pay, as while Plaintiff believes the cases decided in workers' favor are better
reasoned, her counsel recognizes that several cases in this District have limited recovery on this claim
only to workers making at or below the applicable New York state minimum wage.  Fermin v. Las
Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 45 (E.D.N.Y. 2015).

11 and 22, the parties reached agreement on several key settlement terms.  See the Court's July 22, 2019 Electronic Order ("As discussed on the record, the parties have reached a tentative settlement in principle.  The Court commends counsel's efforts to resolve this case through mediation.").

During the remainder of the summer and fall of 2019 the parties engaged in extensive and protracted negotiations regarding the material settlement terms, including through multiple rounds of negotiations among counsel and numerous interventions by Mr. Scheinman, including mediation conferences with Mr. Scheinman on August 18 and 21, and September 18, 20, 24, 26, 27, October 2, 7, 22, 28, 30, 31, and November 7, 13, and 18.  Settlement Agreement at p. 2  On November 12, 2019, the parties executed a memorandum of understanding setting forth the material settlement terms.  Id.

The parties then spent the period from December 2019 to May 2020 negotiating the final settlement terms.  Id.  As with all prior settlement negotiations, these discussions were vigorous and included comprehensive written correspondence and meet and confers among counsel on December 6, January 7, 14, 30, February 9, 17, 19, 20, 26, 28, March 2–6, 10–12, 26, 27, 30, April 3, 7, 8, 10, 13, 16, 17, 20, 24, and 26.  Id. at 3.  The parties also attended a telephonic mediation/arbitration with Mr. Scheinman on March 6 to attempt to resolve certain remaining disputes.[3]  Id.  During this same period the parties had multiple settlement status conferences with Your Honor, including on December 12, January 31, February 20, March 11, April 10, and April 20.  Id.  In connection with these court conferences, the parties provided Your Honor with

---

[3] The parties continue to dispute whether Mr. Scheinman was empowered to act as an arbitrator during this March 6 session but have been nevertheless able to resolve the disagreements that led to this mediation/arbitration.  Wittels Decl. ¶ 29.

two draft settlement agreements and an exhaustively researched and comprehensively written report responding to issues the Court raised during the April 10 conference.  See ECF No. 84.

These lengthy negotiations with both Your Honor's and Mr. Scheinman's assistance culminated in the initial Settlement Agreement that was executed on May 13 and May 14, 2020. Settlement Agreement at p. 3.  Following Defendant's review and approval of the proposed preliminary approval order and Plaintiffs' preliminary approval memorandum, on June 26, 2020 Plaintiffs' filed her initial motion for preliminary approval of the class and collective action settlement and related relief, ECF No. 93–95.  Id.

On July 6, 2020, counsel for the plaintiffs in Gonzalez de Fuente et al. v. Preferred Home Care of New York, LLC, et al., No. 18 CV 6749 filed a motion to intervene to seek several revisions to the settlement, which set off a flurry of tripartite discussions and lengthy negotiations, including comprehensive filings on July 17, 21, and 22 (ECF Nos. 113–17, followed by a two-hour telephonic conference before Judge Bloom on July 23.  Id.  At the July 23 conference Judge Bloom ordered the parties' and counsel for the Gonzalez Plaintiffs to redouble their settlement efforts but ordered the litigation to resume on a parallel track, see July 27, 2020 Electronic Order.

On July 31, 2020, following a status report from Defendant the Court stayed further proceedings and assisted the parties and the Gonzalez plaintiffs at lengthy conferences on August 6 and 24, and September 10 and 22.  Settlement Agreement at p. 3.  During this same period the parties and the Gonzalez plaintiffs worked daily to reach agreement on the outstanding issues, including via written correspondence, the exchange of various draft documents, and conference calls, which resulted in the Gonzalez plaintiffs withdrawing their motion to intervene on September 28, 2020.  ECF No. 131.

7

During this same period the parties also began discussing and testing various proposals regarding their proposed allocation formula as well as additional proposals regarding issues raised by the Court during the September 10 conference, which proposals included the extensive compilation and review of data on proposed and anticipated distributions to the members of the proposed Rule 23 Class.  Settlement Agreement at pp. 3–4.  At conferences on October 6 and 8 Judge Bloom provided guidance on the parties' respective proposals for resolving their remaining differences and the parties reached compromises on all outstanding issues.  Id. at 4. At all times, the parties' negotiations have been vigorous, adversarial, and at arm's length. Wittels Decl. ¶ 35.

## II.      SUMMARY OF THE SETTLEMENT TERMS

### A.      The Settlement Amount

Under the Settlement Agreement, Defendant will establish a cash fund of Six Million, Five Hundred Thousand Dollars and No Cents ($6,500,000) ("Settlement Fund").  Settlement Agreement § 4.1.  Each Class Member is entitled to a pro rata share of the net settlement fund as determined by the parties' agreed-upon formula.  Id. § 4.1; Settlement Formula (Exhibit A to the Settlement Agreement).  The average estimated payment to Class Members is approximately $215.70.  Wittels Decl. ¶ 37.

In addition, the parties agree that as a result of this action, Defendant reformed its pay practices to further ensure that all home care workers are properly paid for all hours worked. Settlement Agreement § 4.5.  Based on Defendant's pre-mediation discovery and Plaintiff's $12,000,000 damages model, Plaintiff reasonably estimates the value of these reforms at $6,000,000 over the next six years.  Wittels Decl. ¶ 38.  The total value of the settlement is therefore $12,500,000.  Id.; see also Fleisher v. Phoenix Life Ins. Co., Nos. 11 CV 8405, 14 CV 8714, 2015 WL 10847814, at *10 (S.D.N.Y. Sep. 9, 2015) ("The overall value of the settlement

comprises monetary as well as non-monetary relief."); <u>Velez v. Novartis Pharm. Corp.</u>, No. 04 CV 09194, 2010 WL 4877852, at *8, *18 (S.D.N.Y. Nov. 30, 2010) (both monetary and non-monetary relief considered in calculating value of settlement).

### B.      Eligible Class Members

Current and former workers who are entitled to receive payments from the Settlement Fund include two groups of Preferred workers: the "Rule 23 Class" and the "FLSA Collective" (together, "Class Members").  Settlement Agreement §§ 1.13, 1.24.  The "Rule 23 Class" consists of all individuals who have been employed by Defendant as Home Health Care Attendants at any time from September 29, 2011 through November 6, 2020.  <u>Id.</u> § 1.24.  The "FLSA Collective" consists of all individuals who worked for Defendant as Home Health Care Attendants at any time from September 29, 2014 through November 6, 2020.  <u>Id.</u> § 1.13.  Unless otherwise specified, "Class Members" refers to both the Rule 23 Class and the FLSA Collective.

### C.      Allocation Formula and Distribution of the Settlement Fund

Each Class Member will be paid a share of the $6,500,000 fund (minus administration costs, attorneys' fees and expenses, and the service award) based on each individual's actual uncompensated time, tenure, and the relative size (aggregate damages) and strength of each class-wide claim Plaintiff asserted in this litigation.  <u>See</u> Settlement Agreement, Exhibit A (setting forth the formula that will be used to allocate the net settlement fund).  This formula, which is based on Defendant's time data and Class Members' tenure/relevant uncompensated time reasonably correlates with Plaintiff's model such that Class Members will be fairly compensated in relation to their actual alleged damages.  Wittels Decl. ¶ 39.[4]

---

[4] Because of the much greater expense it will require to fill in the gaps in Plaintiff's damages model with actual data (as opposed to projections), for settlement distribution purposes the parties elected to use Class Member tenure/uncompensated hours as a proxy for damages.  <u>Id.</u>  An allocation plan based on Plaintiff's damages model would require Defendant to process and produce substantial additional data for the

*Footnote continued on next page.*

Specifically, through the allocation formula the parties allocated a percentage of the net settlement fund to each of the seven claims Plaintiff raised in her complaint or at the mediation. Wittels Decl. ¶ 40; see also Settlement Agreement, Exhibit A, Section I (dividing the net settlement amount among seven claims).  The allocation formula then sets out how each Class Member's share of each of the seven claims will be allocated.  Settlement Agreement, Exhibit A, Section II.  As discussed, the allocation of each claim is based on objective criteria that serves as proxy for actual damages.  Finally, the allocation formula provides that the Settlement Administrator will use the sum of each Class Member's share of the seven claims to calculate each Class Member's pro-rata share of the net settlement amount.  Id. at Sections III–IV.  The table below demonstrates in plain language how the net settlement amount is divided among the seven claims, and how each Class Member's share of the each of the seven claims will be allocated:

| Percentage of Net Settlement Fund Allocated to Each Claim | Objective Criteria for Determining a Class Member's Share of the Claim |
|---|---|
| 25% – 2015 Change in the FLSA Companionship Overtime Exemption | Total number of overtime hours worked by the Class Member during the relevant period. |
| 20% – Hours Worked | Total number of weeks worked by the Class Member during the Class Period. |
| 5% – Travel Time | Total number of weeks worked by the Class Member during the Class Period. |

approximately 8,000 Class Members who worked for Defendant after it reformed its payroll practices. This data must then be compiled into a single database and analyzed.  Such additional analysis introduces additional expense and delay in distributing the settlement funds.  Moreover, the compilation and computations will require expert involvement on both sides.  Because the additional Class Members benefited from Defendant's reformed payroll practices, and thus suffered less pecuniary harm, the parties have elected to use the formula based on tenure/uncompensated time as a proxy for damages.  Id.  This formula avoids delay, expense, and makes the required computations sufficiently simple so that the Settlement Administrator can apply the formula without expert involvement.  As discussed above, this proxy formula reasonably correlates with Plaintiff's damages model to ensure that Class Members are fairly compensated in relation to their actual damages.

| 20% – Underpaid Live-In Shifts | Total number of live-in shifts worked by the Class Member during the Class Period. |
| 5% – WTPA Wage Notices | Total number of weeks worked by the Class Member during each relevant period. |
| 5% – WTPA Wage Statements | Total number of weeks worked by the Class Member during each relevant period. |
| 20% – Wage Parity | Total number of weeks worked by the Class Member during the Class Period. |

Critically, Class Members will not be required to submit a claim form to receive payment and instead will be issued checks directly.  Settlement Agreement § 4.3(C); see also The Federal Judicial Center's "Judges' Class Action Notice and Claims Process Checklist" ("When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms.");[5] id. (directing courts to question if "a claims process [is] actually necessary").[6]

In order to maximize the monetary compensation to Class Members, and to allow Defendant to remain solvent, the mediator recommended (and the parties initially agreed), that the Settlement Fund would be distributed in two payments over a one-year period.  Wittels Decl. ¶ 41.  As the Court is aware, however, as a result of settlement conferences with Your Honor on September 10, October 6, and October 8, 2020, the parties agreed that Defendant would issue a single check to the approximately 92.5% of the Class (approximately 17,812 individuals) set to receive less than $600 from the settlement.  Id.   For the remaining 7.5% of the Class (or

---

[5] Available at: https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

[6] See also Sullivan v. DB Invs., Inc., 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that "claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns."); McGreevy v. Life Alert Emergency Response, Inc., 258 F. Supp. 3d 380, n.1 (S.D.N.Y. 2017) ("[n]umerous studies and articles show that potential class and collective members rarely participate in class action settlements when such settlements require opt-in.").

approximately 1,437 individuals whose average settlement payment is approximately $1,472), with the Court's assistance the parties agreed that these individuals' payments from the Settlement Fund would be distributed in two payments over a one-year period.  Id.  To offset the approximately $940,000 the Defendant would need to pay on an accelerated basis in order to issue a single check to Class Members set to receive less than $600, Class Counsel agreed to bear half of the burden of this accelerated payment by allowing Defendant to defer its payment of approximately $470,000 in Class Counsel's legal fees and expenses until Defendant makes the second payment to the Class Members set to receive $600 or more.  Id.

