Exhibit A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLA MEDVEDEVA, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. ASSISTCARE HOME HEALTH SERVICES LLC (d/b/a PREFERRED HOME CARE OF NEW YORK), Defendant. | Case No. 17-cv-5739-LB |

## FINAL AMENDED CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Final Amended Class Action Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiff (as hereinafter defined) and the class of individuals she seeks to represent (as hereinafter defined) and Defendant (as hereinafter defined) (together, "the Parties").

## RECITALS

WHEREAS, the Parties have agreed to the settlement of all claims encompassed by Plaintiff's Class and Collective Action Complaint, ECF No. 1 (the "Complaint");

WHEREAS, the purpose of this Agreement is to settle fully and finally all claims between Plaintiff and Defendant and any claims as amongst the Parties as of the date of this Agreement subject to court approval, including all claims asserted in the Litigation (as hereinafter defined);

WHEREAS, the Parties to this Agreement, after having (i) litigated Plaintiff's claims for three years; (ii) engaged in substantial discovery, including written discovery, the production and analysis of hundreds of thousands of payroll, time and other electronic data and documents and numerous interviews with Plaintiff, Class Members, and potential witnesses; (iii) prepared and exchanged, in connection with the three mediations and settlement conferences described below, numerous comprehensive reports on liability and damages; (iv) conducted extensive motion practice, including multiple court hearings; (v) undertaken preparations for proceedings on conditional and class certification, summary judgment, trial, and appeals; and (vii) engaged in three arms-length mediations (two with the assistance of a noted third-party mediator and one with the assistance of an experienced Federal Magistrate Judge) over the course of more than eleven months, have now reached an agreement providing for a resolution of Plaintiffs' and the Class Members' claims;

WHEREAS, Plaintiff filed her Class and Collective Action Complaint on September 29, 2017;

WHEREAS, during the spring and summer of 2018, the Parties briefed Plaintiff's FLSA conditional certification motion and Defendant's motion to dismiss.

WHEREAS, during the spring and summer of 2018, the Parties agreed to participate in a mediation regarding the possibility of a voluntary resolution of the claims asserted in the Litigation and agreed to toll the limitations period on the claims at issue in the Litigation, and entered into two confidentiality agreements to facilitate the exchange of information and payroll data;

WHEREAS, during summer and remainder of 2018, the Parties engaged in extensive pre-mediation discovery, including, but not limited to, preparing numerous comprehensive reports on liability and damages issues including analyzing with the assistance of technical and subject matter experts hundreds of thousands of confidential time and payroll records of the more than 12,000 Class Members (as hereinafter defined) over a seven year period;

WHEREAS, on January 30, 2019, the Parties participated in an 8+-hour mediation at the offices of Martin F. Scheinman, Esq., a mediator experienced in wage and hour class and collective actions.  At the conclusion of the mediation session, the parties were unable to reach agreement on the terms of a settlement;

WHEREAS, the mediator recommended that the parties exchange further confidential pre-mediation discovery, and such exchanges were made and analyzed by Plaintiff's counsel and their technical and subject matter experts in the spring of 2019;

WHEREAS, on March 30, 2019, Defendants consented to the conditional certification of an FLSA collective, and on May 23, 2019 the Parties held a settlement conference with the Honorable Magistrate Judge Lois Bloom;

WHEREAS, following the May 23, 2019 settlement conference with Judge Bloom the Parties scheduled a third mediation session with Mr. Scheinman, and in advance of the mediation engaged in additional research and analysis and prepared lengthy supplemental pre-mediation submissions;

WHEREAS, following a full day mediation with Mr. Scheinman on July 2, 2019, and conferences with Mr. Scheinman on July 17 and Judge Bloom on July 11 and July 22, 2019 the Parties announced that they had reached a tentative settlement in this matter;

WHEREAS, in the summer and fall of 2019 the parties engaged in extensive and protracted negotiations regarding the material settlement terms, including through multiple rounds of negotiations among counsel and numerous interventions by Mr. Scheinman, including mediation conferences with Mr. Scheinman on August 18 and 21, and September 18, 20, 24, 26, 27, October 2, 7, 22, 28, 30, 31, and November 7, 13, and 18;

WHEREAS, on November 12, 2019 the parties executed a memorandum of understanding setting forth the material settlement terms;

WHEREAS, the parties then spent the period from December 2019 to May 2020 negotiating the final settlement terms.  As with all prior settlement negotiations, these discussions

were vigorous and included comprehensive written correspondence and meet and confers among counsel on December 6, January 7, 14, 30, February 9, 17, 19, 20, 26, 28, March 2–6, 10–12, 26, 27, 30, April 3, 7, 8, 10, 13, 16, 17, 20, 24, and 26. The parties also attended a telephonic mediation/arbitration with Mr. Scheinman on March 6 to attempt to resolve certain remaining disputes. During this same period, the parties had multiple settlement status conferences with Judge Bloom, including on December 12, January 31, February 20, March 11, April 10, and April 20. In connection with these court conferences, on February 20, 2020 the parties consented to the jurisdiction of Judge Bloom for all further proceedings (ECF No. 81) and provided Judge Bloom with two draft settlement agreements and an exhaustively researched and comprehensively written report responding to issues the Court raised during the April 10 conference, ECF No. 84;

WHEREAS, on May 13 and 14 the parties' executed an earlier version of this Agreement and began negotiating a proposed notice of class action settlement, negotiating the design of the envelope containing the notice, negotiating a proposed preliminary approval order, and selecting a settlement administrator;

WHEREAS, the parties' negotiations regarding the notice, notice envelope, and proposed preliminary approval order were hard-fought and included multiple meet and confers and the exchange of draft documents in May and June of 2020, which required an extension of court deadlines, ECF No. 91;

WHEREAS, the parties' were unable to reach agreement on the proposed notice of class action settlement and submitted competing proposals to Judge Bloom, ECF No. 92;

WHEREAS, following Defendant's review and approval of the proposed preliminary approval order and Plaintiffs' preliminary approval memorandum, on June 26, 2020 Plaintiffs' filed her initial motion for preliminary approval of the class and collective action settlement and related relief, ECF No. 93–95;

WHERAS, on July 6, 2020 counsel for the Plaintiffs in *Gonzalez de Fuente et al. v. Preferred Home Care of New York, LLC, et al.*, No. 18-cv-6749-AMD-PK filed a motion to intervene to seek several revisions to the parties' settlement, which set off a flurry of tripartite discussions and lengthy negotiations, including comprehensive filings on July 17, 21, and 22 (ECF Nos. 113–17, followed by a two-hour telephonic conference before Judge Bloom on July 23;

WHEREAS, at the July 23 conference Judge Bloom ordered the parties' and counsel for the *Gonzalez* Plaintiffs to redouble their settlement efforts but ordered the litigation to resume on a parallel track, *see* July 27, 2020 Electronic Order;

WHEREAS, on July 31 following a status report from Defendant the Court stayed further proceedings and assisted the parties and the *Gonzalez* Plaintiffs at lengthy conferences on August 6 and 24, and September 10 and 22;

WHERAS, during this same period the parties and the *Gonzalez* Plaintiffs worked daily to reach agreement on the outstanding issues, including via written correspondence, the exchange of various draft documents, and conference calls, which resulted in the *Gonzalez* Plaintiffs withdrawing their motion to intervene on September 28, 2020, ECF No. 131;

WHEREAS, during this same period the parties began discussing and testing various proposals regarding their proposed allocation formula as well as additional proposals regarding

issues raised by Judge Bloom during the September 10 conference, which proposals included the extensive compilation and review of data on proposed and anticipated distributions to the members of the proposed Rule 23 Class; and

WEHEREAS, at conferences on October 6 and 8 Judge Bloom provided guidance on the parties' respective proposals for resolving their remaining differences and the parties reached compromises on all outstanding issues.