Following the Court's issuance of final settlement approval and the expiration of the appeal deadline (the "Effective Date" defined in Settlement Agreement § 1.9), Defendant will deposit $3,250,000, plus 50% of the amount needed to fund the cost of issuing a one-time payment to Class Members set to receive less than $600, minus the Settlement Administrator's fee in an escrow account administered by the Settlement Administrator.  Settlement Agreement §§ 4.2–3.  Each Class Member will then receive a settlement check based on the aforementioned $600 cut off.  Id. § 4.3(C).

Defendant will then deposit the amount needed to fund the remainder of the payments over 12 months in 12 equal monthly payments beginning within 30 days of the initial deposit, and within 12 months the Settlement Administrator will mail final settlement checks to Class Members set to receive $600 or more.  Id. §§ 4.2, 4.3.[7]

---

[7] While the funds from uncashed checks will be returned to Defendant, numerous quality control measures have been put in place to ensure that Class Members receive and cash their settlement checks. For example, Defendant is required to certify that the Class List contains the "most current and up to date information that Defendant has for Class Members."  Settlement Agreement § 3.6(B).  The Settlement Administrator will then run the Class List through the National Change of Address Database to update any changed addresses.  Id. § 3.6(E).  The Settlement Administrator is also empowered to take all further reasonable and customary efforts to ensure that the Class List is as up to date and accurate as practicable. Id.  Notices and checks returned undeliverable will be re-mailed following a skip trace (id. §§ 3.6(H),

*Footnote continued on next page.*

D.   **Releases**

Upon the Effective Date, Plaintiff and each Rule 23 Class Member who does not timely opt out of the Class will fully release and discharge Defendant from all New York state law claims asserted in the action, except for the wage parity claims in <u>Gonzalez</u> as outlined in the Settlement Agreement.  Settlement Agreement § 4.10(A).  This release includes claims for all damages arising from any such claims, including claims for liquidated damages, interest, and attorneys' fees and costs.  <u>Id.</u>  In addition, each FLSA Collective Member who cashes their settlement checks specifically and affirmatively releases Defendant from any FLSA claims asserted in the action.  <u>Id.</u> § 3.8.

E.   **Named Plaintiff Service Award**

In recognition of the services she rendered on behalf of the Rule 23 Class and the FLSA Collective, Plaintiff will apply for a service award of no more than $10,000.  Settlement Agreement § 4.7.  "Courts regularly grant requests for service awards in class actions to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs."  <u>Hall v. ProSource Techs., LLC</u>, No. 14 CV 2502, 2016 WL 1555128, at *9 (E.D.N.Y. Apr. 11, 2016) (internal quotations and citations omitted); <u>see also</u> <u>Toure v. Amerigroup Corp.</u>, No. 10 CV 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) ("[S]ervice awards recognize the risks that the named Plaintiffs . . . faced by participating in a lawsuit against their current or former employer and the efforts they made on behalf of the

---

4.3(E)), and Class Members will be given 90 days to cash their settlement checks.  <u>Id.</u> §§ 4.3(C), (D).  Any Class Member who has not cashed their check within 45 days will be mailed a reminder notice to cash their check.  <u>Id.</u>  Finally, for 18 months following the settlement's effective date the parties will maintain a Reserve Fund to <u>inter alia</u> compensate Class Members who have reasonable explanations for not having timely cashed their checks.  <u>Id.</u> § 1.23.

class."). Further, Plaintiff "took significant risk in pursuing the case," as she "could have faced retaliation from defendants and/or be 'black balled' from the industry" as a result of her involvement. Karic v. Major Automotive Cos., Inc., No. 09 CV 5708, 2016 WL 1745037, at *7 (E.D.N.Y. Apr. 27, 2016).

As detailed in the Declaration of Lead Class Counsel Steven Wittels, Plaintiff Ms. Medvedeva reviewed and discussed the pleadings, discovery demands, and memoranda of law. Wittels Decl. ¶ 43. She conferred with Class Counsel regarding the status of the case and the settlement negotiations, at all times encouraging Class Counsel to obtain the best possible result for the absent Class members. Id. Indeed, Plaintiff's participation in this case was significant and indispensable. Id.

The requested service award is well-deserved and falls well within the range of awards approved in similar cases. See, e.g., In re Polaroid, No. 03 CV 8335, 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (citing Dornberger v. Metropolitan Life Ins. Co., No. 95 CV 10374, 203 F.R.D. 118 (S.D.N.Y. Oct. 5, 2001) (case law supports service awards of between $2,500 and $85,000); Karic, 2016 WL 1745037, at *8 (collecting cases and approving service awards of $20,000 each to seven named plaintiffs in wage and hour action); Puglisi v. TD Bank, N.A., No. 13 CV 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving service awards of $15,000 each for two of the named plaintiffs and $10,000 each for three other named plaintiffs in a wage and hour action); Hernandez v. Merrill Lynch & Co., Inc., No. 11 CV 8472, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $13,000 to class representatives in wage and hour action). Moreover, the service award request was subject to arm's length negotiations between the parties, was facilitated by a noted mediator, and will be disclosed to the Class. Wittels Decl. ¶ 43. In sum, both the facts and law support the requested Service Award. The

Court need not rule on the requested Service Award now; pursuant to the Settlement Agreement Plaintiff will move for final court approval of the Service Award simultaneously with the Motion for Final Approval of the Settlement.

      **F.**     **The Settlement Administrator**

      The parties have agreed on the selection of Arden Claims Services as the Settlement Administrator to provide notice to the Class and administer payment of the settlement to Class Members. Settlement Agreement § 1.25. The Settlement Administrator's fee of up to $215,000 will be paid from the Settlement Fund, with any amounts in excess of $215,000 to be paid by Defendant. Id. § 3.12. Based on Class Counsel's experience the Settlement Administrator's fee in this matter is reasonable for a case of this size.   Wittels Decl. ¶ 57.

**III.**    **RULE 23 CLASS ACTION SETTLEMENT PROCEDURE**

      The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a motion for preliminary approval;

2. Dissemination of mailed notice of settlement to all affected class members; and

3. A final settlement approval hearing for the court to consider the fairness, adequacy, and reasonableness of the settlement.

See Fed. R. Civ. P. 23(e); see also Herbert B. Newberg & Alba Conte, Newberg on Class Actions §§ 11.22, et seq. (4th ed. 2002) ("Newberg"). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. With this motion, Plaintiff requests that the Court take the first step: granting preliminary approval of the settlement, conditionally certifying the settlement class, and approving the proposed Notice and authorizing its dissemination to the Class.

The parties submit the following proposed schedule for the final resolution of this matter for the Court's consideration and approval:

1.  Within fifteen (15) days after entry of the Preliminary Approval Order, Defendant will provide the Settlement Administrator and Class Counsel with a Class List, containing, <u>inter alia</u>, the full names, social security numbers, last known addresses, phone numbers, and primary language of each Class Member.  Settlement Agreement § 3.6(B).

2.  In advance of the Settlement Administrator's mailing of any Notice, the Settlement Administrator will set up and operate a case-specific call center, including live operator and voice-mail technology, to provide telephone support for the settlement and to address questions from and otherwise provide information to Class Members regarding the settlement.  <u>Id.</u> § 3.6(C).  Class Members will be able to have their questions answered and speak to someone in English, Russian, and Spanish.  Wittels Decl. ¶ 59.

3.  In advance of the Settlement Administrator's mailing of any Notice, counsel will negotiate in good faith (1) a list of frequently asked questions and answers ("FAQs") to be used by the Settlement Administrator in responding to inquiries from Class Members following the issuance of the Notice, and (2) the Settlement Administrator's recorded message to callers.  Settlement Agreement § 3.6(C).  These documents will also be translated into Russian and Spanish by certified translators.  Wittels Decl. ¶ 60.

4.  In advance of the Settlement Administrator's mailing of any Notice, the Settlement Administrator will update the Class List to ensure that it is as accurate as practicable.  Settlement Agreement § 3.6(E).

5.  Within thirty (30) days of receiving the Class List, the Settlement Administrator will mail the Notice to Class Members.  <u>Id.</u> § 3.6 (F).

6.  Notices retuned as undeliverable will be skip traced and re-mailed.  <u>Id.</u> § 3.6 (G)–(H).

7.  Settlement Class Members will have sixty (60) days after the date the Notice is mailed to opt out or object to the settlement.  <u>Id.</u> §§ 3.7(A), 3.8(A).

8.  A final Fairness Hearing will be held as soon as is convenient for the Court.  <u>Id.</u> § 3.9.

9.  No later than three (3) business days prior to the Fairness Hearing the

Settlement Administrator shall certify to the Court the completion of its responsibilities that can be accomplished prior to the Fairness Hearing. Id. § 3.7(J).

10. Plaintiff will file a Motion for Final Approval of Settlement no later than seven (7) days before the Fairness Hearing. Id. § 3.9.

11. After the final Fairness Hearing, if the Court grants Plaintiff's Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment. Id. § 3.10.

12. Not later than ten (10) days following the settlement's Effective Date, the Settlement Administrator will disburse the first round of settlement checks to Class Members, both the one-time payment to the Class Members set to receive less than $600 as well as the first payment to the Class Members set to receive $600 or more. Id. § 4.3(C). The one-time payment to the Class Members set to receive less than $600 will be treated as a non-wages payment, eliminating the need to withhold statutory deductions and issue W-2s and 1099s to Class Members who receive less than $600, which will reduce claims administration fees to be borne by Defendant. Id.

13. Within twelve (12) months of the Effective Date, the Settlement Administrator will mail final settlement checks to Class Members set to receive $600 or more. Id. § 4.3(D).

14. For 18 months following the Effective Date, the Settlement Administrator will maintain the Reserve Fund to address errors and omissions in the calculation of Class Members' individual shares of the settlement, including but not limited to (a) claims from individuals claiming to be Class Members but not identified as such by Defendant, (b) Class Members who correctly challenge their settlement share, and (c) Class Members who have reasonable explanations for not having timely cashed their checks. Id. § 1.23.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

The law strongly favors compromise and settlement of class actions. See

Moukengeshcaie v. Eltman, Eltman & Cooper, P.C., No. 14 CV 7539, 2019 WL 5204809, at *6

(E.D.N.Y. Oct. 15, 2019) (noting that "[j]udicial policy favors the settlement and compromise of

class actions") (citing Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116–17 (2d Cir.

2005)); Karic v. Major Automotive Cos., Inc., No. 09 CV 5708, 2016 WL 1745037, at *4

(E.D.N.Y. Apr. 27, 2016).  In addition, courts encourage early settlement of class actions

"because early settlement allows class members to recover without unnecessary delay and allows

the judicial system to focus resources elsewhere."  Azogue v. 16 for 8 Hospitality LLC, No. 13

CV 7899, 2016 WL 4411422, at *3 (S.D.N.Y. Aug. 19, 2016) (internal quotations and citation

omitted); see also Clem v. KeyBank, N.A., No. 13 CV 789, 2014 WL 2895918, at *5 (S.D.N.Y.

June 20, 2014) (commending parties for acting responsibly in reaching early settlement).

      The approval of a proposed class action settlement is a matter of discretion for the trial

court.  Victoria Perez v. Allstate Ins. Co., No. 11 CV 1812, 2019 WL 1568398, at *1 (E.D.N.Y.

Mar. 29, 2019) (citing Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir.

1998)).  "In exercising this discretion, courts should give proper deference to the private

consensual decision of the parties."  Puglisi, 2015 WL 574280, at *1 (internal quotation marks

omitted).  "In evaluating the settlement, the Court should keep in mind the unique ability of class

and defense counsel to assess the potential risks and rewards of litigation . . . ."  Id. (internal

quotations omitted); see also Garcia, 2012 WL 1843785, at *2 (same); In re EVCI Career Colls.

Holding Corp. Sec. Litig., No. 05 CV 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)

("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the

parties who negotiated the settlement.").