WHEREAS, Defendant denies that it violated or has violated on a prospective basis since commencement of the lawsuit any statute, law, regulation or rule of law, or is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any fault, wrongdoing, liability or damages, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Class Counsel has thoroughly analyzed and evaluated the merits of the claims made against Defendant in the Litigation, obtained and reviewed documents relating to Defendant's compensation policies, and analyzed voluminous payroll data, and based on their analysis and evaluation of a number of factors, recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in no recovery or may result in a recovery that is less favorable to Plaintiff and Class Members, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Class Members;

WHEREAS, the Parties understand, acknowledge, and agree that this Agreement constitutes the compromise of disputed claims and that it is their mutual desire and intention that Plaintiff and Class Members' claims be settled and dismissed, on the merits and with prejudice, subject to and according to the terms and conditions contained in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.   DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1   **Agreement**.  "Agreement" shall mean this Final Amended Class Action Settlement Agreement and Release.

1.2   **Bar Date.**  "Bar Date" means the date by which any Class Member must opt-out from the settlement, or object to the settlement.  The Bar Date shall be sixty (60) days after the initial mailing of the Notice by the Settlement Administrator.

1.3   **Class Counsel.**  "Class Counsel" shall mean Wittels McInturff Palikovic, and Hymowitz Law Group, PLLC.  For the purposes of providing any notices required under this Agreement, Class Counsel shall refer to Steven L. Wittels and J. Burkett McInturff of Wittels McInturff Palikovic.

1.4     **Class Members.** "Class Members" shall mean all FLSA Collective Members and all Rule 23 Class Members, as defined below.

1.5     **Court.** "Court" shall mean the United States District Court for the Eastern District of New York.

1.6     **Covered Period.** "Covered Period" shall mean the period from September 29, 2011 through the date the Plaintiff files the Preliminary Approval Motion.

1.7     **Defendant.** "Defendant" shall mean Assistcare Home Health Services LLC (d/b/a Preferred Home Care of New York and Preferred Home Care of New York LLC).

1.8     **Defendant's Counsel.** "Defendant's Counsel" shall mean Naness, Chaiet & Naness, LLC. For the purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to William Matthew Groh of Naness, Chaiet & Naness, LLC.

1.9     **Effective Date.** The "Effective Date" is the date on which this Agreement becomes effective, which shall mean thirty (30) days following the Court's Order Granting Final Approval of the settlement if no appeal is taken, or if an appeal is taken from the Court's Order Granting Final Approval of the settlement, ten (10) days following the date on which the Court enters a Final Order and Judgment after resolving any appeals, whichever is later.

1.10    **Escrow Account.** "Escrow Account" shall mean the qualified settlement fund established by the Defendant or the Settlement Administrator and the resulting interest-bearing accounts(s) controlled by the Settlement Administrator.

1.11    **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the motion for judgment and final approval.

1.12    **Final Order and Judgment:** "Final Order and Judgment" shall mean the final order and judgment issued by the Court as further set forth in Section 3.10.

1.13    **FLSA Collective; FLSA Collective Members.** "FLSA Collective" shall mean all individuals who have been employed by Defendant as Home Health Care Attendants which term shall include, but not be limited to, hourly Home Care Aides, Home Health Aides, Home Health Attendants, Home Attendants, Personal Care Aides, Personal Care Assistants, Personal Assistants Unskilled, Personal Assistants performing consumer directed personal assistance (CDPAPs), Live-in Home Health Care Attendants, private pay Home Health Care Attendants, and all others providing home care services, at any time since September 29, 2014 through the date Plaintiff files the Preliminary Approval Motion. "FLSA Collective Members" are individual members of the FLSA Collective.

1.14    **Individual Settlement Amount.** "Individual Settlement Amount" shall mean the amount payable to each Class Member pursuant to Section 4.1 of this Agreement.

1.15    **Litigation.** "Litigation" shall mean the claims represented in the Complaint alleging violations of the FLSA, New York Labor Law (NYLL),wage and hour laws of New York, and Public Health Law § 3614-c (commonly known as the "Wage Parity Law") as well as breach of contract, third-party beneficiary, and unjust enrichment claims and any other

claims based on the facts set forth in the Complaint, in law or equity, and captioned *Medvedeva v. Assistcare Home Health Services LLC*, No. 17-cv-5739-LB (E.D.N.Y).

1.16    **Net Settlement Fund**.  "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deductions for the settlement administration fees and costs as described in Section 4.1, Court-approved service award to Plaintiff as described in Section 4.7, Court-approved attorneys' fees and costs as described in Section 4.6, any fees associated with investing and liquidating the Settlement Fund as described in Section 4.1, and any taxes incurred directly or indirectly as a result of investing the Settlement Fund, and a $150,000 Reserve Fund to cover errors and omissions in the calculation of Class Members' individual shares of the settlement.

1.17    **Notice.**  "Notice" shall mean the notices of settlement of the class/collective action lawsuit and fairness hearing negotiated by the Parties and approved by the Court.

1.18    **Order Granting Final Approval.**  "Order Granting Final Approval" shall mean the final Order entered by the Court after the Fairness Hearing, consistent with this Agreement.

1.19    **Order Granting Preliminary Approval.**  "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to Class Members, and the time period for opt-outs and objections, consistent with this Agreement.

1.20    **Parties.**  "Parties" shall mean Plaintiff and Defendant.

1.21    **Plaintiff.**  "Plaintiff" shall refer to Plaintiff Alla Medvedeva and shall also include any and all representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individual, as applicable and without limitation.

1.22    **Releasees.**  "Releasees" shall mean Defendant, as defined herein, and any related present and former parent companies, subsidiaries, related or affiliated companies, and their respective owners, shareholders, officers, directors, employees, members, managers, consultants, insurers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them.

1.23    **Reserve Fund**.  "Reserve Fund" shall mean the $150,000 reserved from the Settlement Fund identified above to address errors and omission in the calculation of Class Members' individual shares of the settlement, including but not limited to (a) claims from individuals claiming to be Class Members but not identified as such by Defendant, (b) Class Members who correctly challenge their share of the Maximum Settlement, and (c) Class Members who have reasonable explanations for not having timely cashed a settlement check.  The Reserve Fund shall be deposited in an interest-bearing account and shall remain open only through the 18-month anniversary date of the Effective Date, upon which time all funds not distributed from the Reserve Fund shall be returned to Defendant.

1.24    **Rule 23 Class; Rule 23 Class Members.**  "Rule 23 Class" shall mean all individuals who have been employed by Defendant as Home Health Care Attendants, which term shall include, but not be limited to, hourly Home Care Aides, Home Health Aides, Home Health

Attendants, Home Attendants, Personal Care Aides, Personal Care Assistants, Personal Assistants Unskilled, Personal Assistants performing consumer directed personal assistance (CDPAPs), Live-in Home Health Care Attendants, private pay Home Health Care Attendants, and all others providing home care services, at any time during the Covered Period. "Rule 23 Class Members" are individual members of the Rule 23 Class.

1.25   **Settlement Administrator.**   "Settlement Administrator" shall mean Arden Claims Services (or such other claims administrator as acceptable to the parties), which is the entity selected by the Parties to provide notice to the Class and administer payment to Class Members.