      Indeed, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class

settlement reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery."  Spagnuoli v. Louie's Seafood Rest., LLC, No. 13 CV 4907, 2018 WL

7413304, at *3 (E.D.N.Y. Sep. 27, 2018) (internal quotation marks omitted); see also

Moukengeshcaie, 2019 WL 5204809, at *8 ("Given the presumption of fairness when a class

settlement has been reached after arm's-length negotiations between experienced, capable

counsel after meaningful discovery, the Court finds that the process of reaching the proposed settlement in this case was procedurally fair.") (internal citations omitted); Oladipo v. Cargo Airport Servs. USA, LLC, No. 16 CV 6165, 2019 WL 2775785, at *8 (E.D.N.Y. July 2, 2019) (same). The force of this presumption is increased when a settlement is reached with the assistance of an experienced mediator, as is the case here. Ortega v. Uber Techs. Inc., No. 15 CV 7387, 2018 WL 4190799, at *5 (E.D.N.Y. May 4, 2018); Toure v. Amerigroup Corp., No. 10 CV 5391, 2012 WL 1432302, at *1 (E.D.N.Y. Apr. 20, 2012). Indeed, the settlement in this case was overseen both by an experienced mediator and a federal judge well-versed in wage and hour matters.

Preliminary approval requires only the Court's "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. Victoria Perez, 2019 WL 1568398, at *1; Puglisi, 2015 WL 574280, at *1 (citing Newberg § 11.25). In fact, "[c]ourts often grant preliminary settlement approval without requiring a hearing or a court appearance." Sukhnandan v. Royal Health Care of Long Island LLC, No. 12 CV 4216, 2013 WL 4734818, at *1 (S.D.N.Y. Sep. 3, 2013).

To grant preliminary approval, under the 2018 amendments to Rule 23(e) the court "must determine whether 'giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original).

"To be likely to approve a proposed settlement under Rule 23(e)(2)," the Court must find that the settlement "is fair, reasonable, and adequate." In re GSE Bonds Antitrust Litig., 414 F.

Supp. 3d 686, 692 (S.D.N.Y. 2019).  "The newly amended Rule 23 enumerates four factors for the Court to consider as part of this inquiry: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members.  Id. (citing Fed. R. Civ. P. 23(e)(2)).  "Prior to the 2018 amendments, courts in the Second Circuit considered whether a settlement was 'fair, reasonable, and adequate' under nine factors set out in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)."  Id.  "The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these 'Grinnell' factors.  Id. (citing 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2)); see also In re Payment Card, 330 F.R.D. at 29 ("Indeed, there is significant overlap between the Grinnell factors and the Rule 23(e)(2)(C–D) factors . . . .").  Accordingly, this preliminary approval memorandum and Your Honor should "consider[] both sets of factors in its analysis, noting where they overlap."  In re GSE Bonds, 414 F. Supp. 3d at 692.[8]

Here, the settlement was reached after Class Counsel conducted a thorough investigation and evaluated the proposed Class' claims and defenses, and after vigorous arm's-length negotiations between the parties that were facilitated both by the Court and a noted class action mediator.  Accordingly, this settlement bears all the hallmarks of a fair settlement.  See, e.g., Moukengeshcaie, 2019 WL 5204809, at *8 (settlement negotiations were fair where the parties

---

[8]  The Grinnell factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  Grinnell, 495 F.2d at 463.  These factors are not to be applied in a rigid, formalistic manner.  Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice."  Id. at 468.  Here, the totality of the Grinnell factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

were represented by knowledgeable counsel, engaged in discovery, and had their negotiations overseen by an experienced mediator); Victoria Perez, 2019 WL 1568398, at *1 (same).

### A.   Adequacy of Representation:  Both Plaintiff and Her Counsel Are Zealous and Qualified Advocates for the Class

Rule 23(e)(2)(A) requires a Court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement. "Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007) (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)).[9]

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  Toure v. Cent. Parking Sys., No. 05 CV 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sep. 28, 2007) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat . . . representative status." Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 165 (S.D.N.Y. 2014) (quoting Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.)) (internal quotation marks omitted); Mendez v. MCSS Rest. Corp., No. 16 CV 2746, 2019 WL 2504613, at *10 (E.D.N.Y. June 17, 2019) (same).

---

[9] "This adequate representation factor is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context."  In re Payment Card, 330 F.R.D. at 30.  "As a result, the Court looks to Rule 23(a)(4) case law to guide its assessment of this factor."  Id.

Here, Plaintiff meets the adequacy requirement because her "interests are aligned with other class members' interests because they suffered the same injuries--monetary losses resulting from [Defendant's allegedly unlawful pay practices]." In re GSE Bonds, 414 F. Supp. 3d at 692; see also Mendez, 2019 WL 2504613, at *10 (adequacy satisfied where plaintiffs "allege a common practice or policy of unlawful labor practices [and] their claims will require similar legal and factual proof to those of absent class members").  Because of these injuries, Plaintiff has an "interest in vigorously pursuing the claims of the class." Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006).  Indeed, "[o]nly a fundamental conflict of interest between a representative and the class or subclass will defeat the adequacy of representation requirement." Hernandez v. Immortal Rise, Inc., 306 F.R.D. 91, 98 (E.D.N.Y. 2015) (Bloom, M.J.).

Moreover, Plaintiff has contributed significant time and effort to the case by participating in numerous in-person meetings and telephone conferences with Class Counsel, providing Class Counsel with detailed factual information regarding the home care workers' job duties, reviewing and discussing the pleadings, discovery, demands, and memoranda of law. Wittels Decl. ¶ 43.  Plaintiff also assisted with preliminary negotiations with Defendant's counsel, and supported Class Counsel during two mediations and various follow-up calls. Id.  In sum, Plaintiff has been an excellent class representative.

Class Counsel also meets the adequacy requirement.  Wittels McInturff Palikovic and Hymowitz Law Group, PLLC attorneys have extensive experience in successfully prosecuting wage and hour class actions.  Wittels Decl. ¶¶ 3–8.  The lead attorney prosecuting this case, Steven L. Wittels, was one of the lead trial counsel in the largest class action jury verdict in the history of employment discrimination litigation. Id. ¶ 4.  Mr. Wittels has served as Class Counsel in dozens of wage and hour, employment discrimination, and consumer fraud class

22

actions, generating hundreds of millions of dollars in recoveries to class members.  Id. ¶ 3.  Mr. Wittels' partner J. Burkett McInturff also has extensive class and collective action experience, having led several complex class and collective action matters to completion and generating more than one hundred million dollars in recoveries to class members.  Id. ¶ 7.  At all times, Mr. Wittels has been assisted by Mr. McInturff and a team of attorneys with significant class action experience and expertise.  Id.  Further, Wittels McInturff Palikovic and Hymowitz Law Group, PLLC have dedicated substantial time and resources, investigating, prosecuting, and settling Plaintiff's and Class Members' claims.  Id. ¶ 8.  The work that Class Counsel has performed on this case demonstrates the firms' skill and commitment to representing the interests of the Class. Id.

### B.  Presence of Arm's-Length Negotiations:  The Parties' Vigorous Negotiations Were Arm's Length at All Times

"Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that 'the proposal was negotiated at arms length.'"  In re GSE Bonds, 414 F. Supp. 3d at 693.  If a class action settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness."  In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000), aff'd sub nom., D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001).  Further, "[a] settlement . . . reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process."  Elkind v. Revlon Consumer Prod. Corp., No. 14 CV 2484, 2017 WL 9480894, at *17 (E.D.N.Y. Mar. 9, 2017), report and recommendation adopted, No. 14 CV 2484, 2017 WL 1169552 (E.D.N.Y. Mar. 29, 2017) (quoting In re Penthouse Executive Club Comp. Litig., No. 10 CV 1145, 2013 WL 1828598, at *1 (S.D.N.Y. Apr. 30, 2013)).  Here, Your Honor's tireless assistance in the

settlement process, along with that of a noted class action mediator, clearly supports preliminary

approval.  Garcia v. Pancho Villa's of Huntington Village, Inc., No. 09 CV 486, 2012 WL

1843785, at *2 (E.D.N.Y. May 21, 2012); Toure, 2012 WL 1432302, at *1.

**C.     Adequate Relief for the Class: The Settlement Amount Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

Rule 23(e) (2) (C) requires examining whether relief for the class is adequate, taking

into account:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

This inquiry overlaps significantly with several Grinnell factors, including factors 1 and

4–6 which help guide the Court's application of Rule 23(e)(2)(C)(i).  In re Payment Card, 330

F.R.D. at 36.

1. Litigation Through Trial Would Be Complex, Costly, and Long
   (Grinnell Factor 1)

By reaching a favorable settlement prior to trial, Plaintiff seeks to avoid significant risk,

expense, and delay and instead ensure a substantial recovery for the Class.  See Id. ("Settlement

is favored if settlement results in substantial and tangible present recovery, without the attendant

risk and delay of trial.") (quotation marks omitted).  "Most class actions are inherently complex

and settlement avoids the costs, delays and multitude of other problems associated with them."

Doe #1 by Parent #1 v. New York City Dep't of Educ., No. 16 CV 1684, 2018 WL 3637962, at

*11 (E.D.N.Y. July 31, 2018) (quoting In re Austrian & German Bank Holocaust Litig., 80 F.

Supp. 2d 164, 174 (S.D.N.Y. 2000), aff'd sub. nom. D'Amato v. Deutsche Bank, 236 F.3d 78

(2d Cir. 2001)).  This case is no exception, with approximately 19,000 Class Members and novel

claims under federal and state law.

Continued litigation will only add expense and delay.  While the parties have engaged in exhaustive pre-mediation discovery, extensive additional discovery will be required to prepare this case for class certification and trial.  In addition, Defendant would re-file its motion to dismiss and the parties likely would file cross-motions for summary judgment on several of the unique legal issues raised by Plaintiff's claims.  If the Court denied the motions, a lengthy, fact-intensive trial would be necessary and would consume tremendous time and resources for the parties and the Court.  Further, any judgment would likely be appealed, adding further uncertainty and delay.  In contrast, the settlement bestows substantial monetary relief to Class Members in a prompt and efficient manner, has led Defendant to reform its pay practices, and avoids the risks and costs inherent in class actions specifically, and litigation generally.  Therefore, the first Grinnell factor weighs heavily in favor of approval.  See, e.g., Moukengeshcaie, 2019 WL 5204809, at *8) (factor favors approval because "[g]iven the complexity of any class action lawsuit . . . it is reasonable to assume that absent the instant Settlement, continued litigation would have required extensive time and expense") (citation omitted); Karic, 2016 WL 1745037, at *5 (noting that "[i]n the absence of a settlement, further litigation in this case would clearly cause additional expense and delay, and could lead to a fact-intensive trial."); Hernandez v. Immortal Rise, Inc., 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (factor weighs in favor of approval because class and collective action litigation to recover overtime wages "would be complex, expensive, and long"); Reid v. SuperShuttle Intern., Inc., No. 08 CV 4854, 2012 WL 3288816, at *2 (E.D.N.Y. Aug. 10, 2012) (factor favors approval because "[a]bsent a settlement, this case would likely take substantial time and resources to resolve . . . additional discovery, briefing and argument of motions for summary judgment and for class

certification (and, with class certification, potential appeals) and eventually, perhaps, a lengthy trial followed by further appeals.").