1.26   **Settlement Fund.**  "Settlement Fund" shall mean the Maximum Settlement amount of USD Six Million, Five Hundred Thousand Dollars and No Cents ($6,500,000.00) and will include the Settlement Administrator's fee and all Service Awards and Class Counsel Attorney's Fees and Costs awarded by the Court plus any interest accrued as provided in Section 4.1.   Under no circumstances will Defendant pay more than the Maximum Settlement amount, except that Defendant will be responsible for paying its portion of any applicable employment taxes, including but not limited to FICA taxes obligations.

## 2.    JOINT STIPULATION TO CERTIFICATION OF SETTLEMENT CLASS AND COLLECTIVE

2.1   The Parties stipulate that the applicable requirements are satisfied and that the Rule 23 Class may be certified as a class action pursuant to Federal Rule of Civil Procedure 23 and the FLSA Collective may be certified as a collective action pursuant to 29 U.S.C. § 216(b), subject to Court approval for settlement purposes only in accordance with the terms of this Agreement and without prejudice to Defendants' right to contest class or collective certification in the event that this Agreement fails to become effective.  If the Effective Date does not occur, Defendant reserves all rights to object to any subsequent motion to certify a class or collective in this Litigation, and no representation or concession made in connection with the settlement or this Agreement shall be considered law of the case or an admission by Defendant or to have any kind of preclusive effect against Defendant or to give rise to any form of estoppel or waiver by Defendant in this Litigation.

2.2   The Parties agree, subject to Court approval, that Class Counsel shall be appointed counsel for the Rule 23 Class and FLSA Collective, for settlement purposes only in accordance with the terms of this Agreement and without prejudice to Defendant's right to contest the appointment in the event that this Agreement fails to become effective.

## 3.    SETTLMENT APPROVAL AND CLASS NOTICE

3.1   **Settlement Administrator's Responsibilities.** The Settlement Administrator shall be responsible for the following duties:

(A)   Creating and maintaining a database of names, addresses, and other contact and identifying information of Class Members in accordance with information provided by Defendant in a usable electronic format.  This shall be accomplished before mailing the Notice.

(B)     Establishing a toll-free telephone number that Class Members can call to request an additional copy of the Notice be sent to them by mail or email and obtain additional information regarding the settlement.  This shall be accomplished before mailing the Notice.

(C)     Printing and mailing the Notice to Class Members.

(D)     Compiling address information for re-sending any Notices returned as undeliverable.

(E)     Processing valid and timely requests to opt-out of the settlement or objections to the settlement.

(F)     Calculating Class Members' share of installments from the Net Settlement Fund (pursuant to the formula outlined in Section 4.1).

(G)     Cutting and mailing checks to Class Members as provided herein.

(H)     Issuing additional sums to Class Members from the Reserve Fund to correct errors and omissions in the settlement process, as the Settlement Administrator deems appropriate.

3.2     **Cooperation with the Settlement Administrator.** The Parties agree to cooperate with the Settlement Administrator and assist it in any way possible in administering the settlement described herein as approved by the Court.

3.3     **Preliminary Approval by the Court.**  After this Agreement is executed, on or before November 6, 2020, unless otherwise agreed, Plaintiff anticipates submitting to the Court a motion for preliminary approval of the settlement ("Preliminary Approval Motion").  In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Order and Judgment" that will, among other things: (a) approve the settlement as fair, adequate and reasonable; (b) incorporate the terms of the Release, as described herein; (c) authorize the payments to Class Members; (d) award a service award to Plaintiff; (e) award Class Counsel attorneys' fees and costs; and (f) dismiss the Litigation with prejudice.

3.4     **The Preliminary Approval Motion**. In connection with the Preliminary Approval Motion, Plaintiff will submit to the Court, among other things: (a) proposed notice of settlement of the class/collective action lawsuit and fairness hearing, and (b) a proposed Order Granting Preliminary Approval.  Plaintiff will provide Defendant the opportunity to review items (a) and (b) above prior to their submission and should the parties disagree on content, after good faith efforts at resolution, any remaining issues will be promptly mediated by Martin F. Scheinman.  The Parties will work together diligently and in good faith to obtain preliminary and final approval expeditiously.  The Preliminary Approval Motion will seek the setting of dates for Rule 23 Class Members to opt-out, objections, and the Fairness Hearing.  Defendant will not oppose the Preliminary Approval Motion unless inconsistent with this Agreement.

3.5     **Denial of Preliminary Approval.**  If the Court denies the Motion for Preliminary Approval, then the Parties agree to jointly seek reconsideration of the ruling or seek Court

approval of a renegotiated settlement.  Should reconsideration and/or the Parties' attempt to secure Court approval of a renegotiated settlement be denied, this Agreement will not become effective and the Parties will return to litigation.

3.6     **Class and Collective Action Notice.**

(A)     The Notice shall be consistent with the guidelines of the Federal Judicial Center and shall be both in English and in the employee's primary language (where available from Defendant's records or based on the Parties' good faith determination).  The Settlement Administrator shall provide for all necessary translations of the Notice and the costs of such translations shall be included in the Settlement Administrator's fee.

(B)     Within fifteen (15) days after the Order Granting Preliminary Approval, Defendant will provide the Settlement Administrator and Class Counsel the following information for all Class Members: full name, social security number, last known address, phone number, job position, primary language (where available from Defendant's records or based on the Parties' good faith determination) and weeks worked within the Class Period as that information exists on file with Defendants ("Class List").  The Class List shall be strictly confidential and will be used by the Settlement Administrator and Class Counsel for settlement purposes only.  At the time of providing the Class List, Defendant shall certify that the Class List represents the most current and up to date information that Defendant has for Class Members.

(C)     In advance of the Settlement Administrator's mailing of any Notice, the Settlement Administrator shall also set up and operate a case-specific call center, including live operator and voice-mail technology, to provide telephone support for the administration of the settlement and to address questions from and otherwise provide information to Class Members regarding the Settlement.

        In advance of the Settlement Administrator's mailing of any Notice, counsel for the Parties shall negotiate in good faith (1) a list of frequently asked questions and answers ("FAQs") to be used by the Settlement Administrator in responding to inquiries from Class Members following the issuance of the Notice, and (2) the Settlement Administrator's recorded message to callers.  Use of FAQs shall discontinue on the tenth (10th) day following the Bar Date.

(D)     If the Settlement Administrator determines that it cannot respond to a Class Member's inquiry because the inquiry falls outside of the scope of the FAQs, it shall direct such persons to the phone number for Class Counsel on the Notice.  The Settlement Administrator shall provide notice and a description of such events to all counsel; if there are multiple events of the same type, counsel shall work cooperatively to update the FAQs to facilitate the Settlement Administrator's ability to respond to such inquiries in the future.

(E)     Before mailing the Notice, the Settlement Administrator shall take all reasonable and customary efforts to ensure the Class List is as up-to-date and accurate as practicable, including without limitation running the Class List through the

National Change of Address Database. Should the Settlement Administrator determine that a more up-to-date and accurate address exists for any individual on the Class List, the Settlement Administrator shall so notify counsel for the Parties and that address shall be deemed the address for the individual for all purposes under this Agreement.

(F)     Within thirty (30) days of the date on which Defendant provides the Class List, the Settlement Administrator shall mail, via First Class United States mail, postage prepaid the Notice to all Class Members using each individual's last known address as recorded in Defendant's records or updated address as determined by the Settlement Administrator pursuant to Section 3.6(E).

(G)     If any Notices are returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall complete a standard skip trace in an effort to ascertain the current address of the particular Class Member in question and, if such address is ascertained, the Settlement Administrator will re-send the Notice to the new address.

(H)     In the event that a Notice is returned to the Settlement Administrator with a forwarding address for the recipient, the Settlement Administrator shall re-mail the Notice to that address, and the forwarding address will be deemed the address for that Class Member.