2. Plaintiff Faces Real Risks if the Case Proceeds (Grinnell Factors 4 and 5)

Although Plaintiff believes her case is strong, she is nevertheless cognizant of the considerable risks of proceeding to trial. First, "[l]itigation inherently involves risks." Hall v. ProSource Tech., LLC, No. 14 CV 2502, 2016 WL 1555128, at *7 (E.D.N.Y. Apr. 11, 2016) (quoting In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y 1997)). Indeed, "the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." Id. (quoting Siler v. Landry's Seafood House–North Carolina, Inc., No. 13 CV 587, 2014 WL 2945796, at *6 (S.D.N.Y. June 30, 2014)). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." In re Austrian & German Bank Holocaust Litig, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

Moreover, there is no guarantee that this case will lend itself to class certification. Specifically, Defendant "would argue that there are individualized questions as to the job duties and payment structure for the class members that makes certification and ultimately trial on a class-wide basis impractical." Sierra v. Spring Scaffolding LLC, No. 12 CV 05160, 2015 WL 10912856, at *5 (E.D.N.Y. Sep. 30, 2015). Indeed, Defendant "would likely pursue all potential defenses and raise multiple issues in the course of the litigation, making the outcome of [Plaintiff's] claims uncertain." Moukengeshcaie, 2019 WL 5204809, at *9. A "trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under federal and state law, and in light of the defenses available to Defendant, which would pose substantial risk as to both liability and damages." Hall, 2016 WL 1555128, at *7 (internal quotations and citations omitted). Plaintiff would have to overcome, among other

26

things, Preferred's defenses (i) that at least some of Class Members' claims are time-barred, (ii) that Defendant did not act willfully, (iii) that Defendant was not required to pay overtime at a higher rate until October 13, 2015, (iv) that Plaintiff was never entitled to travel pay because travel from home to work and from work to home is not compensable work time and because Plaintiff was completely relieved from duty between any assignments on the same day and the time period between cases was long enough to enable her to use the time effectively for her own purposes, (v) that Plaintiff is not entitled to spread of hours pay because she always earned more than the minimum wage, (vi) that Plaintiff was always paid overtime at the appropriate rate, (vii) that Plaintiff was never entitled to be compensated for wage notice or wage statement violations because wage notices and wage statements always complied with Labor Law § 195, and (viii) that Plaintiff and Class Members were paid in accordance with the law including the wage parity law.  Sierra, 2015 WL 10912856, at *5.

    While Plaintiff believes that she could ultimately establish Defendant's liability, Plaintiff's Counsel are both experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties and therefore weighs in favor of preliminary approval.  See, e.g., Immortal Rise, Inc., 306 F.R.D. at 100 (Your Honor finding that risks as to both liability and damages, including overcoming defendant's defenses and proving willfulness weighed in favor of final approval).

    3.  Maintaining the Class Through Trial Would Not Be Simple
        (Grinnell Factor 6)

    The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet certified the Class and no FLSA Collective Members have opted in pursuant to 29 U.S.C. § 216(b).  To obtain Class certification and defend against attempts to

27

decertify the Collective, Plaintiff would likely have to overcome Defendant's defenses that Plaintiff was always paid properly and provided with proper wage notices and wage statements, individual questions predominate, that the challenged pay practices were not uniform for all potential Class and Collective Members, and that Plaintiff cannot prove damages. See, e.g., Zeller v. PDC Corporation, No. 13 CV 5035, 2016 WL 748894, at *3 (E.D.N.Y. Jan. 28, 2016) (finding that "maintaining a class through trial would be neither simple nor easy"); Reid v. SuperShuttle Intern., Inc., 2012 WL 3288816 at *3 (same).

While Class Counsel believes that the Court would certify the Rule 23 Class and finally certify the FLSA Collective, both determinations would be reached only after extensive litigation, including electronic discovery, depositions, expert discovery, and extensive briefing. See Moukengeshcaie, 2019 WL 5204809, at *9 ("If plaintiff was to move for class certification, defendant may well oppose the motion and move for decertification. This process would require extensive briefing by both parties and inherently involves risk, expense, and delay."). Further, Defendant would likely challenge those determinations after the close of discovery. See Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) aff'd, 519 F. App'x 1 (2d Cir. 2013) ("The risk of maintaining class status throughout trial also weighs in favor of final approval. Defendant would likely move to decertify, requiring another round of briefing."). Defendant could also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). Torres, 2010 WL 5507892, at *5. "Settlement eliminates the risk, expense, and delay inherent in this process." Id.; see also Willix v. Healthfirst, Inc., No. 07 CV 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (same). This factor strongly favors preliminary approval.

**D.**  **Effectiveness of the Proposed Method of Distributing Relief: Direct Payments to Class Members Without a Claims Process is the Preferred Method and the Parties' Allocation Plan is Reasonable and Fair**

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, while courts are directed to "be alert to whether the claims process is unduly demanding," In re Payment Card, 330 F.R.D. at 40, no such process is required. Instead, Class Members will be issued checks directly without the need to file a proof of claim, which is without question the optimal method for distributing relief to Class Members. See p. 11 supra (collecting authorities).

Moreover, Class Counsel have gone to great lengths to ensure that Class Members receive their cash settlement benefits. Wittels Decl. ¶ 40. To that end, Class Counsel have engaged in protracted negotiations with defense counsel over the method, format and content of the Notice. Id. This has resulted in a carefully planned notice process that we expect to inure to the Class' benefit in that Class Members need not fill out claims forms or take overt action to receive their share of the settlement. Id. Nevertheless, the Settlement Administrator has informed the parties that with any common fund settlement it is typical for approximately 10% of recipients to not cash their settlement checks despite the checks being mailed to the Class Member's updated, last known home address. Id. To minimize this possibility, Class Counsel negotiated for a reminder notice which the Settlement Administrator will send out to "[a]ny Class Member who has not cashed their check within 45 days of the date of mailing of the checks." Settlement Agreement § 4.3(E). It is anticipated that his extra "belt and suspenders" procedure will increase the check deposit rate. Wittels Decl. ¶ 40.

Regarding the method of dividing the settlement funds among the Class, while the plan of allocation "must be fair and adequate," it "need only have a reasonable, rational basis,

particularly if recommended by experienced and competent class counsel." Id. (quoting In re WorldCom, Inc. Sec. Litig., 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)). "[N]umerous courts have held . . . [that] a plan of allocation need not be perfect." In re EVCI Career Colleges Holding Corp. Sec. Litig., No. 05 CV 10240, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases).

Here, as discussed supra, Class Counsel was careful to ensure that the payment allocation plan tracked Plaintiff's damages model and yields a fair result. Further, the allocation to each Class Member is based on each worker's pro rata share of the settlement fund. Such allocation plans easily hurdle the applicable standard. See In re Namenda Direct Purchaser Antitrust Litig., No. 15 CV 7488, 2020 WL 2749223, at *7–8 (S.D.N.Y. May 27, 2020) (collecting cases and approving pro rata distribution plan as "efficient[] and fair[]" which is "like many similar plans in analogous cases"); see also Meredith Corp. v. SESAC, LLC, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata allocation plan "appear[ed] to treat the class members equitably . . . and has the benefit of simplicity.").

### E.    The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Award was Negotiated at Arms' Length and is Well Within the Norms of this Circuit

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment." Class Counsel will request that the Court approve litigation expenses and attorneys' fees of one third of the Settlement Fund (i.e. $2,166,666). Id. § 4.6. This sum is consistent with fee awards in the Second Circuit. See Hall, 2016 WL 1555128, at *11 ("33% of the common fund is considered routine and therefore reasonable.") (internal citations omitted)); Sierra v. Spring Scaffolding LLC, No. 12 CV 05160, 2015 WL 10912856, at *7 (E.D.N.Y. Sep. 30, 2015) (same).

Class Counsel's requested fee and expense award is also reasonable in relation to the result achieved for the Class.  As noted supra, Class Counsel achieved $6,500,000 in monetary benefits as well as non-monetary relief reasonably valued at $6,000,000.  In awarding attorneys' fees, it is well settled that "courts include the value of both the monetary and non-monetary benefits conferred on the Class."  Fleisher, 2015 WL 10847814, at *15; see also id. at *10 ("The overall value of the settlement comprises monetary as well as non-monetary relief.").  "Leading authorities agree, as do courts in this Circuit and nationwide."  Id. at *15 (collecting authorities).

Here, since Plaintiff started this litigation, Defendant has continued to enhance its pay practices to ensure that Defendant's home care workers are paid for all hours worked, paid the proper hourly and overtime rates, paid overtime for all hours worked over forty including in-service and travel time over forty hours, and are paid, at a minimum, proper wage parity additional and supplemental wages for all episode of care hours worked.  Wittels Decl. ¶ 5.  Specifically, Plaintiff has confirmed that Defendant has processes in place to ensure that workers are paid the correct applicable rate, including when changes in the legal minimum rate of pay occur, and if employees do in-service hours that should be classified as overtime, that time is properly paid.  Id.  Defendant also has detailed policies for tracking compensable and non-compensable travel time, as well as a system to track such hours.  Id.  Defendant's hours worked verification policies have also been updated and revised.  Id.  In addition, Defendant's live-in employees have been afforded a straightforward process to report when they are unable to obtain eight hours of sleep (five of which must be uninterrupted) and three hours of meal periods so they are paid for those hours.  Id.  For these same employees, Defendant also has developed additional staffing methods to ensure proper live-in pay practices.  Id.  Further improvements to Defendant's wage statement and notice compliance measures have also been implemented.  Id.

31

In connection with these reforms, Class Counsel reviewed and provided input into the following of Defendant's policies:  Payroll Documentation Requirements; Live-in Relief/Coverage; Approved Overtime; Electronic Visit Verification (EVV); Home Care Worker Travel Time; EVV Guidelines:  Policies, Procedures and Agency Expectations; HHAeXchange Clock In, Clock Out, Use of FOB Device, and Use of Mobile App Instructions; Time Sheet Checklist; and Wage Parity Policy and Procedure as well as Preferred's Live-In Aide Agreement and Acknowledgement.  Id.

"The Federal Judicial Center provides an example of when it is appropriate to base a percentage fee on the value of injunctive relief through objective criteria: 'an injunction against an overcharge may be valued at the amount of the overcharge multiplied by the number of people likely to be exposed to the overcharge in the near future.'"  Fleisher, 2015 WL 10847814, at *15. The Federal Judicial Center's method was precisely the method used in calculating the $6,000,000 value of the non-monetary relief Class Counsel obtained here.  Wittels Decl. ¶ 38; see also Sheppard v. Consol. Edison Co. v. N.Y., Inc., No. 94 CV 0403, 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) (valuing non-monetary relief at "an estimated $5 million," when considering class counsel's fee request); McCoy v. Health Net, Inc., 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (even though the parties could only "fairly value" the non-monetary relief "at between $26 million and $38 million," the court used this valuation for setting fee); Tennille v. W. Union Co., No. 09 CV 00938, 2013 WL 6920449, at *10 (D. Colo. Dec. 31, 2013) (adding $46,560,596 in non-monetary value to $19,000,000 in available refunds and awarding fee of 35% ($22,946,208) of $65,560,596 because an attorneys' fee based solely on the monetary component "would severely undervalue class counsel's efforts in obtaining the [non-monetary] relief and other benefits included in the [settlement]."); Sykes v. Harris, No. 09 Civ 8486, 2016 WL 3030156, at *17 (S.D.N.Y. May 24,

2016) (considering value of non-monetary relief in setting class counsel fees); Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, 3d. Ed., 35 (2010) (basing fees on the "actual value to the class of any settlement fund **plus** the actual value of any nonmonetary relief") (emphasis added); Principles of the Law of Aggregate Litigation, The American Law Institute, Mar 1, 2010, § 3.13 (noting fee awards are to be "based on both the monetary **and** nonmonetary value of the judgment or settlement") (emphasis added).