(I)     Defendant's Counsel and Class Counsel have the right to make reasonable inquiries and receive information from the Settlement Administrator related to the settlement administration process and agree to include each other in each of those communications.

(J)     No later than three (3) business days prior to the Fairness Hearing the Settlement Administrator shall certify to the Court the completion of its responsibilities that can be accomplished prior to the Fairness Hearing.

3.7     **Rule 23 Class Member Opt-Out.**

(A)     Any Rule 23 Class Member may request exclusion from the class by "opting out." Any Rule 23 Class Member who chooses to do so must mail, email, or fax a written, signed statement to the Settlement Administrator that he or she is opting out of the settlement ("Opt-Out Statement"). The Opt-Out Statement must contain the name, address and telephone number of the Rule 23 Class Member to be valid. It must also contain a statement reasonably indicating that the Rule 23 Class Member elects to exclude themselves from the class settlement in *Medvedeva v. Assistcare Home Health Services LLC* in order to be valid. To be valid, such Opt-Out Statement must also be sent via mail and postmarked by the Bar Date or via e-mail or fax to the Settlement Administrator prior to midnight, Eastern Standard Time, on the Bar Date.

(B)     The Settlement Administrator shall stamp the date received on the original of each Opt-Out Statement that it receives, and note the date and time of any emailed or faxed Opt-Outs, and shall serve copies of each Statement by email on Class Counsel and Defendant's Counsel not later than 3 calendar days after receipt thereof. The

Settlement Administrator shall, within 3 calendar days of the end of the Bar Date, send by email a final list of all Opt-Out Statements to Class Counsel and Defendant's Counsel. The Settlement Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements, as well as all emailed or faxed Opt-Outs, in its files until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

(C)     Any Rule 23 Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement.

(D)     Only individual opt-outs are allowed.  Any statement that purports to opt-out more than one Rule 23 Class Member will be null and void.

(E)     If more than 10% of the Rule 23 Class Members or any number of Rule 23 Class Members whose cumulative claims in the Litigation are reasonably valued at $750,000.00 or more timely and properly opt-out of the settlement, Defendant will have the right to void the settlement, and this Agreement by written notice to Class Counsel within ten (10) business days after receiving the final list of Opt-Out Statements from the Settlement Administrator.  In the event the Parties do not agree on whether the reasonable value of the Rule 23 Class members who timely and properly opt out of the settlement exceeds $750,000.00, the questions about valuation will be referred to an agreed upon mediator or  arbitrator for a final and binding determination.  If Defendant exercises its option to void the settlement, this Agreement will not become effective and the parties will return to litigation.

(F)     Plaintiff affirmatively supports this settlement and agrees not to opt-out.  Neither Plaintiff, Class Counsel, Defendant, nor its counsel will in any way encourage any Rule 23 Class Member to opt-out or discourage any Class Member from participating in this settlement.  Defendant also expressly acknowledges that it is not aware of any efforts, plan, or intention by Defendant, any union, labor organization, or similar entity or group, labor or union or community organizer, or attorney or law firm staff to encourage any Rule 23 Class Member to opt-out or discourage any Class Member from participating in this settlement.

(G)     Rule 23 Class Members who timely opt out will not be bound by the terms of this Agreement, including any releases contained herein, nor will they be entitled to receive any benefits from the settlement.

## 3.8   Objections to Settlement by Rule 23 Class Members.

(A)     (i) Rule 23 Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first make their objections via a written statement.  To be considered, such statement must be sent via mail and postmarked by the Bar Date or via e-mail or fax to the Settlement Administrator, Class Counsel, and Defendant's Counsel prior to midnight, Eastern Standard Time, on the Bar Date.  Any objections not raised properly and timely will be waived, and any Rule 23 Class Member who fails to timely file and serve a valid written objection shall

not be permitted to object to the settlement and shall be foreclosed from seeking any review of the settlement or the terms of this Agreement by any means, including but not limited to an appeal.  Further, any Rule 23 Class Member who submits a timely written objection shall consent to deposition by Class Counsel and/or Defendant's counsel prior to the Fairness Hearing.  To be valid, any objection must be set forth in writing and contain all of the following:

    a.   reference at the beginning to *Medvedeva v. Assistcare Home Health Services LLC*;

    b.   the objector's full name, address, and telephone number;

    c.   a written statement of all reasons for the objection; and

    d.   a statement of whether the objector intends to appear at the Fairness Hearing, and, if the objector does intend to appear at the Fairness Hearing through counsel, a statement identifying all attorneys representing the objector who will appear at the Fairness Hearing;

(ii) In addition, any objection filed with the assistance of an attorney or law firm staff must contain all of the following to be valid:

    e.   a written statement of any legal support for such objection;

    f.   copies of any papers, briefs, or other documents upon which the objection is based;

    g.   a list of all persons who will be called to testify in support of the objection, if any; and

    h.   a statement of the Rule 23 Class Member's membership in the Rule 23 Class.

The Settlement Administrator shall stamp the date received on the original objection.  Class Counsel shall file the date-stamped originals of any and all objections with the Clerk of Court within 30 calendar days after the Bar Date, or within 3 calendar days before the Fairness Hearing, whichever date is earlier.

(B)    If a Rule 23 Class Member intends to object to the Settlement through retained counsel, then that counsel must file with the Court and serve on the Settlement Administrator and Class Counsel and Defendant's Counsel a notice of appearance no later than 14 calendar days after the Bar Date, and include a statement of whether counsel intends to appear at the Fairness Hearing.  An objector may withdraw his/her objections at any time.

(C)    No Rule 23 Class Member or counsel for an objector may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this section and the previous sections.  Any Rule 23 Class

Member who has requested exclusion from the settlement may not submit objections to the settlement.

(D)    The Parties may file with the Court written responses to any objections no later than 3 calendar days before the Fairness Hearing, or any date ordered by the Court.

(E)    Plaintiff affirmatively supports this settlement and agrees not to object. Neither Plaintiff, Class Counsel, Defendant, nor its counsel will in any way encourage any Class Member to object to this settlement. Defendant also expressly acknowledges that it is not aware of any efforts, plan, or intention by Defendant, any union, labor organization, or similar entity or group, labor or union or community organizer, or attorney or law firm staff to encourage any Class Member to object to this settlement.

3.9    **Motion for Judgment, Final Approval, and Settlement Distribution.**  No later than 7 calendar days before the Fairness Hearing, Plaintiff will submit a motion for judgment, final approval, and settlement distribution.  This motion shall also include a proposed Final Order and Judgment.  Plaintiff will provide Defendant the opportunity to review the proposed Final Order and Judgment and should the parties disagree on content, after good faith efforts at resolution, any remaining issues will be promptly mediated before Martin F. Scheinman.  The Fairness Hearing shall be held at the Court's convenience.

3.10   **Entry of Judgment.**  At the Fairness Hearing, Class Counsel will request that the Court enter a Final Order and Judgment that will, among other things: (a) finally certify the Rule 23 Class and FLSA Collective for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out pursuant to Section 3.7, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement, (f) award a service awards to Plaintiff, (g) award Class Counsel attorneys' fees and costs, (h) incorporate the terms of this Agreement, and (i) dismiss the Litigation with prejudice.  Defendant will not oppose the request for a Final Order and Judgment unless inconsistent with this Agreement.