When considering the $6,000,000 non-monetary benefit conferred on the Class, the requested attorneys' fee and expense award represents just 17.33% of the $12,500,000 total settlement benefit.  Wittels Decl. ¶ 45.  Class Counsel's requested fee is thus at the low end of fees approved in comparable cases, as a fee of one third (or 33.33%) of the total value obtained for the class has repeatedly been deemed "reasonable and consistent with the norms of class litigation in this Circuit."  Garcia v. Pancho Villa's of Huntington Village, Inc., No. 09 CV 486, 2012 WL 1843785, at *8 (E.D.N.Y. May 21, 2012) (internal quotations and citations omitted); Toure, 2012 WL 3240461, at *5 (same).  It is thus no surprise that Courts in this Circuit have routinely approved fee requests for one third of the value obtained in cases of a similar size to the instant matter.  See, e.g., Beckman v. KeyBank, N.A., 293 F.R.D. 467 (S.D.N.Y. 2013) (awarding one third of $4.9 million settlement in wage and hour action); Puglisi, 2015 WL 4608655, at *1 ("The attorneys . . . who prosecuted this case are experienced class action employment lawyers with good reputations among the employment law bar.  The Court grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $3,300,000.00 in attorneys' fees, which is one-third . . . ."); see also In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d 686, 695 (S.D.N.Y. 2019) (observing that fees as high as 33.5% have been approved from settlement funds ranging from $16 million to $20.25 million).

Class Counsel's fee and expense request was also subject to arm's length negotiations

between the parties, was facilitated by a noted mediator, and will be disclosed to the Class.  Wittels Decl. ¶ 38.  Moreover, as discussed above, to facilitate a direct, one-time payment to Class Members who are set to receive less than $600, Class Counsel has agreed to defer approximately $470,000 in legal fees for the benefit of the Class.  Id. ¶ 41.

Application of the lodestar/multiplier method also confirms the reasonableness of Class Counsel's request.  Courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method."  Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116–17 (2d Cir. 2005).  However, "[t]he trend in this Circuit is toward the percentage method, which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.' " Id. (internal citation omitted) (quoting In re Lloyd's Am. Trust Fund Litig., No. 96 CV 1262, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)).  By contrast, the lodestar method has been criticized for creating "a temptation for lawyers to run up the number of hours for which they could be paid" which "created an unanticipated disincentive to early settlement." Goldberger v. Integrated Res., Inc., 209 F.3d 43, 48–49 (2d Cir. 2000).  From the standpoint of judicial economy, "the primary source of dissatisfaction" with the lodestar method "was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits," which produced an "inevitable waste of judicial resources."  Id.

Despite its criticism of the lodestar method, the Second Circuit has advised that it remains potentially useful as a "cross-check" against the percentage method.  Id. at 50.  Here, Class Counsel's lodestar to date is $2,644,181.25, which reflects the over 3,650 hours counsel reasonably devoted over more than three years of investigation and litigation.  Wittels Decl. ¶ 52.   Class Counsel is thus **_not_** asking for a multiplier, although as can be seen from the more than three years

34

of pure contingency work Class Counsel has dedicated to this case—exemplified by the tenacity

Class Counsel has shown in persevering through demanding litigation and overcoming numerous

settlement obstacles—the excellent result achieved certainly would have warranted a multiplier had

Class Counsel's lodestar not exceeded the percentage recovery sought.  Here, comparing the

lodestar with the requested fee yields a ***negative*** multiplier of .82, [10] or an 18% discount on the fair-

market value of their legal services.  Further, when Class Counsel makes their petition for

attorneys' fees and expenses at the final approval stage they will perform a re-review of all billing,

and exercise billing judgment that will likely further reduce their lodestar.  Wittels Decl. ¶ 50.

Finally, Class Counsel's requested fee and expense request is consistent with public policy.

As Judge Vitaliano aptly noted in <u>Alleyne v. Time Moving & Storage Inc.</u>, 264 F.R.D. 41, 60

(E.D.N.Y. 2010), where the Court approved a one-third attorneys' fee:

> Public policy favors generous attorney's fees in a case such as this, because the
> small size and questionable merits of the individual class members' claims
> necessitated prosecution of the action on a class or representative basis.  If counsel
> did not have the prospect of an award that took account of the substantial risks and
> uncertainties of such litigation, there would be no incentive to take this type of case
> at all and the vast majority of the class would have gone without prospect of
> recovery.

<u>See also</u> <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, No. 02 CV 3400, 2010 WL 4537550, at *29

(S.D.N.Y. Nov. 8, 2010) (holding that if the "important public policy [remedial statutes] is to be

---

[10] <u>See, e.g.</u>, <u>Zeltser v. Merrill Lynch & Co., Inc.</u>, No. 13 CV 1531, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts"); <u>Hernandez v. Merrill Lynch & Co.</u>, No. 11 CV. 8472, 2013 WL 1209563, at *9 (S.D.N.Y. Mar. 21, 2013) (awarding lodestar multiplier of 3.8, finding it "well within the range of multipliers that have been granted by courts in this Circuit and elsewhere" and noting that "[c]ourts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers") (collecting cases); <u>In re Nortel Networks Corp. Sec. Litig.</u>, 539 F.3d 129, 134 (2d Cir. 2008) (stating that a "2.04 lodestar multiplier, is toward the lower end of reasonable fee awards"); <u>Wal-Mart</u>, 396 F.3d at 123 (approving and stating that a multiplier of 3.5 "has been deemed reasonable" and "multipliers of between 3 and 4.5 have become common") (internal citations omitted); <u>Shapiro v. JPMorgan Chase & Co.</u>, No. 11 CV 7961, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District.").

carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); In re Merrill Lynch Tyco, 249 F.R.D. 124, 141–42 (S.D.N.Y. 2008) ("In order to attract well qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.") (internal quotation marks omitted); Hicks v. Stanley, No. 01 CV 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."); In re Abrams & Abrams, P.A., 605 F.3d 238, 246 (4th Cir. 2010) ("Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever.").  This is especially true where, like here, there are no public enforcement actions.

The settlement also provides substantial benefits to the public as well as Class Members.  It is serving public policy as embodied in the wage and hour laws by compensating workers, holding Defendant accountable for its allegedly unlawful conduct, and deterring future similar conduct. This deterrent effect, moreover, will carry over to other market participants, who will be on notice that they will suffer unwanted cost, inconvenience, bad publicity, and legal exposure if they engage in similar conduct.

Moreover, the fee request does not bestow a windfall on Class Counsel (see lodestar cross-check discussion above) and represents fair compensation for the more than three years they devoted to this case.  Therefore, the policy of preventing windfalls is not at issue here.  Simply put, Class Counsel's fee is reasonable, as this amount falls well below the range of fees normally approved within this Circuit under either the percentage of the fund or lodestar/multiplier

methodology.

The Court need not rule on fees and costs now, as pursuant to Federal Rule of Civil Procedure 23(h), Plaintiff will move for final court approval of Class Counsel's fee and expense request simultaneously with the Motion for Final Approval of the Settlement.[11]

**F.      Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Actual Damages and is Reasonable**

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Notes to Fed. R. Civ. P. 23.

Here, the settlement treats individual Class Members fairly in relation to their realistic outcomes at trial. As discussed supra, Class Counsel was careful to ensure that the payment allocation plan tracked Plaintiff's damages model and yields a fair result. Indeed, looking at exemplars of individual Class Members' recovery under the settlement versus their realistic outcomes at trial further demonstrates the settlement's reasonableness. The graph on the following page compares the potential trial recovery versus the actual settlement recovery of 31 individuals, between the 10th and the 90th percentiles of 40 Class Members selected at random by Plaintiff's expert from Defendant's pre-mediation production.[12]

---

[11] Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." Here, there are "no agreements under Rule 23(e)(3) that the Court must review." In re Payment Card, 330 F.R.D. at 36, n. 30.

[12] One of the 40 individuals in the random sample set is, in fact, not a Class Member.



This graph demonstrates that the settlement compensates individual Class Members fairly in relation to their potential damages and one another.  In other words, the settlement allocation formula reasonably correlates with Class Members' potential damages.

Likewise, the table below itemizing these same 31 Class Members' approximate potential recoveries versus actual recoveries also demonstrates that Class Members are treated fairly relative to one another.

| Employee ID | Overtime + Hours Worked + Wage Parity Damages[13] | Projected Settlement Allocation | Difference |
|---|---|---|---|
| 126039 | $0 (OT) + $262.30 (Parity) + $0 (Hours Worked) = $262.30 | $20.71 | -$241.59 |
| 120192 | $0 (OT) + $0 (Parity) + $632.66 (Hours Worked) = $632.66 | $141.40 | -$491.26 |
| 45248 | $0 (OT) + $0 (Parity) + $2.67 (Hours Worked) = $2.67 | $3.67 | $1.00 |
| 125944 | $0 (OT) + $0 (Parity) + $2.20 (Hours Worked) = $2.20 | $11.02 | $8.82 |
| 129041 | $0 (OT) + $0 (Parity) + $46.80 (Hours Worked) = $46.80 | $150.58 | $103.78 |
| 128826 | $0 (OT) + $0 (Parity) + $241.26 (Hours Worked) = $241.26 | $53.26 | -$188.00 |
| 43661 | $151.22 (OT) + $17.67 (Parity) + $389.10 (Hours Worked) = $557.99 | $197.00 | -$360.99 |
| 123103 | $0 (OT) + $0 (Parity) + $0 (Hours Worked) = $0.00 | $5.51 | $5.51 |
| 40709 | $0 (OT) + $0 (Parity) + $0 (Hours Worked) = $0.00 | $4.14 | $4.14 |
| 42205 | $0 (OT) + $0 (Parity) + $248.96 (Hours Worked) = $248.96 | $130.41 | -$118.55 |
| 126491 | $0 (OT) + $0 (Parity) + $201.72 (Hours Worked) = $201.72 | $9.18 | -$192.54 |
| 125705 | $0 (OT) + $84.22 (Parity) + $423.42 (Hours Worked) = $507.63 | $202.00 | -$305.63 |
| 121434 | $0 (OT) + $425.19 (Parity) + $12.50 (Hours Worked) = $437.69 | $12.85 | -$424.84 |

[13] On a classwide basis these three claims were 94.17% of Plaintiff's $12,000,000 damages model. Wittels Decl. ¶ 41. The remaining 5.83% of Plaintiff's damages model is attributable to Class Members' unpaid travel time claim. Id. Following the Court's April 11, 2019 direction that the parties redouble their settlement efforts, both Plaintiff and Defendant separately performed random samples of episodes of care where travel time could have occurred, calculated the potential uncompensated travel time for each episode of case, and projected those calculations on a class-wide basis. Id. Because the parties' travel time projections were less than 10% apart, the parties agreed to use Plaintiff's higher $700,000 valuation of this claim for mediation and settlement purposes. Id. Considering that the class-wide damages for this claim are based on a random sample, there is no methodologically sound way to incorporate these damages into the analysis in this table, which is also based on a random sample. Id. Accordingly, travel time damages for each of the 31 Class Members were not included in the overtime + hours worked + wage parity section of the above chart.

| | | | |
|---|---|---|---|
| 131083 | $0 (OT) + $0 (Parity) + $23.62 (Hours Worked) = $23.62 | $93.66 | $70.04 |
| 41168 | $0 (OT) + $0 (Parity) + $0 (Hours Worked) = $0.00 | $43.47 | $43.47 |
| 124522 | $0 (OT) + $211.41 (Parity) + $25.85 (Hours Worked) = $237.26 | $22.04 | -$215.22 |
| 123655 | $0 (OT) + $138.01 (Parity) + $37.36 (Hours Worked) = $175.37 | $43.50 | -$131.87 |
| 41529 | $8920.23 (OT) + $679.00 (Parity) + $653.50 (Hours Worked) = $10,252.53 | $8,522.91 | -$1,729.62 |
| 44655 | $0 (OT) + $14.39 (Parity) + $5.00 (Hours Worked) = $19.39 | $8.28 | -$11.11 |
| 129864 | $0 (OT) + $0 (Parity) + $146.25 (Hours Worked) = $146.25 | $112.02 | -$34.23 |
| 42421 | $0 (OT) + $0 (Parity) + $9.83 (Hours Worked) = $9.83 | $71.95 | $62.12 |
| 43577 | $0 (OT) + $8.18 (Parity) + $0 (Hours Worked) = $8.18 | $53.59 | $45.41 |
| 120671 | $0 (OT) + $60.00 (Parity) + $4.25 (Hours Worked) = $64.25 | $7.35 | -$56.90 |
| 124255 | $0 (OT) + $50.76 (Parity) + $87.91 (Hours Worked) = $138.67 | $159.77 | $21.10 |
| 123385 | $0 (OT) + $171.03 (Parity) + $342.52 (Hours Worked) = $513.55 | $104.23 | -$409.32 |
| 42365 | $0 (OT) + $0 (Parity) + $68.08 (Hours Worked) = $68.08 | $2.04 | -$66.04 |
| 44444 | $0 (OT) + $289.41 (Parity) + $52.18 (Hours Worked) = $341.59 | $65.40 | -$276.19 |
| 128546 | $0 (OT) + $0 (Parity) + $76.05 (Hours Worked) = $76.05 | $62.44 | -$13.61 |
| 125475 | $0 (OT) + $19.69 (Parity) + $69.10 (Hours Worked) = $88.79 | $21.98 | -$66.89 |
| 128419 | $0 (OT) + $0 (Parity) + $46.62 (Hours Worked) = $46.62 | $66.08 | $19.46 |
| 123887 | $0 (OT) + $21.49 (Parity) + $0 (Hours Worked) = $21.49 | $3.67 | -$17.82 |

The average amount in potential damages the 31 Class Members included in the above chart are giving up in exchange for a settlement payment at this stage of the case is approximately $160, a fair exchange for the uncertainties of litigation.[14]

---

[14] Class Counsel's review of the payroll data underlying these Class Members' potential damages at trial reveals that most of the divergence between projected damages and projected settlement allocation is

*Footnote continued on next page.*

Further, all Class Members will be bound by the same release.  Settlement Agreement §

4.10(A).  This release does not affect the apportionment of relief among class members,

demonstrating equity.  In re Payment Card, 330 F.R.D. at 47.