3.11   **Effect of Court's Failure to Grant Final Approval.**  If the Court does not grant final approval in accordance with this Agreement, or such judgment does not become final as defined herein, the Parties agree to proceed as follows.  The Parties jointly agree to (a) seek reconsideration of the decision denying entry of judgment, or (b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. Defendant will not oppose Plaintiff's applications for a service award, and attorneys' fees, and costs, or appeal of denial of such items in the event not awarded as requested, unless inconsistent with this Agreement.   In the event any reconsideration is denied, or a mutually-agreed-upon settlement is not approved:

(A)    The Litigation will proceed as if no settlement had been attempted.  In that event, Defendant retains the right to contest whether this Litigation should be maintained as a class action or collective action, and to contest the merits of the claims being asserted by Plaintiff in this action.

(B)     Class Counsel will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.

(C)     Upon notification from counsel for the Parties that the Agreement did not receive final approval, the Settlement Administrator shall return to Defendant within 10 days the entire amount of the Settlement Fund that has been deposited, with any interest accrued thereon.   If the Agreement does not receive final approval, Defendant shall be responsible for payment of settlement administration fees and costs as described in Section 3.12.   Any fees associated with investing and liquidating the Settlement Fund as described in Section 4.1, and any taxes incurred directly or indirectly as a result of investing the Settlement Fund shall be paid by Defendant, which shall retain all principal, proceeds and interest from the Settlement Fund.

3.12   **Settlement Administrator's Fees.**  The Settlement Administrator's fees incurred up to $215,000 shall be paid from the Settlement Fund as described below, provided that the Court enters a Final Order and Judgment.  Any Settlement Administrator's fees in excess of $215,000 shall be paid by Defendant.

## 4.   SETTLEMENT TERMS

4.1   **Settlement Fund and Payment.**

Defendant agrees to pay a Maximum Settlement amount of Six Million, Five Hundred Thousand Dollars and No Cents ($6,500,000.00), which shall resolve and satisfy: (a) all amounts to be paid to Class Members; (b) a Court-approved service award to Plaintiff; (c) the Settlement Administrator's fees; (d) Court-approved attorneys' fees and costs and expenses (including expert fees and mediation costs); (e) any fees associated with investing and liquidating the Settlement Fund, and (f) any taxes incurred directly or indirectly as a result of investing the Settlement Fund to the extent not covered by accrued interest. Defendant will not be required to pay more than Six Million, Five Hundred Thousand Dollars and No Cents ($6,500,000.00) under this Agreement, except that Defendant will be responsible for paying its portion of any applicable employment taxes, including but not limited to FICA taxes obligations.  At Defendant's discretion, either the Defendant or the Settlement Administrator shall establish, and the Settlement Administrator shall administer, the Escrow Account from which the Settlement Administrator's fee, Class Counsel's award of attorneys' fees and costs, the named Plaintiff's service award, payments to Class Members, and the Settlement's other payments shall be made.  The Settlement Administrator will administer the Escrow Account in accordance with the terms of this Agreement.

Provided that a Final Order and Judgment is entered, the Settlement Fund shall be allocated to Class Members in accordance with the formula negotiated by the Parties, which is attached hereto as Exhibit "A."

This formula takes into consideration the number of weeks worked by each Class Member in the Covered Period and each Class Member's potential claims against Defendant. A Class Member's "Individual Settlement Amount" shall be that Class Member's

proportionate share of the Net Settlement Fund as determined in accordance with this formula. The Individual Settlement Amount designated for distribution to Class Members in accordance with the above settlement formula shall be the portion of the Net Settlement Fund remaining after the deductions referenced in Section 1.16.

4.2    Defendant will fund the Escrow Account in an amount equal to the Settlement Fund on the following schedule:

(A)    The Settlement Administrator's fee shall be deposited within 10 days of the Order Granting Preliminary Approval;

(B)    $3,250,000 plus 50% of the amount needed to fund the cost of issuing a one-time payment to Class Members allocated based on an Individual Settlement Amount of less than $600, less the Settlement Administrator's fee, shall be deposited on the Effective Date;

(C)    The amount needed to fund the remainder of the payments to be made under this Agreement, to be deposited over 12 months in 12 equal monthly payments until fully funded beginning within 30 days of the Effective Date.

Interest, if any, from the Escrow Account will become part of the Net Settlement Fund and be held by the Settlement Administrator in escrow.

4.3    **Distribution to Class Members.**

(A)    All Class Members who do not timely and properly opt-out pursuant to Section 3.7 are eligible for a payment hereunder.

(B)    Defendant and the Settlement Administrator shall exchange such information as is necessary for the Settlement Administrator to make proper tax withholdings and comply with tax reporting obligations as described herein. Defendant agrees that it has an obligation to provide to the Settlement Administrator the W-4 information it has available for each Class Member. Defendant agrees to provide the W-4 information to the Settlement Administrator that is necessary to identify or pay Class Members so that the Settlement Administrator can make the required tax deductions before payments are made to Class Members, and to notify the appropriate taxing authorities.

(C)    Within 10 days of the Effective Date, the Settlement Administrator shall mail initial settlement checks to Class Members, pay the Plaintiff's service award described in Section 4.7, and pay 50% of Class Counsel's attorneys' fees and costs as described in Section 4.6, minus 50% of the amount needed to fund the cost of issuing a one-time payment to Class Members allocated based on an Individual Settlement Amount of less than $600. The initial check mailed to each such Class Member will equal 50% of the Class Member's Individual Settlement Amount, unless such Class Member's Individual Settlement Amount is less than $600. For Class Members whose Individual Settlement Amount is less than $600, the initial check mailed to such Class Member shall equal 100% of the Class Member's Individual Settlement Amount and the payment will be treated as a non-wages payment, eliminating the need to withhold statutory deductions and

15

issue W-2s and 1099s to Class Members who receive less than $600, which will reduce claims administration fees to be borne by Defendant. Class Members shall have 90 days to cash such initial checks. Any check not cashed will become void. Any Class Member who has not cashed their check within 45 days of the date of mailing of the checks shall receive a reminder notice that they were sent a settlement check and must cash their check within 90 days of the date the checks were mailed (i.e. by a date certain). The funds from voided checks shall remain in the Escrow Account through the 18-month anniversary date of the Effective Date, after which the funds remaining in the Escrow Account shall be returned to Defendant. All settlement checks issued to Class Members whose Individual Settlement Amount is $600 or more pursuant to this paragraph shall contain on the back of the check a limited endorsement similar to the first sentence below and the exact release language below or a lightly modified version thereof:

(D)    *By signing the accompanying check (the "First Check"), I consent to join the collective action wage and hour litigation against Assistcare Home Health Services LLC (d/b/a Preferred Home Care of New York and Preferred Home Care of New York LLC) ("Preferred") and to participate in the settlement. I further understand this is the first of two settlement checks I will receive, and that I will be receiving a second settlement check on or around [date 12 months from Effective Date per para. 4.2(C)] (the "Second Check") in an amount equal to this check. By signing this First Check, I fully and finally release and discharge any and all claims that I have or may have against Preferred and each of its current and former parents, affiliates, subsidiaries, and related entities, and each of these entities' current and former owners, officers, directors, employees, consultants, agents, representatives, insurers, contractors, attorneys, successors, and assigns, for unpaid wages or overtime pay, or any other claim for violations of any and all applicable federal, New York, or local wage and hour laws, or wage parity laws, relating to my employment with Preferred at any time between 9-29-11 and 11-6-20 with the exception of my entitlement to the Second Check. If I fail to sign this check, I shall have no right to the proceeds identified therein.*

All settlement checks issued to Class Members whose Individual Settlement Amount is less than $600 pursuant to this paragraph shall contain on the back of the check a limited endorsement similar to the first sentence below and the exact release language below or a lightly modified version thereof:

(E)    *By signing the accompanying check, I consent to join the collective action wage and hour litigation against Assistcare Home Health Services LLC (d/b/a Preferred Home Care of New York and Preferred Home Care of New York LLC) ("Preferred") and to participate in the settlement. By signing this check, I fully and finally release and discharge any and all claims that I have or may have against Preferred and each of its current and former parents, affiliates, subsidiaries, and related entities, and each of these entities' current and former owners, officers, directors, employees, consultants, agents, representatives, insurers, contractors, attorneys, successors, and assigns, for unpaid wages or overtime pay, or any other claim for violations of any and all applicable federal, New York, or local wage and hour laws, or wage parity laws relating to my employment with Preferred at any*

*time between September 29, 2011 and November 6, 2020.  If I fail to sign this check, I shall have no right to the proceeds identified therein.*

(F)     Within 12 months of the Effective Date, the Settlement Administrator will mail final settlement checks to Class Members whose Individual Settlement Amount is $600 or more and pay the remainder of Class Counsel's attorneys' fees and costs (i.e. 50% of Class Counsel's attorneys' fees and costs plus 50% of the amount needed to fund the cost of issuing a one-time payment to Class Members allocated based on an Individual Settlement Amount of less than $600).  The final settlement check mailed to each Class Member whose Individual Settlement Amount is $600 or more will equal the remaining 50% of that Class Member's Individual Settlement Amount.  Class Members shall have 90 days to cash such final checks.  Any check not cashed will become void.  Any Class Member who has not cashed their check within 45 days of the date of mailing of the checks shall receive a reminder notice that they were sent a settlement check and must cash their check within 90 days of the date the checks were mailed (i.e. by a date certain).  The funds from voided checks shall remain in the Escrow Account through the 18-month anniversary date of the Effective Date, after which the funds remaining in the Escrow Account shall be returned to Defendant. All settlement checks issued pursuant to this paragraph shall contain on the back of the check a limited endorsement similar to the first sentence below and the exact release language below or a lightly modified version thereof:

(G)     *By signing the accompanying check, I understand this is the second of two settlement checks I have received in the wage and hour litigation against Assistcare Home Health Services LLC (d/b/a Preferred Home Care of New York and Preferred Home Care of New York LLC) ("Preferred").  By signing this settlement check I fully and finally release and discharge any and all claims that I have or may have against Preferred and each of its current and former parents, affiliates, subsidiaries, and related entities, and each of these entities' current and former owners, officers, directors, employees, consultants, agents, representatives, insurers, contractors, attorneys, successors, and assigns, for unpaid wages or overtime pay, or any other claim for violations of any and all applicable federal, New York, or local wage and hour laws, or wage parity laws, relating to my employment with Preferred at any time between 9-29-11 and 11-6-20.  If I fail to sign this check, I shall have no right to the proceeds identified therein.*

(H)     For each distribution the Settlement Administrator, in his discretion, may perform a skip-trace and, if a new address is located pursuant to the skip-trace, make an additional mailing to Class Members whose checks are returned as undeliverable because of an incorrect address.

(I)     All payments to Class Members made pursuant to this Agreement shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by Class Members.  It is expressly understood and agreed that the receipt of such settlement payments will not entitle any Class Member to additional compensation or benefits under any of Defendant's bonus or other compensation or benefit plans or agreements in place during the Covered Period.  It is the intent of this Agreement that the settlement payments provided

for in the Agreement are the sole payments to be made by Defendant to the Class Members, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the settlement payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the Covered Period).

4.4 **Taxability of Settlement Payments.**

(A) For tax purposes, all payments to Class Members shall be allocated 50% to alleged back wages, with the balance divided between alleged interest and liquidated damages. Payments treated as alleged back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages and interest shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 4.6 shall be made without withholding. Class Counsel will receive a Form 1099 for this payment. Any service award pursuant to Section 4.7 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(B) Any tax responsibility for the non-wage portion of the payments to Class Members shall not be Defendant's responsibility.

4.5 **Class-Wide Non-Monetary Reforms.** The Parties also agree that, after the commencement of the Litigation, Defendant enhanced its practices to further ensure that all home care workers are properly paid for all hours worked. Specifically, Defendant has shared the following policies and documents with Plaintiff: Payroll Documentation Requirements; Live-in Relief/Coverage; Approved Overtime; Electronic Visit Verification (EVV); Home Care Worker Travel Time ; EVV Guidelines: Policies, Procedures and Agency Expectations; HHAeXchange Clock In, Clock Out, Use of FOB Device, and Use of Mobile App Instructions; Time Sheet Checklist; and Wage Parity Policy and Procedure as well as Preferred's Live-In Aide Agreement and Acknowledgement and Plaintiff has reviewed them and found them to be lawful policies. Plaintiff estimates the cumulative value of such improvements at not less than One Million Dollars ($1,000,000) per year to Class Members each year over six years or Six Million Dollars ($6,000,000). Nothing contained herein shall be construed to diminish or limit the Parties' agreement in Section 4.10(D) (Non-Admission of Liability).

4.6 **Settlement Amounts Payable as Attorneys' Fees and Costs.** Prior to the Fairness Hearing, Class Counsel shall petition the Court for no more than one third of the Settlement Fund (i.e. $2,166,666) as an award of attorneys' fees and reimbursement of litigation costs and expenses. Defendant will not oppose such application unless inconsistent with this Agreement. The Settlement Administrator shall wire Class Counsel's Court-approved attorneys' fees and expenses from the Escrow Account to an account(s) designated by Wittels McInturff Palikovic in writing in accordance with the provisions for the timing of

Counsel's attorneys' fees and expenses as set forth in Sections 4.3(C) and 4.3(D).  By way of example, if 50% of the amount needed to fund the cost of issuing a one-time payment to Class Members allocated based on an Individual Settlement Amount of less than $600 equals $500,000, then the initial payment will be $2,166,666 divided by two less $500,000, and the second payment will be $2,166,666 divided by two plus $500,000.

4.7 **Service Award to Plaintiff.**  Plaintiff will apply to the Court to receive no more than Ten Thousand Dollars and No Cents ($10,000.00) from the Settlement Fund for services rendered to Class Members.   Defendant will not oppose such application unless inconsistent with this Agreement.  The Settlement Administrator shall wire Plaintiff's Court-approved service award from the Escrow Account to an account(s) designated by Wittels McInturff Palikovic in writing.

4.8 **Class Counsel's Right to Appeal.**  Class Counsel reserves the right to appeal any decisions denying their application for a full service award to Plaintiff or their petition to the Court for no more than one third of the Settlement Fund as an award of attorneys' fees and reimbursement of litigation costs and expenses.  Defendant will not oppose any such appeals unless inconsistent with this Agreement.

4.9 **Defendant's Right to Appeal.**  Defendant reserves the right to appeal any decisions inconsistent with this Agreement.  Plaintiff will not oppose any such appeals unless inconsistent with this Agreement.

4.10 **Release**

(A) **Release of Claims.**  Upon the Effective Date, the Plaintiff, and each Rule 23 Class Member who does not timely and properly opt out pursuant to Section 3.7, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges the Releasees, from all claims that were or could have been brought up to the date of Preliminary Approval Motion under the New York Labor Law (NYLL), Section 3614-c of the New York Public Health Law (known as the "Home Care Worker Wage Parity Law") and any regulations, guidance, interpretations, case law, agency web-site postings, agency statements, or other authority thereunder, inclusive of all alleged unpaid or unaccrued wages, minimum wage, overtime, hours worked, spread-of-hours pay, travel time pay, in-service pay, and wage theft prevention act notice and paystub-related claims (collectively, "Wage Claims"); wage parity benefits (except as specified in the following paragraph) including the amount and fact of any wages or contributions made or required, e.g., those wages or contributions arising from the facts underlying the Wage Claims; liquidated damages; interest; attorneys' fees; costs; taxes; settlement administration fees; and court costs.  Any Rule 23 Class Member who does not timely and properly opt-out pursuant to Section 3.7 shall be bound by the above release.  In addition, each FLSA Collective Member who negotiates any check paid pursuant to Section 4.3 specifically and affirmatively consents to join the litigation shall release Defendant from all FLSA claims that were or could have been brought under the Fair Labor Standards Act ("FLSA").