     **G.**    **The Remaining Grinnell Factors Demonstrate That the Settlement Is Fair,**
               **Reasonable, and Adequate**

     1.  The Reaction of the Class (Grinnell Factor 2)

Notice of the settlement and its details has not yet been issued to the Class.  The Court

should therefore analyze this factor after the notice has been issued and the response of Class

Members can be assessed.  At this early stage, this factor is neutral.

     2.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case
         Responsibly (Grinnell Factor 3)

Although preparing this case through trial would likely require many hundreds (if not

thousands) of hours of additional discovery for both sides, the parties have completed more than

enough discovery to recommend settlement.  The pertinent question raised by this factor is

"whether counsel had an adequate appreciation of the merits of the case before negotiating."

Spagnuoli, 2018 WL 7413304, at *4 (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d

516, 537 (3d Cir. 2004)).  "The pretrial negotiations and discovery must be sufficiently

adversarial that they are not designed to justify a settlement . . . [but are] an aggressive effort to

ferret out facts helpful to the prosecution of the suit."  Id. (quoting In re Austrian & German

Bank Holocaust Litig., 80 F. Supp. 2d at 176).

---

attributable to concentrated wage parity damages over a relatively short period, which damages are muted
by the parties' reasonable decision to allocate wage parity damages based on the number of weeks a Class
Member worked during the Class Period.

The discovery taken here easily meets this standard. Class Counsel undertook in-depth pre-litigation investigation, and the parties fully briefed Defendant's motion to dismiss and Plaintiff's motion for conditional FLSA collective action certification. Wittels Decl. ¶¶ 17–22. Defendant then produced payroll data for approximately 12,000 Class Members and Plaintiff worked closely with her expert in analyzing hundreds of thousands of lines of payroll data to assess the scope of Defendant's alleged wage and payroll violations. Id. ¶ 22. The parties also undertook significant pre- and post-lawsuit legal research and analysis concerning Plaintiff's claims. Id. ¶¶ 16–26. As a result of this and Class Counsel's participation in four vigorous settlement discussions conducted by Your Honor and two lengthy mediation overseen by an experienced class action mediator, Class Counsel was able to evaluate the strengths and weaknesses of Class Members' claims against Plaintiff's $12,000,000 damages model.

Based on these circumstances, the parties were well-equipped to make the hard-fought compromises necessary to resolve a litigation of this size. Moukengeshcaie, 2019 WL 5204809, at *8 (approving settlement because the parties "have adequately evaluated the merits of the case, and participated in an all-day mediation."); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to Defendant's time and pay practices and where counsel's negotiations had "been in no way collusive").

### 3. Defendant Likely Could Not Withstand a Greater Judgment (Grinnell Factor 7)

As the Court is well aware, the parties negotiated heavily over the settlement amount and the timing of Defendant's obligation to fund the settlement, taking into account Defendant's ability to pay a settlement that would both compensate Class Members and allow the agency to remain solvent. Wittels Decl. ¶ 38. Moreover, as the Court is aware from the ongoing involvement of defense counsel for Preferred in a separate ERISA and wage parity law class

42

action (<u>Gonzalez de Fuente et al. v. Preferred Home Care of New York LLC et al.</u>, No. 18 CV 6749 (E.D.N.Y.)) the company has limited resources to fight litigation on multiple fronts.  Thus, settlement now, before further defense costs are incurred in this matter, will help ensure Class Members receive settlement payments without the heightened risk of unavailability of funds to satisfy a judgment sometime in the future.

This factor therefore weighs strongly in favor of the Court's approval of the settlement. <u>Chambery v. Tuxedo Junction Inc.</u>, No. 12 CV 06539, 2014 WL 3725157, at *7 (W.D.N.Y. July 25, 2014) (settlement strongly favored where defendant's finances played a large role in reaching settlement and defendant needed to borrow to satisfy settlement payment).  Further, even if Defendant could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." <u>Hall</u>, 2016 WL 1555128, at *8 (quoting <u>In re Austrian & German Bank Holocaust Litig</u>, 80 F. Supp. 2d at 178 n. 9);  <u>Immortal Rise, Inc.</u>, 306 F.R.D. at 101 (same).

4.   The Settlement Amount Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" <u>*Bodon v. Domino's Pizza, LLC*</u>, No. 09 CV 2941, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) (quoting <u>In re Austrian & German Bank Holocaust Litig</u>, 80 F. Supp. 2d at 178).  "[T]he question . . . is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces." <u>Id.</u>  "There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 455 n. 2 (2d Cir. 1974); <u>see also</u> <u>Moukengeshcaie</u>, 2019 WL 5204809, at *9) ("It is well-settled law that

a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.") (quoting Johnson v. Brennan, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sep. 16, 2011)). Here, Defendant has agreed to settle this case for a substantial amount: $6,500,000, plus non-monetary reforms valued at an additional $6,000,000. Even if the Court were to only consider the $6,500,000 monetary relief, this sum is more than 50% of the $12,000,000 in damages Plaintiff used as the basis for her settlement negotiations.

This case presents significant risks that strongly favor compromise. Given the attendant risks of litigation, the settlement provides substantial value to each Class Member. Every Class Member will receive a payment correlated to their potential realistic recovery at trial and Defendant has reformed its pay practices. Weighing the benefits of the settlement against the risks associated with proceeding with litigation, the settlement is reasonable.

\*       \*       \*

In sum, the Rule 23(e)(2) and Grinnell factors weigh in favor of preliminary approval of the settlement. Because the settlement, on its face, is "fair, adequate, and reasonable, and not the product of collusion," Frank v. Eastman Kodak Co., 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (quoting Joel A. v. Giuliani, 218 F.3d 132, 138–39 (2d Cir. 2000)), the Court should grant preliminary approval.

## V.   THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED

Plaintiff seeks to certify the following class under Federal Rule of Civil Procedure 23(e):

All individuals who have been employed by Defendant as Home Health Care Attendants, which term shall include, but not be limited to, hourly Home Care Aides, Home Health Aides, Home Health Attendants, Home Attendants, Personal Care Aides, Personal Care Assistants, Personal Assistants Unskilled, Personal Assistants performing consumer directed personal assistance (CDPAPs), Live-in Home Health Care Attendants, private pay Home Health Care Attendants, and all others providing home care services, at any time from September 29, 2011 through November 6, 2020.

44

As discussed below, the Rule 23 Class meets the requirements for class certification for settlement purposes, and Preferred does not oppose provisional certification of the Rule 23 Class. Settlement Agreement § 1.24; see also Newberg § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

"Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing." Puglisi v. TD Bank, N.A., No. 13 CV 637, 2015 WL 4608655, at *2 (E.D.N.Y. July 30, 2015) (collecting cases).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Plaintiff requests certification of a Rule 23(b)(3) damages class and thus must satisfy Rule 23(b)(3)'s requirements. Rule 23(a) requires that:

    (1)    the class is so numerous that joinder of all members is impracticable;

    (2)    there are questions of law or fact common to the class;

    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires courts to find that:

> [Q]uestions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. Elkind v. Revlon Consumer Prod. Corp., No. 14 CV 2484, 2017 WL 9480894, at *6 (E.D.N.Y. Mar. 9, 2017) (quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.   Numerosity

"[N]umerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiff easily satisfies this requirement because there are approximately 19,000 Class Members. Wittels Decl. ¶ 22. In addition, "sheer size alone is not the only factor to consider when analyzing numerosity . . . and a finding of numerosity is supported where, as here, the potential class members are of limited financial means, or may fear retaliation by their employer." Spencer v. No Parking Today, Inc., No. 12 CV 6323, 2013 WL 1040052, at *13 (S.D.N.Y. Mar. 15, 2013) (collecting cases); see also Immortal Rise, Inc., 306 F.R.D. at 97 (class is sufficiently numerous such that "joinder of all members is impracticable" at 150 putative members).

### B.   Commonality

The Rule 23 Class also satisfies the commonality requirement. The commonality requirement is met "where there are questions of law or fact common to the class." Elkind, 2017 WL 9480894 at *8. "[T]here need only be a single issue common to all members of the class, as the critical inquiry is whether the common questions lay at the core of the cause of action alleged." Karic v. Major Automotive Cos., Inc., No. 09 CV 5708, 2016 WL 1745037, at *5 (E.D.N.Y. Apr. 27, 2016) (internal quotations omitted); see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) ("Their claims must depend upon a common contention—for example, the assertion of [unlawful conduct] on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which

46

means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

This case involves numerous common issues and courts in this District routinely find commonality when presented with the same common questions as those at issue here. <u>See</u> <u>Cazares v. AVA Restaurant Corp.</u>, No. 15 CV 0477, 2017 WL 1229727, at *4 (E.D.N.Y. Mar. 31, 2017) ("In wage cases the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices."); <u>Moreira v.</u> <u>Sherwood Landscaping Inc.</u>, No. 13 CV 2640, 2015 WL 1527731, at *11 (E.D.N.Y. Mar. 31, 2015) ("claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification.") (internal citations and quotations omitted); <u>Omar v. 1 Front St. Grimaldi,</u> <u>Inc.</u>, No. 16 CV 5824, 2019 WL 1322614, at *10 (E.D.N.Y. Jan. 8, 2019) (commonality satisfied where plaintiff and class members "bring identical claims" for, <u>inter alia</u>, alleged unpaid overtime and alleged failure to provide wage notices).

**C.     Typicality**

Rule 23 requires that the claims of the representative party be typical of the claims of the class. This criterion "requires that plaintiffs' claims be typical of the claims of the class." <u>Karic</u>, 2015 WL 9433847, at *5. "Typicality has been found when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." <u>Id.</u> (internal quotations omitted).

"Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." <u>Frank</u>, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." <u>Elkind</u>, 2017 WL

47

9480894, at *9; see also  Immortal Rise, Inc., 306 F.R.D. at 98  ("all class members allege that

they are owed back pay for defendants' failure to pay required minimum and overtime wages.

The claims alleged by the named plaintiffs in this action . . . are sufficiently similar to other class

members' claims to satisfy this requirement.").