For the avoidance of doubt, and notwithstanding anything to the contrary, this Agreement does not release (i) ERISA claims that were brought based on the facts alleged in the First Amended Complaint in *Gonzalez de Fuente et al. v. Preferred Home Care of New York, LLC, et al.*, No. 18-cv-06749 (AMD) (PK) ("*Gonzalez*"); (ii) the right to vested or incurred, reported or unreported, claims for benefits under any employee benefit plan governed by ERISA, e.g., current rights to benefits due under existing health insurance plan documents which have accrued but not yet been processed; (iii) any claims that employer contributions made to the Edison Home Health Care Welfare Plan fail to satisfy, in whole or in part, the obligation of any participating employer to pay the benefit portion of the minimum rate of total compensation required under the New York State Home Care Worker Wage Parity Law and that such failure violated the New York Labor Law; or (iv) any claims that employees of Edison Home Care, Inc. ("Edison") may have against Edison under New York State wage and hour laws and the Home Care Worker Wage Parity Law (collectively, "Release Carve-Out"). The Release Carve-Out does not include claims that additional employer contributions were due to the Edison Home Health Care Welfare Plan to satisfy the New York State Home Care Worker Wage Parity Law as a result of the Wage Claims.

(B) **Release of Fees and Costs for Settled Matters**. Except as provided for in this agreement, Class Counsel and Plaintiff, on behalf of Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with Class Counsel's representation of Plaintiff and the class in the Litigation.

(C) **No Assignment.** Class Counsel and Plaintiff, on behalf of Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any interest or claim in this Litigation, or any portion thereof.

(D) **Non-Admission of Liability.** By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiff and/or Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective-action litigation other than for purposes of settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiff and the Class Members. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant on a retroactive, prospective, or any other basis or of the truth of any of the factual allegations in any and all Complaints filed in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding.

4.11 **Confessions of Judgment from Defendant and Samuel Weiss.** By the Effective Date, Defendant and Samuel Weiss (hereafter collectively "Preferred Entities") will, in their

discretion, either (a) execute a confession of judgment in in the Federal Court for the Eastern District of New York in favor of the Plaintiff and Class Counsel for the amount of the Maximum Settlement plus interest under New York law less any portion of the Maximum Settlement already paid ("Outstanding Payment Amount"); or (b) provide a security interest in collateral that the Parties mutually agree is sufficient to cover the Outstanding Payment Amount.  If Defendant fails to make payment as required by the Settlement Agreement, Plaintiff and Class Counsel or their heirs, executors, administrators, or assigns may without further notice to any of the Preferred Entities enter judgment against each of them, jointly and severally, in the amount of the missed payment and exercise all rights as a judgment creditor in accordance with applicable law.

4.12   **Miscellaneous**

(A)   **No Retaliation.**  Defendant agrees not to retaliate against any individuals for their participation in this settlement or litigation.

(B)   **Defendant's Authority.**  Defendant represents and warrants that: (a) it has the requisite corporate power and authority to execute, deliver, and perform this Agreement, and to consummate the transactions contemplated hereby; (b) the execution, delivery, and performance of this Agreement, and the consummation by it of the actions contemplated herein have been duly authorized by necessary corporate action on the part of Defendant; and (c) this Agreement has been duly and validly executed and delivered by Defendant and constitutes its legal, valid, and binding obligation.

(C)   **Plaintiff's Authority.**  Class Counsel represent and warrant that they are authorized to take all appropriate actions required or permitted to be taken by or on behalf of Plaintiff and, subsequent to an appropriate Court Order, Class Members in order to effectuate the terms of this Agreement and are also authorized to enter into appropriate modifications or amendments to this Agreement on behalf of Plaintiff and, subsequent to an appropriate Court Order, Class Members.

(D)   **Cooperation Among the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's preliminary and final approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(E)   **Website Content.**  The Class Counsel shall not, directly or indirectly, issue any press release regarding this Agreement or the settlement and shall make no statements regarding this Agreement or this settlement on the internet, websites, or social media, except that Class Counsel may accurately describe the terms of the settlement on its website.

(F)   **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and

contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(G)    **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Plaintiff and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

(H)    **Arm's Length Transaction.**  The Parties have negotiated all the terms and conditions of this Agreement at arm's length.

(I)    **Costs.**  Except as otherwise provided in this Agreement, each Party shall bear its own costs and expenses.

(J)    **Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(K)    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(L)    **Severability.**  Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect if agreed upon in writing by the Parties.

(M)    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(N)    **Settlement Agreement Administration Disputes.**  In the event issues arise between the Parties regarding the administration of this Agreement, such issues shall the referred to arbitrator Martin F. Scheinman for a final and binding determination.

(O)    **Jurisdiction.**  Except as set forth in the immediately preceding paragraph, the Parties submit to the exclusive jurisdiction of the United States District Court for Eastern District of New which shall retain jurisdiction over the Litigation, the Settlement Administrator, the Final Order and Judgment, the Class Members, the Plaintiff and Defendant for the purpose of enforcing this Agreement or implementing any part of the settlement embodied in this Agreement.

(P)    **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written

waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(Q)   **Change of Time Periods.**  The Parties may jointly request that the Court allow reasonable extensions of time to carry out any of the provisions of this Agreement without formally amending this Agreement.  The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Class Counsel and Defendant's counsel, without notice to Class Members.

(R)   **Stay Pending Court Approval.**  The Parties agree to stay all proceedings in the Litigation, other than those proceedings necessary to carry out or enforce the terms and conditions of this Agreement.  If, despite the Parties' best efforts, this Agreement should fail to become effective, the Parties will return to their prior positions in the Litigation.  The Parties also agree to use their best efforts to seek the stay and dismissal of, and to oppose entry of any interim or final relief in favor of any Class Member in any other proceedings against any of the Releasees, which challenges the settlement or otherwise asserts or involves, directly or indirectly, a claim released in this action.

(S)   **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiff and Defendant had signed the same instrument.    Plaintiff will be the first party to execute this Agreement as a condition precedent to Defendant executing it.

(T)   **Facsimile/Electronic Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.


PLAINTIFF:

Alla Medvedeva


_____

Dated:  November__, 2020

23

waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(Q)     **Change of Time Periods.**  The Parties may jointly request that the Court allow reasonable extensions of time to carry out any of the provisions of this Agreement without formally amending this Agreement.  The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Class Counsel and Defendant's counsel, without notice to Class Members.

(R)     **Stay Pending Court Approval.**  The Parties agree to stay all proceedings in the Litigation, other than those proceedings necessary to carry out or enforce the terms and conditions of this Agreement.  If, despite the Parties' best efforts, this Agreement should fail to become effective, the Parties will return to their prior positions in the Litigation.  The Parties also agree to use their best efforts to seek the stay and dismissal of, and to oppose entry of any interim or final relief in favor of any Class Member in any other proceedings against any of the Releasees, which challenges the settlement or otherwise asserts or involves, directly or indirectly, a claim released in this action.