     Notably, the typicality requirement is "not highly demanding."  Willix v. Healthfirst, Inc.,

No. 07 CV 1143, 2009 WL 6490087, at *3 (E.D.N.Y. Dec. 3, 2009) (citation omitted).  Like

commonality, it is satisfied when "each class member's claim arises from the same course of

events and each class member makes similar legal arguments to prove the defendant's liability."

Lopez v. Setauket Car Wash & Detail Ctr., 314 F.R.D. 26, 29 (E.D.N.Y. 2016) (citation

omitted).  And as with commonality, typicality is not defeated by "minor variations in the fact

patterns underlying individual claims," Robidoux v. Celani, 987 F.2d 931, 936–37 (2d Cir.

1993), as long as the wrong is alleged to have occurred in the same general fashion.  Typicality

under Rule 23(a)(3) should also "be determined with reference to the company's actions, not

with respect to particularized defenses it might have against certain class members."  Wagner v.

NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996).

     Here, typicality is easily met because all Class Members, including Plaintiff, "were

employed by the defendant[] and allegedly were subjected to the same allegedly unlawful

employment policies and practices."  Cazares, 2017 WL 1229727, at *6.  In fact, this case is

virtually indistinguishable from the many wage and hour class actions in this Circuit where

courts have found the typicality requirement satisfied.  See., e.g., Omar, 2019 WL 1322614, at

*10 (typicality met where plaintiff's claims "all stem from defendants' alleged uniformly

wrongful conduct"); Vargas v. Howard, 324 F.R.D. 319, 326 (S.D.N.Y. 2018) (typicality met

where "representatives' claims against Defendants, like the claims of the absent class members,

arise out Defendants' policies and course of conduct regarding the ways in which [class members] were paid for their labor"); Lopez, 314 F.R.D. at 29 ("[S]ince the claims at issue here stem from the common question of whether Defendants' policy violated the law, the claims and defenses of the representative Plaintiffs are typical of those of the class").

### D.   Adequacy of the Named Plaintiff

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" Toure v. Cent. Parking Sys., No. 05 CV 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sep. 28, 2007) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006)). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 165 (S.D.N.Y. 2014) (quoting Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.)) (internal quotation marks omitted); Mendez v. MCSS Rest. Corp., No. 16 CV 2746, 2019 WL 2504613, at *10 (E.D.N.Y. June 17, 2019) (same). "In order to meet the adequacy requirement, the party seeking class certification must establish two elements: (1) the proposed class counsel is 'qualified, experienced, and generally able to conduct the litigation,' and (2) the representative plaintiffs' interests are not antagonistic to those of the proposed class. Elkind, 2017 WL 9480894, at *10 (quoting Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 352 (E.D.N.Y. 2006)).

Plaintiff meets the adequacy requirement because there is no evidence that she has interests that are antagonistic to or at odds with those of the Class Members and she seeks to maximize the Class' recovery.   Mendez, 2019 WL 2504613, at *10 (adequacy satisfied where plaintiffs "allege a common practice or policy of unlawful labor practices [and] their claims will

49

require similar legal and factual proof to those of absent class members"); see also Immortal Rise, Inc., 306 F.R.D. at 98 ("Only a fundamental conflict of interest between a representative and the class or subclass will defeat the adequacy of representation requirement").  Moreover, Plaintiff has contributed significant time and effort to the case by participating in numerous in-person meetings and telephone conferences with Class Counsel, providing Class Counsel with detailed factual information regarding the home care workers' job duties, reviewing and discussing the pleadings, discovery, demands, and memoranda of law.  Wittels Decl. ¶ 37. Plaintiff also assisted with preliminary negotiations with Defendant's counsel, and supported Class Counsel during two mediations and various follow-up calls.  Id.  In sum, Plaintiff has been an excellent class representative.

Class Counsel also meets the adequacy requirement of Rule 23(a)(4).  As set forth on pp. 22–23 above, Class Counsel has proven themselves to be zealous and able advocates for the Class.  Id.

### E.    Certification is Proper Under Rule 23(b)

Plaintiff requests certification of a Rule 23(b)(3) damages class for settlement purposes. Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  That Plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied.  Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"); see also Puglisi v. TD Bank, N.A., No. 13 CV 637, 2015 WL 4608655, at *3

50

(E.D.N.Y. July 30, 2015) (predominance satisfied by plaintiffs' "common factual allegations and common legal theory—that Defendant violated federal and state wage and hour laws by . . . failing to pay them for premium overtime hours).

    1.  <u>Common Questions Predominate</u>

To establish predominance, Plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." <u>Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.</u>, 502 F.3d 91, 108 (2d Cir. 2007); <u>see also</u> <u>Elkind</u>, 2017 WL 9480894, at *14 ("The predominance element of Rule 23(b)(3) requires a showing that common questions predominate over any questions affecting only individual members.") (quotations omitted).

The essential predominance inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." <u>In re Visa Check/Master Money Antitrust Litig.</u>, 280 F.3d 124, 139 (2d Cir. 2001) (<u>superseded by statute</u>).  Simply because a defense "may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones." <u>Id.</u> at 138.  Where class members' claims are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.   <u>Immortal Rise, Inc.</u>, 306 F.R.D. at 98–99 (internal citations and quotations omitted).

District courts "have routinely found that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices." <u>Murphy v. LaJaunie</u>, No. 13 CV 6503, 2015 WL 4528140, at *7 (S.D.N.Y. July 24, 2015) (collecting cases).  In fact, "[n]umerous courts have found that wage claims are especially suited to class litigation—perhaps **the most perfect questions for class treatment**—despite differences in hours worked, wages paid, and wages

due." <u>Mendez</u>, 2019 WL 2504613, at *11 (emphases added) (internal citation and quotations omitted) (collecting cases).

Here, Class Members' common factual allegations and common legal theory—that Defendant allegedly violated state wage and hour laws—predominate over any factual or legal variations among Class Members.  Thus, for all Class Members, the issue of whether they were the victims of alleged unlawful wage and hour practices will predominate over any individualized inquiries "because [Defendant] will likely be liable to all parties or to none." <u>Cazares</u>, 2017 WL 1229727, at *8.  A finding of predominance in this case is therefore squarely in line with the majority of cases in this District.  <u>See id.</u> (predominance met in class action challenging employment policies of, <u>inter alia</u>, failure to pay overtime premiums and provide accurate wage notices and statements); <u>Mendez</u>, 2019 WL 2504613, at *11–12 (predominance met with respect to liability and damages in class action alleging systematic underpayment due to timekeeping errors, policy of undercompensating overtime, and failure to provide accurate wage notices and statements); <u>Omar v. 1 Front St. Grimaldi, Inc.</u>, No. 16 CV 5824, 2019 WL 1322614, at *11 (E.D.N.Y. Jan. 8, 2019) (predominance met in overtime class action where "plaintiffs allege that their claims are all based on defendants' alleged uniform policies, which will be established through generalized proof") (internal quotations omitted); <u>Lopez v. Setauket Car Wash & Detail Ctr.</u>, 314 F.R.D. 26, 30 (E.D.N.Y. 2016) (predominance satisfied because common question regarding whether defendants properly calculated overtime wages owed "predominates over the individualized question of damages due each [p]laintiff"); <u>Rosario v. Valentine Ave. Disc. Store, Co.</u>, No. 10 CV 5255, 2013 WL 2395288, at *9 (E.D.N.Y. May 31, 2013) (Bloom, M.J.), report and recommendation adopted <u>sub nom. Rosario v. Valentine Ave. Disc. Store, Co.</u>, No. 10 CV 5255, 2013 WL 4647494 (E.D.N.Y. Aug. 29, 2013) (predominance

met where "[p]laintiff contends that defendants had a uniform practice of paying employees below minimum wage, and of not paying overtime wages").

### 2. A Class Action Is a Superior Mechanism for Adjudicating Claims

The second part of the Rule 23(b)(3) analysis entails a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." Green v. Wolf Corp., 406 F.2d 291, 301 (2d Cir. 1968); Amchem Prods., Inc., 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); see also Elkind, 2017 WL 9480894 at *16 ("Allowing this case to proceed as a class action will . . . eliminate the potential for repetitious litigation and inconsistent adjudications.").  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether the case would be manageable as a class action at trial; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.   Fed. R. Civ. P. 23(b)(3).[15]

Here, Plaintiff and Class Members have limited financial resources with which to prosecute individual actions, and while Plaintiff is unaware of any pending individual lawsuits

---

[15] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  See Amchem, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 183 (W.D.N.Y. 2005) ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  In re Zyprexa Prod. Liab. Litig., 253 F.R.D. 69, 199 (E.D.N.Y. 2008) (internal citations omitted).

filed by Class Members arising from the same allegations, there is certainly the threat of

financial hardship or even insolvency from the separate proposed class action proceeding against

Defendant.  Wittels Decl. ¶ 58.  The proposed settlement here is an optimal result for current and

former employees who in these uncertain times will undoubtedly benefit greatly from their

proposed settlement payments.  Indeed, it is also "extremely unlikely" that a meaningful number

of proposed Class Members could have or would bring separate actions given that they are

"almost exclusively low-wage workers with limited resources and virtually no command of the

English language or familiarity with the legal system." Iglesias-Mendoza v. La Belle Farm, Inc.,

239 F.R.D. 363, 373 (S.D.N.Y. 2007) (finding superiority requirement "easily satisfied");

Moreira v. Sherwood Landscaping Inc., No. 13 CV 2640, 2015 WL 1527731, at *15 (E.D.N.Y.

Mar. 31, 2015) (where "many potential class members are foreign-born, have limited reading and

writing skills, and may fear reprisal from Defendants . . .  a class action . . . is likely the only

device by which many of the proposed class members would obtain relief.") (internal citations

and quotations omitted).

      Further, "[c]ourts routinely hold that a class action is superior where, as here, potential

class members are aggrieved by the same policies, the damages suffered are small relative to the

expense and burden of individual litigation, and some potential class members are currently

employed by the defendants." Cazares, 2017 WL 1229727, at *8 (citing cases).  Adjudicating

separate actions all arising from the same operative facts also poses a significant burden on the

courts.  To date, no difficulties have occurred in managing this action and this District is an

appropriate forum for adjudicating this case as many of the Class Members performed work for

Defendant in this District.  Additionally, the Court has already conditionally certified Plaintiff's

claims under the FLSA (ECF No. 66) and there is "overwhelming precedent in the Second

Circuit supporting certification of simultaneous NYLL class actions and FLSA collective actions." <u>Damassia v. Duane Reade, Inc.</u>, 250 F.R.D. 152, 164 (S.D.N.Y. 2008).

Employing the class action device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources, prevent inconsistent adjudications of similar issues and claims, and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings.  <u>See</u> <u>Elkind</u>, 2017 WL 9480894, at *16 ("permitting the instant action to proceed as a class action will consolidate what could potentially result in tens of thousands of separate cases"); <u>Karic v. Major Automotive Companies, Inc.</u>, No. 09 CV 5708, 2016 WL 1745037, at *12 (E.D.N.Y. Apr. 27, 2016) (approving class where plaintiffs claimed that "proceeding as a class action will achieve economies of scale for the Class Members and preserve judicial resources by consolidating common issues of fact and law, with the result of preserving public confidence in the system by avoiding inconsistent adjudications," and noting that "there is no indication that the Class Members desire to control their own cases"). A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the claims of Defendant's home care workers.

## VI.    THE FLSA COLLECTIVE REQUESTED BY PLAINTIFF SHOULD BE CONDITIONALLY CERTIFIED

Plaintiff seeks to certify the following class under Section 216(b) of the FLSA (the "FLSA Collective"):

> All individuals who have been employed by Defendant as Home Health Care Attendants which term shall include, but not be limited to, hourly Home Care Aides, Home Health Aides, Home Health Attendants, Home Attendants, Personal Care Aides, Personal Care Assistants, Personal Assistants Unskilled, Personal Assistants performing consumer directed personal assistance (CDPAPs), Live-in Home Health Care Attendants, private pay Home Health Care Attendants, and all others providing home care services, at any time since September 29, 2014 through November 6, 2020.