(S)     **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiff and Defendant had signed the same instrument.   Plaintiff will be the first party to execute this Agreement as a condition precedent to Defendant executing it.

(T)     **Facsimile/Electronic Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

PLAINTIFF:

Alla Medvedeva

Dated: November 6, 2020

23

FOR DEFENDANT:

By:

Title:

Dated:  November 6, 2020

SAMUEL WEISS

Dated:  November__, 2020

BY COUNSEL:

CLASS COUNSEL

Wittels McInturff Palikovic

By: _____
    Steven L. Wittels
    J. Burkett McInturff

Dated:  November__, 2020

DEFENDANT'S COUNSEL

Naness, Chaiet & Naness, LLC

By: _____
    William Matthew Groh

Dated: November 6, 2020

FOR DEFENDANT:

By: _____

Title:

Dated: November__, 2020

SAMUEL WEISS

_____
Dated: November__, 2020

BY COUNSEL:

CLASS COUNSEL

Wittels McInturff Palikovic

By: _____
Steven L. Wittels
J. Burkett McInturff

Dated: November__, 2020

DEFENDANT'S COUNSEL

Naness, Chaiet & Naness, LLC

By: _____
William Matthew Groh

Dated: November__, 2020

24

**Exhibit A**

**Allocation of Net Settlement Fund to be Paid to Each Class Member
(Computation of each Class Member's Individual Settlement Amount)**

I.  The Settlement Administrator with the Parties' input and assistance will divide the Net Settlement Fund among seven (7) claims:

 1.  25% of the Net Settlement Fund will be allocated to the claims related to the alleged January 1, 2015 change in the federal companionship exemption under the FLSA (the "First Claim Allocation");

 2.  20% of the Net Settlement Fund will be allocated to the claims related to the alleged failure to pay for all hours worked (the "Second Claim Allocation");

 3.  5% of the Net Settlement Fund will be allocated to the claims for alleged unpaid travel time between multiple worksites during the same workday (the "Third Claim Allocation");

 4.  20% of the Net Settlement Fund will be allocated to the claims for alleged hours relating to live-in shifts (the "Fourth Claim Allocation");

 5.  5% of the Net Settlement Fund will be allocated to the claims related to the alleged failure to provide Wage Theft Protection Act-compliant notice and acknowledgement of pay rate and other items (the "Fifth Claim Allocation");

 6.  5% of the Net Settlement Fund will be allocated to the claims related to the alleged failure to provide Wage Theft Protection Act-compliant pay statements (the "Sixth Claim Allocation"); and

 7.  20% of the Net Settlement Fund will be allocated to the claims related to the alleged failure to provide all amounts and/or benefits required under the New York Wage Parity Law (the "Seventh Claim Allocation").

II.  The Settlement Administrator will then determine each Class Member's share of the First Claim Allocation, Second Claim Allocation, Third Claim Allocation, Fourth Claim Allocation, Fifth Claim Allocation, Sixth Claim Allocation, and/or Seventh Claim Allocation as follows:

 1.  Each Class Member's share of the First Claim Allocation, if any, will be determined by dividing the total number of overtime hours the Class Member worked as a home health aide for Defendant from January 1, 2015 through October 16, 2015, by the total number of overtime hours all Class Members worked as home health aides for Defendant from January 1, 2015 through October 16, 2015, and then multiplying this quotient by the amount of the First Claim Allocation (the result being the "First Claim Share");

i

2.      Each Class Member's share of the Second Claim Allocation, if any, will be determined by dividing the total number of weeks worked by the Class Member as a home health aide for Defendant during the Covered Period, by the total number of weeks worked by all Class Members as home health aides for Defendant during the Covered Period, and then multiplying this quotient by the amount of the Second Claim Allocation (the result being the "Second Claim Share");

3.      Each Class Member's share of the Third Claim Allocation, if any, will be determined by dividing the total number of weeks worked by the Class Member as a home health aide for Defendant during the Covered Period, by the total number of weeks worked by all Class Members as home health aides for Defendant during the Covered Period, and then multiplying this quotient by the amount of the Third Claim Allocation (the result being the "Third Claim Share");

4.      Each Class Member's share of the Fourth Claim Allocation, if any, will be determined by dividing the total number of "live-in" daily shifts worked by the Class Member as a home health aide for Defendant during the Covered Period, by the total number of "live-in" daily shifts worked by all Class Members as home health aides for Defendant during the Covered Period, and then multiplying this quotient by the amount of the Fourth Claim Allocation (the result being the "Fourth Claim Share");

5.      Each Class Member's share of the Fifth Claim Allocation, if any, will be determined by:

a.      dividing the total number of weeks worked by the Class Member as a home health aide for Defendant from September 29, 2011 through February 26, 2015, by the total number of weeks worked by all Class Members as home health aides for Defendant from September 29, 2011 through February 26, 2015, and then multiplying this quotient by one-fourth (1/4) of the amount of the Fifth Claim Allocation;

b.      dividing the total number of weeks worked by the Class Member as a home health aide for Defendant from February 27, 2015 through the last day of the Covered Period, by the total number of weeks worked by all Class Members as home health aides for Defendant from February 27, 2015 through the end of the Covered Period, and then multiplying this quotient by three-fourths (3/4) of the amount of the Fifth Claim Allocation;

c.      the sum of the amount calculated under Section II(5)(a) for each Class Member, plus the amount calculated under Section II(5)(b) for that Class Member, will be that Class Member's "Fifth Claim Share";

6.      Each Class Member's share of the Sixth Claim Allocation, if any, will be determined by:

a.      dividing the total number of weeks worked by the Class Member as a home health aide for Defendant from September 29, 2011 through February 26, 2015, by the total number of weeks worked by all Class Members as home

health aides for Defendant from September 29, 2011 through February 26, 2015, and then multiplying this quotient by one-fourth (1/4) of the amount of the Sixth Claim Allocation;

b.    dividing the total number of weeks worked by the Class Member as a home health aide for Defendant from February 27, 2015 through the last day of the Covered Period, by the total number of weeks worked by all Class Members as home health aides for Defendant from February 27, 2015 through the end of the Covered Period, and then multiplying this quotient by three-fourths (3/4) of the amount of the Sixth Claim Allocation;

c.    the sum of the amount calculated under Section II(6)(a) for each Class Member, plus the amount calculated under Section II(6)(b) for that Class Member, will be that Class Member's "Sixth Claim Share"; and

7.    Each Class Member's share of the Seventh Claim Allocation, if any, will be determined by dividing the total number of weeks worked by the Class Member as a home health aide for Defendant during the Covered Period, by the total number of weeks worked by all Class Members as home health aides for Defendant during the Covered Period, and then multiplying this quotient by the amount of the Seventh Claim Allocation (the result being the "Seventh Claim Share").

III.    The Settlement Administrator will then determine each Class Member's "Percentage Allocation Number" as follows:

1.    summing that Class Member's First Claim Share, Second Claim Share, Third Claim Share, Fourth Claim Share, Fifth Claim Share, Sixth Claim Share, and Seventh Claim Share (if any);

2.    aggregating the sum of all Class Members' First Claim Shares, Second Claim Shares, Third Claim Shares, Fourth Claim Shares, Fifth Claim Shares, Sixth Claim Shares, and Seventh Claim Shares (if any); and

3.    dividing the sum calculated in Section III(1) by the aggregated sum calculated in Section III(2) (each Class Member's "Percentage Allocation Number" will be expressed as a percentage).

IV.    The Settlement Administrator will then determine each Class Member's "Individual Settlement Amount" by multiplying that Class Member's "Percentage Allocation Number" by the Net Settlement Fund.