55

As discussed below, the FLSA Collective meets all of the certification requirements for class certification for settlement purposes, and Defendant does not oppose provisional certification of the above FLSA Collective for settlement purposes only.  Settlement Agreement § 1.13.  Section 216(b) of the FLSA provides that plaintiffs must be "similarly situated" in order to pursue an FLSA collective action.  See 29 U.S.C. § 216(b).  On March 20, 2019, the Court entered the parties' stipulation that Plaintiff is similarly situated to Defendant's other Home Health Care Attendants.  ECF No. 66.  At that time, however, the issue of "who is similarly situated," was left open "to be negotiated by the parties with the assistance of the Court if such assistance is necessary."  Id.  The parties have now agreed on the definition of the FLSA Collective and thus there are no further impediments to notifying potential Collective Members of the settlement and their right to opt into the settlement.  See Settlement Agreement § 1.13 (defining FLSA collective).

Under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015) an FLSA settlement "should be approved if the proposed agreement 'reflects a reasonable compromise over contested issues.'"  Santiago v. Church Ave. Express Inc., No. 18 CV 1594, 2020 WL 597320, at *2 (E.D.N.Y. Feb. 7, 2020) (Bloom, M.J.) (quoting Kochilas v. Nat. Merchant Servs., Inc., No. 14 CV 311, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015)).  "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  Santiago, 2020 WL 597320, at *2 (quoting Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)).

"In determining whether a proposed FLSA settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors:

(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable

the parties to avoid anticipated burdens and expenses in establishing their claims and defenses;

(3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement

agreement is the product of arm's length bargaining between experienced counsel; and (5) the

possibility of fraud or collusion." Santiago, 2020 WL 597320, at *3 (quoting Wolinsky v.

Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)) (internal alterations omitted).

Critically, "[t]he standard for approval of an FLSA settlement is lower than for a Rule 23

settlement because an FLSA settlement does not implicate the same due process concerns as

does a Rule 23 settlement." Kochilas, 2015 WL 5821631, at *7 (internal citations omitted); see

also Rasulev v. Good Care Agency, Inc., No. 16 CV 1993, 2017 WL 11507653, at *8 (E.D.N.Y.

Apr. 19, 2017) (same); Surdu v. Madison Glob., LLC, No. 15 CV 6567, 2018 WL 147379, at *6

(S.D.N.Y. Mar. 23, 2018) ("[A]n FLSA settlement is examined with less scrutiny than a class

action settlement" and "settlement of a collective action does not implicate the same due process

concerns as the settlement of a class action" ).  This is because FLSA settlements typically do not

bind the individuals who fail to obtain a settlement payment.   The settlement here is precisely

one such settlement.

Further, even after Cheeks several courts in this District have held that "[b]ecause the

standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, satisfaction

of the Grinnell factor analysis satisfies the standards of approval of an FLSA settlement."

Spagnuoli v. Louie's Seafood Rest., LLC, No. 13 CV 4907, 2018 WL 7413304, at *5 (E.D.N.Y.

Sep. 27, 2018) (internal quotations omitted); Rasulev, 2017 WL 11507653, at *8  (same); Sierra

v. Spring Scaffolding LLC, No. 12 CV 05160, 2015 WL 10912856, at *4 (E.D.N.Y. Sep. 30,

2015) ("[S]atisfaction of the Grinnell factor analysis will, necessarily, satisfy the standards of

approval of the FLSA settlement."); <u>Ramos v. Nikodemo Operating Corp.</u>, No. 16 CV 1052, 2017 WL 11508016, at *5 (E.D.N.Y. Aug. 7, 2017) (same); <u>Surdu</u>, 2018 WL 147379, at *6 (same); <u>Hall v. ProSource Tech., LLC</u>, No. 14 CV 2502, 2016 WL 1555128, at *9 (E.D.N.Y. Apr. 11, 2016) (same).

Nevertheless, other courts in this District have determined that at the preliminary approval stage a full <u>Cheeks</u> and <u>Wolinsky</u> are "are integral components of the Rule 23(e) preliminary class approval" process. <u>Douglas v. Allied Universal Sec. Servs.</u>, 371 F. Supp. 3d 78, 82 (E.D.N.Y.) (collecting cases for the proposition that a preliminary approval ruling should include a <u>Cheeks</u> and <u>Wolinsky</u> analysis).

While there is no clear consensus among courts regarding the level of analysis needed for preliminary approval of hybrid Rule 23 and FLSA actions, this settlement easily hurdles <u>Cheeks</u> and <u>Wolinsky</u>. For example, Plaintiff's evidence of Class Members' range of possible recovery underscores that the parties have reached a reasonable compromise of contested FLSA claims. There are various methods to make such a showing. <u>See Douglas</u>, 371 F. Supp. 3d at 83–84 (collecting cases and observing "[t]here are various methods to proffer such facts: by indicating what was alleged in the Complaint or the evidence shown through discovery, among others."). Here, the cash portion of the settlement provides $6,500,000, plus non-monetary reforms valued at an additional $6,000,000. Even if the Court were to only consider the $6,500,000 in payments to Class Members, this sum is more than 50% of the $12,000,000 damages model Plaintiff used as the basis for her settlement negotiations. Such a recovery is well within the percentage recovery that Courts in this district have found to be sufficiently fair and reasonable. <u>See Siddiky v. Union Square Hosp. Grp., LLC</u>, No. 15 CV 9705, 2017 WL 2198158, at *6 (S.D.N.Y. May 17, 2017) (collecting FLSA cases approving settlements where

range of recovery for class members ranged from 13% to 25%); Larrea v. FPC Coffees Realty Co., No. 15 CV 1515, 2017 WL 1857246, at *2 (S.D.N.Y. May 5, 2017) (finding recovery of 43% of the anticipated maximum recovery was fair and reasonable).

Further, as detailed on pp. 39–40 above, the examples demonstrating 31 Class Members' recovery under the settlement compared to their realistic outcomes at trial show on average Class Members are giving up approximately $160 in exchange for foregoing the risks of litigating this case through trial and appeals.  This too is an acceptable metric for judging the range of possible recovery for the thousands Collective Members affected by this settlement.  Douglas, 371 F. Supp. 3d at 84 ("Using specific employees as exemplars could provide the information [regarding the range of possible recovery] to the Court if the collective is too numerous.").

Turning to the other Wolinsky factors,  that the settlement will enable the parties to avoid further protracted litigation and appeals is well documented on pp. 24–25; the seriousness of the litigation risks faced by both sides if this litigation were to continue is described on pp. 26–27; that the settlement is the product of arm's length bargaining between experienced counsel and is untainted with fraud or collusion is set forth on pp. 3–8.  In short, this settlement easily hurdles the criteria for preliminary Cheeks and Wolinsky review.

## VII.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(B).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  Fed. R. Civ. P. 23(g), Advisory Committee's note.

Wittels McInturff Palikovic and Hymowitz Law Group, PLLC meet the Rule 23(g) criteria.  Class Counsel has done substantial work identifying, investigating, pursuing, and settling Plaintiff's and Class Members' claims.  Wittels Decl. ¶¶ 9–35.  Additionally, Class Counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and the lawyers assigned to this matter are well-versed in wage and hour law, class action law and are well-qualified to represent the interests of the class.  Id. ¶ 3–8.  Accordingly, Wittels McInturff Palikovic and Hymowitz Law Group, PLLC should be appointed Class Counsel.

## VIII.  THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED

The parties respectfully request that the Court approve two notices, one for the Class Members set to receive less than $600 and one for the Class Members set to receive $600 or more (collectively the "Notice," attached as Wittels Decl. Ex. C).  The content of the Notice fully complies with due process, Federal Rule of Civil Procedure 23, and 29 U.S.C. § 216(b).  Pursuant to Rule 23(c)(2)(B), notice must provide:

> [T]he best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:
>
> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;

      (v)      that the court will exclude from the class any member who requests exclusion;

      (vi)    the time and manner for requesting exclusion; and

      (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Notice also satisfies the requirements of the FLSA. To serve the "broad remedial purpose" of the FLSA, courts can order notice to other potentially similarly situated individuals. See Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165 (1989). In Hoffmann-La Roche, the Supreme Court held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." 493 U.S. at 170. Courts are encouraged to become involved in the notice process early, to ensure "timely, accurate, and informative" notice and to help facilitate the litigation moving forward. Id. at 171–72.

Here, the Notice satisfies each of these requirements and adequately apprises Class Members of their rights under the settlement. The Notice will be delivered in an envelope that is based on the Federal Judicial Center's sample class action notice envelope. See Wittels Decl. Ex. D (notice envelope).[16] As noted in the Federal Judicial Center's "Judges' Class Action Notice and Claims Process Checklist," "[a] good notice starts with the envelope design, examples of which are at www.fjc.gov."[17]

As for the Notice itself, it is based on the Federal Judicial Center's Illustrative Forms of Class Action Notices[18] and informs its recipients about how Class Members can exclude themselves from the settlement, how the members of the Rule 23 Class and the FLSA Collective

---

[16] Available at: https://www.fjc.gov/sites/default/files/2015/ClaAct07.pdf

[17] Available at: https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

[18] Available at: https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction.

can object to the settlement, and the consequences of inaction.  The Notice also describes the material terms of the settlement, informs Class Members about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.  Courts in this District have approved class notices even when they provided only general information about a settlement.  See, e.g., Toure v. Amerigroup Corp., No. 10 CV 5391, 2012 WL 1432302, at *2 (E.D.N.Y. Aug. 6, 2012) ("class notice need only describe the terms of the settlement generally") (internal quotations omitted).  "Notice need not be perfect, but must be the best notice practicable under the circumstances." Moukengeshcaie v. Eltman, Eltman & Cooper, P.C., No. 14 CV 7539, 2019 WL 5204809, at *10 (E.D.N.Y. Oct. 15, 2019) (finding notice adequate where that notice "fairly apprises the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceeding).  The detailed information in the Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B) and the FLSA.

The parties' notice plan also satisfies Rule 23(c)(2)(B)'s requirement that the Court order "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

In accordance with the Settlement Agreement the parties propose to distribute the Notice by U.S. Mail, and their notice plan complies fully with due process and Fed. R. Civ. P. 23.  As discussed above, the parties have agreed to a detailed notice process that reflects all current best practices for class action notices and contains numerous quality control measures to ensure that the notice will reach as many Class Members as possible.  See pp. 16–17.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant Plaintiff's Motion and endorse the proposed Order.

Dated:  November 6, 2020
      Armonk, New York

Respectfully submitted,

 /s/ Steven L. Wittels
Steven L. Wittels (SW-8110)
J. Burkett McInturff (JM-4564)
Tiasha Palikovic (TP-5697)

**WITTELS MCINTURFF PALIKOVIC**
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile: (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com

*Lead Counsel for Plaintiff and the Class*

Daniel Hymowitz (DH-0936)
**HYMOWITZ LAW GROUP, PLLC**
1629 Sheepshead Bay Road
Brooklyn, NY 11235
Telephone: (718) 807-9900
Facsimile: (866) 521-6040
daniel@hymowitzlaw.com

Andrey Belenky (AB-1976)
**KHEYFITS BELENKY LLP**
Andrey Belenky
1140 AVENUE OF THE AMERICAS, 9TH FLOOR
NEW YORK, NY 10036
Telephone: (212) 203-5399
Facsimile:  (212) 203-6445
abelenky@kblit.com

*Co-Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the documents submitted in support of

Plaintiff's Motion for Preliminary Approval of Class Action Settlement, and Related Relief via ECF

this 6th day of November upon the following counsel of record:

W. Matthew Groh
NANESS, CHAIET & NANESS, LLC
375 North Broadway, Suite 202
Jericho, New York 11753
(516) 827-4300
matt@ncnlaw.com

*Attorney for Defendant*


    _____/s/  Steven L. Wittels_____
            Steven L. Wittels